**Form 416D  Caption for Use in Adversary Proceeding**

# United States Bankruptcy Court

_____ District Of _____ Arizona

In re ANITA SMITH HARRIS

_____,

Debtor

_____,

Plaintiff/Movant

ANITA SMITH HARRIS

_____,

Defendant/Respondent

PHH MORTGAGE ET AL, PERRY R. HARRIS, JIM FLETCHER,  RICH J. PETERS  ALDRIDGE PITELLC

_____|

Case No.
2-25-BK-01794 EPB
_____

Chapter  7
_____

Adv. Proc. No.
_____

Anita Smith Harris
11010 S.51st Unit 50818
Phoenix, AZ 85044
6782964004
Skippysmith2850@gmail.com

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF ARIZONA

| | |
|---|---|
| ANITA SMITH HARRIS, | Case No.: 2:25-bk-01794-EPB Chptr7 |
| Debtor, | COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT, FRAUD, CIVIL CONSPIRACY, ABUSE OF PROCESS, AND FOR INJUNCTIVE RELIEF |

Anita Smith Harris,
Plaintiff,

v.

PHH Mortgage Corporation,
Perry Richard Harris, Jr.,
Aldridge Pite, LLP,
James R. Fletcher,

Richard J. Peters
John Doe and Jane Doe defendants,
Defendants.

Adversary Proceeding No.:

Plaintiff, Anita Smith Harris, appearing pro se, brings this adversary proceeding under 11 U.S.C. §§ 105, 523, 542 and Federal Rules of Bankruptcy Procedure 7001 et seq., and for her Complaint alleges as follows:

COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT, FRAUD, CIVIL CONSPIRACY, ABUSE OF PROCESS, AND FOR INJUNCTIVE RELIEF - 1

## SECTION 1: JURISDICTION AND VENUE

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and 11 U.S.C. §§ 105, 362, 523, and 542.
2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), and (I).
3. Venue is proper in this District under 28 U.S.C. § 1409 because this adversary proceeding arises in and relates to the Chapter 7 case of the Plaintiff pending in this Court.
4. Plaintiff brings this action seeking declaratory and injunctive relief, as well as damages, for fraud, abuse of process, and conspiracy to commit wrongful foreclosure using void court orders.

## SECTION 2: PARTIES

5. Plaintiff, Anita Smith Harris, is an individual debtor in the above-captioned Chapter 7 bankruptcy case. She resides in Phoenix, Arizona, and is representing herself pro se. Plaintiff is the homeowner and borrower affected by the actions described in this Complaint.
6. Defendant PHH Mortgage Corporation is a mortgage servicer and debt collector conducting business in the states of Arizona and Georgia. It was the servicer of Plaintiff's mortgage and is responsible for communications, foreclosure activity, and handling of Plaintiff's loan modification.
7. Defendant Perry Richard Harris, Jr. is Plaintiff's ex-spouse and a named party in various family court and property-related proceedings in Arizona and Georgia. He is alleged to have participated in the wrongful filing of a Quiet Title Action and used fraudulent filings to interfere with Plaintiff's loan and property rights.
8. Defendant Aldridge Pite, LLP is a foreclosure law firm located in Georgia and served as counsel for PHH Mortgage in relation to the foreclosure proceedings involving Plaintiff's home.
9. Defendant James R. Fletcher is a Georgia attorney who filed a Quiet Title Action on behalf of Defendant Perry Harris in the incorrect venue and based on an undomesticated Arizona family court order, in violation of Georgia law.
10. Defendant Rich Peters is an attorney licensed to practice law in Arizona and served as counsel for Defendant Perry Richard Harris, Jr. in ongoing post-decree family court proceedings. Peters is sued both individually and in his professional capacity for his knowing

COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT, FRAUD, CIVIL CONSPIRACY, ABUSE OF PROCESS, AND FOR INJUNCTIVE RELIEF - 2

misrepresentation of court orders, including the false assertion that Plaintiff had been ordered to allow foreclosure of the property. He actively concealed superseding orders, knowingly misled the court, and directly contributed to Plaintiff's injuries by promoting a false narrative that was used to justify foreclosure proceedings and deny emergency relief

11. John Doe and Jane Doe Defendants are unknown individuals and/or entities who participated in the scheme described herein and will be identified through discovery.

## SECTION 3: NATURE OF THE ACTION

12. This adversary proceeding arises out of a multi-jurisdictional scheme to interfere with Plaintiff's legal rights to her home through the use of fraudulent court filings, perjury, and improper foreclosure practices.

13. Plaintiff seeks a determination that the actions of the named Defendants constitute fraud, civil conspiracy, abuse of process, and unlawful interference with Plaintiff's federally protected bankruptcy rights under Title 11 of the United States Code.

14. The conduct of the Defendants involves the use of undomesticated foreign orders from Arizona family court proceedings, which were improperly relied upon in Georgia courts to obtain a Quiet Title Judgment affecting Plaintiff's property without proper jurisdiction, venue, or procedure.

15. Defendants PHH Mortgage Corporation and Aldridge Pite, LLP knowingly relied on the void Quiet Title Judgment to reverse Plaintiff's approved loan modification, misrepresent Plaintiff's payment history, and move forward with foreclosure while ignoring pending appeals and bankruptcy protections.

16. Defendant Perry Harris used a March 24, 2023 Arizona order, which did not void Plaintiff's mortgage or deed rights, to initiate a Quiet Title Action in the wrong Georgia county without domesticating the order as required by law.

17. Defendant James R. Fletcher filed the Quiet Title Action in Gwinnett County, Georgia, instead of Cobb County where the property is located, failed to follow mandatory procedures under Georgia law, and concealed the true nature of the Arizona order, which arose out of family court.

18. Plaintiff asserts that these actions constitute a coordinated effort to deprive her of her home, and that such actions should be reviewed under

COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT, FRAUD, CIVIL CONSPIRACY, ABUSE OF PROCESS, AND FOR INJUNCTIVE RELIEF - 3

applicable federal bankruptcy law and common law principles of equity, fraud, and civil conspiracy.

19. Plaintiff seeks injunctive relief, damages, and a declaration that the Quiet Title Judgment and foreclosure actions were based on void, fraudulent, and constitutionally defective proceedings.

## SECTION 4: FACTUAL ALLEGATIONS

20. Plaintiff Anita Smith Harris was awarded legal authority over the marital property located in Georgia through an Arizona family court order dated May 2, 2022, which gave her full rights to manage, refinance, or modify the loan without interference from her ex-spouse, Perry Richard Harris, Jr.

21. In October 2022, PHH Mortgage Corporation approved a permanent loan modification with Plaintiff as the sole borrower. Plaintiff made payments under that modification and complied with all conditions.

22. On or about March 23, 2023, Perry Harris obtained a second Arizona family court order purporting to hold him harmless from the mortgage debt. This March 24, 2023 order did not void Plaintiff's legal interest in the property, nor did it authorize any change in ownership or title.

23. Without domesticating the March 24, 2023 Arizona order in Georgia, as required under the Uniform Enforcement of Foreign Judgments Act (O.C.G.A. § 9-12-132), Perry Harris and attorney James R. Fletcher initiated a Quiet Title Action in Gwinnett County, Georgia.

24. The Quiet Title Action was filed in the wrong venue, as the property is located in Cobb County, Georgia. No domestication petition was ever filed in Gwinnett or Cobb County.

25. No Special Master was appointed, nor was a waiver of appointment entered on the record, as required by Georgia's Quiet Title statute (O.C.G.A. § 23-3-63).

26. Plaintiff was never properly served in the Quiet Title Action. Her address was altered by PHH Mortgage and the foreclosure attorneys to direct legal notices to the office of Perry Harris's Georgia counsel.

27. The Quiet Title Action resulted in a December 2023 judgment purporting to invalidate Plaintiff's loan modification and her March 2023 quitclaim deed, despite the fact that no Georgia court had jurisdiction to do so.

28. PHH Mortgage Corporation used the void Georgia judgment to reverse Plaintiff's loan modification, refuse payments, and move forward with foreclosure in 2024, even while Plaintiff had appeals pending.

COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT, FRAUD, CIVIL CONSPIRACY, ABUSE OF PROCESS, AND FOR INJUNCTIVE RELIEF - 4

29. While that appeal was pending throughout 2024, PHH Mortgage Corporation and Perry Harris proceeded as though the Quiet Title Judgment was final and uncontested. They relied on the void Georgia order to initiate foreclosure proceedings, despite the fact that the matter was still under active appellate review and had not been upheld by any higher court. This was a direct violation of Plaintiff's right to appeal and further demonstrated Defendants' coordinated effort to execute foreclosure without legal standing.

30. In late October 2024, the Georgia Court of Appeals issued a ruling affirming the Gwinnett County Superior Court's Quiet Title Judgment. Despite the appeal raising jurisdictional, procedural, and constitutional challenges, the appellate court upheld the lower court's decision without addressing the underlying violations of Georgia's Quiet Title Act or the failure to domesticate the Arizona family court order

31. In October 2024, Plaintiff filed an ex parte emergency motion in Arizona family court seeking to stay an imminent foreclosure scheduled for November 5, 2024. The Arizona judge denied the motion based on the mistaken belief that Plaintiff had been ordered in 2017 to allow the home to go into foreclosure. The court stated that "the home was supposed to be refinanced or foreclosed upon by order of September 18, 2017," even though that order contains no such directive. This false narrative was created and promoted by Perry Harris and his attorney, Rich Peters, who deliberately misrepresented the contents of the 2017 decree. The order has since been superseded by another Arizona court order—one that both Harris and Peters are well aware of but have buried to avoid judicial scrutiny. Plaintiff is currently preparing a motion to vacate that denial, correct the record, and seek sanctions for fraud on the court.

32. In response to the escalating misconduct by PHH Mortgage Corporation and Perry Harris, Plaintiff filed a Chapter 13 bankruptcy case in the United States Bankruptcy Court for the Northern District of Georgia on November 4, 2024, under Case No. 23-61475. This filing was made to stop the fraudulent foreclosure proceedings and allow time to present newly discovered evidence of fraud, including PHH's manipulation of Plaintiff's mailing address and the improper Quiet Title Action. On January 15, 2025, the case was dismissed **with prejudice**, and a one-year bar was imposed — **without any stated**

COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT, FRAUD, CIVIL CONSPIRACY, ABUSE OF PROCESS, AND FOR INJUNCTIVE RELIEF - 5

**legal cause or justification in the court's dismissal order.** During the hearing, Perry Harris falsely claimed he had been "handcuffed to the loan for nearly 10 years" and misrepresented his liability, despite a March 24, 2023 Arizona court order expressly holding him harmless from the debt. PHH Mortgage Corporation also falsely alleged that Plaintiff had not made any mortgage payments in years ignoring the existence of a valid 2022 loan modification and controlling Arizona court orders. Plaintiff filed emergency motions to vacate the dismissal and submitted extensive evidence of fraud and due process violations, but those motions were denied. With no further access to relief in Georgia — and due to new rules preventing pro se litigants from electronically filing motions — Plaintiff was forced to file for Chapter 7 bankruptcy protection in Arizona on March 3, 2025.

33. On March 4, 2025, a foreclosure sale was scheduled based on the Georgia judgment, which was void ab initio due to procedural and jurisdictional violations.

34. Plaintiff filed the instant Chapter 7 bankruptcy on March 3, 2025, to invoke the automatic stay and stop the foreclosure. She simultaneously filed an Emergency Memorandum, supporting exhibits, and referred the matter to the Office of the U.S. Trustee for investigation.

35. On March 3, 2025, the Plaintiff also filed an Emergency Complaint and Motion for Temporary Restraining Order in the United States District Court for the District of Arizona (Case No. CV-25-00715-PHX-DLR), seeking to enjoin the foreclosure based on newly discovered fraud. The court denied the TRO on March 5, 2025, citing the Rooker-Feldman doctrine. Plaintiff filed a timely Motion for Reconsideration, which was also denied on March 11, 2025. These filings demonstrate that Plaintiff made every good faith effort to seek proper relief in a federal forum before turning to this Court for equitable protection under the Bankruptcy Code.

36. Plaintiff also initiated a new state court proceeding in Georgia on March 13, 2025, to void the Quiet Title Judgment (Case No. 25-A-02289-4), citing newly discovered evidence and procedural fraud.

**SECTION 5: CAUSES OF ACTION**

COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT, FRAUD, CIVIL CONSPIRACY, ABUSE OF PROCESS, AND FOR INJUNCTIVE RELIEF - 6

## COUNT I – FRAUD AND MISREPRESENTATION

37. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.
38. Defendants, individually and in concert, knowingly submitted false representations to multiple courts regarding Plaintiff's rights to the subject property, her payment status, and the validity of her loan modification.
39. PHH Mortgage Corporation, Aldridge Pite LLP, and Perry Harris knowingly relied upon a void Quiet Title Judgment to reverse Plaintiff's approved loan modification and move forward with foreclosure.
40. Defendants intentionally concealed the origin and nature of the March 24, 2023 Arizona family court order to mislead Georgia courts, failed to domesticate the order, and filed suit in an improper venue.
41. As a direct result of Defendants' fraudulent conduct, Plaintiff suffered the loss of her home, damage to her credit, emotional distress, and legal costs.

## COUNT II – ABUSE OF PROCESS

41. Plaintiff incorporates all prior paragraphs as if fully set forth herein.
42. Defendants abused judicial processes in Georgia by initiating and prosecuting a Quiet Title Action without jurisdiction, proper venue, or adherence to required statutory procedures.
43. The use of undomesticated family court orders to cloud Plaintiff's title, invalidate a valid loan modification, and facilitate foreclosure constitutes a misuse of the legal system for improper purposes.
44. The abuse of legal process has caused Plaintiff significant harm and ongoing financial injury.

## COUNT III – CIVIL CONSPIRACY TO INTERFERE WITH PROPERTY RIGHTS

45. Plaintiff incorporates all prior paragraphs as if fully set forth herein.
46. Defendants entered into an agreement, express or implied, to deprive Plaintiff of her legal rights and interest in the subject property through coordinated legal actions and misrepresentations.
47. Each Defendant committed one or more overt acts in furtherance of the conspiracy, including the wrongful filing of legal documents, altering Plaintiff's mailing address, and concealing material facts.

COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT, FRAUD, CIVIL CONSPIRACY, ABUSE OF PROCESS, AND FOR INJUNCTIVE RELIEF - 7

48. Plaintiff has been damaged by this conspiracy, including loss of legal control over her home and inability to properly defend herself in court due to concealed actions and fraudulent filings.

## COUNT IV – VIOLATION OF 11 U.S.C. § 362 (WILLFUL VIOLATION OF AUTOMATIC STAY)

49. Plaintiff incorporates all prior paragraphs as if fully set forth herein.

50. Defendants proceeded with foreclosure-related activity during the pendency of Plaintiff's bankruptcy case, despite receiving actual notice of the bankruptcy filing and the automatic stay.

51. PHH Mortgage Corporation and Aldridge Pite LLP knowingly communicated collection threats and scheduled a foreclosure sale while the automatic stay under 11 U.S.C. § 362 was in effect.

52. These willful violations of the stay entitle Plaintiff to actual damages, attorney's fees (if applicable), and punitive damages pursuant to 11 U.S.C. § 362(k).

## COUNT V – EQUITABLE RELIEF UNDER 11 U.S.C. § 105

53. Plaintiff incorporates all prior paragraphs as if fully set forth herein.

54. Pursuant to 11 U.S.C. § 105, this Court has the inherent authority to issue equitable orders necessary to protect the integrity of the bankruptcy process and prevent injustice.

Plaintiff respectfully requests that this Court enter injunctive relief preventing Defendants from taking further action to enforce the void Georgia Quiet Title Judgment and to preserve Plaintiff's interest in the subject property while these issues are litigated in the proper form

COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT, FRAUD, CIVIL CONSPIRACY, ABUSE OF PROCESS, AND FOR INJUNCTIVE RELIEF - 8

## SECTION 6: PRIOR FEDERAL ACTION AND GOOD FAITH LITIGATION HISTORY

55. Plaintiff incorporates all prior paragraphs as if fully set forth herein.

56. On March 3, 2025, the same day Plaintiff filed her Chapter 7 bankruptcy petition in this Court, she also filed a civil complaint and motion for a temporary restraining order (TRO) in the United States District Court for the District of Arizona, Case No. CV-25-00715-PHX-DLR.

57. In that civil action, Plaintiff sought emergency injunctive relief to prevent the foreclosure of her home based on the use of a void Quiet Title Judgment issued in Georgia, which relied on undomesticated and procedurally defective Arizona family court orders.

58. Plaintiff did not seek to overturn any state court judgment, but to raise independent claims of fraud, abuse of process, and due process violations that led to the improper foreclosure action.

59. On March 5, 2025, the District Court denied the TRO on the basis of the Rooker-Feldman doctrine, finding it lacked jurisdiction to grant injunctive relief where state court judgments were involved, even if fraud was alleged.

60. Plaintiff promptly filed a Motion for Reconsideration, which was also denied on March 11, 2025, without consideration of the underlying fraud allegations or the constitutional violations raised.

61. These filings demonstrate that Plaintiff did not seek relief in bankruptcy court as a first resort, but only after being denied protection in federal district court due to jurisdictional limitations.

62. Plaintiff has made every good faith effort to obtain lawful relief and protect her rights in state and federal court proceedings. The Chapter 7 filing was a necessary act of last resort in the face of imminent foreclosure based on demonstrably void legal proceedings.

63. The existence of prior bankruptcy filings, including Chapter 13 petitions, does not diminish the legitimacy of the fraud and misconduct now being presented in this adversary proceeding. Rather, they illustrate the extent to which Plaintiff has struggled to obtain justice while being financially and procedurally outmatched.

COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT, FRAUD, CIVIL CONSPIRACY, ABUSE OF PROCESS, AND FOR INJUNCTIVE RELIEF - 9

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against all Defendants, and prays for the following relief:

A. A declaration that Defendants committed fraud, abuse of process, civil conspiracy, and willful violation of the automatic stay;

B. A finding that the Quiet Title Judgment issued in Georgia is void as to Plaintiff, and that any subsequent foreclosure actions taken in reliance upon it are unlawful and unenforceable.

C. An order enjoining all Defendants from taking further action to enforce or rely upon the Quiet Title Judgment or to pursue any foreclosure activity related to the subject property pending resolution of this adversary proceeding and related matters.

D. An order restoring Plaintiff's loan modification and legal interest in the property and directing PHH Mortgage Corporation to correct its records and communications to reflect the lawful loan status.

E. An award of compensatory damages for economic harm, emotional distress, and out-of-pocket legal costs incurred due to Defendants' misconduct.

F. An award of punitive damages where appropriate to deter similar misconduct and punish willful abuse of legal process.

G. Equitable relief under 11 U.S.C. § 105 to preserve the integrity of the bankruptcy process, including any order necessary to protect Plaintiff from further harm.

H. Any other relief this Court deems just and proper in the interests of justice and fairness.


Respectfully submitted,

/s/ Anita Smith Harris


COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT, FRAUD, CIVIL CONSPIRACY, ABUSE OF PROCESS, AND FOR INJUNCTIVE RELIEF - 10

1

Anita Smith Harris
11010 S. 51st Street, Unit 50818
Phoenix, AZ 85044
(678) 296-4004
skippysmith2850@gmail.com
Dated: March 28th 2025

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT,
FRAUD, CIVIL CONSPIRACY, ABUSE OF PROCESS, AND FOR
INJUNCTIVE RELIEF - 11

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th of March 2025, I served a true and correct copy of the foregoing Adversary Complaint and all supporting documents upon the following parties by U.S. Mail, postage prepaid, and, where available, by electronic mail:

**PHH Mortgage Corporation**
1 Mortgage Way
Mount Laurel, NJ 08054
Email: CustomerSupport@mortgagefamily.com

**Perry Richard Harris, Jr.**
2654 W Horizon Ridge Rd #B5-69
Henderson, NV 89052
Email: perryharris50@hotmail.com

**James R. Fletcher, Esq.**
328 SE, Suite 10
Marietta, GA 30060

**Rich J. Peters, Esq.**
1422 N. 2nd Street, Suite 100
Phoenix, AZ 85004

**Aldridge Pite LLP**
Foreclosure Counsel for PHH
3575 Piedmont Road NE, Suite 500
Atlanta, GA 30305
Email: info@aldridgepite.com

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 28th day of March 2025.

Respectfully submitted,
/s/ Anita Smith Harris
Anita Smith Harris
11010 S. 51st Street, Unit 50818
Phoenix, AZ 85044
Phone: (678) 296-4004
Email: skippysmith2850@gmail.com

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

In re: Anita Smith Harris, Debtor

Case No.: 2-25-bk-01794-EPB

Adversary Proceeding No.: (To Be Assigned)

Plaintiff: Anita Smith Harris

Defendants: PHH Corporation et al, Perry R. Harris, Jim Fletcher,
Rich J. Peters, Aldridge Pite LLC

## EXHIBITS IN SUPPORT OF ADVERSARY COMPLAINT

Filed by: Anita Smith Harris
11010 S 51st St Unit 50818
Phoenix, Arizona 85044
Email: skippysmith2850@gmail.com
Date: March 27, 2025

**Anita Smith Haris- Debtor- 2-25-bk-01794EPB**

## EXHIBIT INDEX IN SUPPORT OF ADVERSARY COMPLAINT

## Description
**Exhibit 1**
Affidavits from Gwinnett and Cobb County Deputy Clerks
confirming that no domestication petition was ever filed
(required before a Quiet Title Action could be filed).
**Exhibit 2** December 9, 2020 — Letter from PHH Mortgage instructing
Debtor on steps to remove Perry Harris from deed and loan.

**Exhibit 3** May 2, 2022 — Arizona court order complying with PHH's
December 9, 2020 letter and granting Debtor full authority.
**Exhibit 4** October 2022 — Permanent home loan modification from PHH
Mortgage.
**Exhibit 5** March 2023 — Recorded Quit Claim Deed removing Perry
Harris from title.
**Exhibit 6**
March 24, 2023 — Arizona court order leaving Perry Harris
harmless from the debt; order he used to file the fraudulent
Georgia Quiet Title Action.
**Exhibit 7** June 2023 — Fraudulent Quiet Title Action filed in Gwinnett
County, Georgia.
**Exhibit 8** July 31, 2023 — Motion to Dismiss the Quiet Title Action filed
by Debtor.
**Exhibit 9** December 2023 — Gwinnett County final judgment invalidating
Debtor's loan modification and Quit Claim Deed.
**Exhibit 10** Security Deed for the Georgia property showing predatory loan
terms.
**Exhibit 11** January 2024 — Appeal brief filed by Debtor with the Georgia
Court of Appeals.
**Exhibit 12** November 2024 — Georgia Court of Appeals final order
concurring with the Gwinnett County judgment.
**Exhibit 13** October 2024 — Ex parte emergency motion to Arizona judge to
stop foreclosure.
**Exhibit 14** October 31, 2024 — Arizona judge's order denying Debtor's
emergency motion.
**Exhibit 15** November 4, 2024 — Notice of foreclosure.

**Exhibit 16** November 4, 2024 — Notice of bankruptcy filing in Georgia.

**Exhibit 17** December 2024 — Letter from PHH Mortgage.

**Exhibit 18** January 2025 — Dismissal order of the Georgia Chapter 13 bankruptcy.

**Exhibit 19** February 2025 — Emergency motion to reinstate Chapter 13 due to newly discovered fraud.

## Description

**Exhibit 20** February 2025 — Bankruptcy judge's order denying reinstatement.

**Exhibit 21**

February 2025 — Foreclosure notice letter from Aldridge Pite LLP (PHH's foreclosure counsel), scheduling foreclosure for March 4, 2025.

**Exhibit 22**

March 3, 2025 — Forced Chapter 7 bankruptcy filing by the

EXHIBIT 1

## AFFADAVIT OF NO FOREIGN JUDMENT PETITION BEING FILED

I, **Anita Smith Harris**, declare under penalty of perjury under the laws of the United States that the following statements are true and correct:

1. On **February 28, 2024**, I contacted the **Cobb County Superior Court Clerk's Office** at **(770) 528-1300** and spoke with **Libby Blackwell, Chief Operations Officer.**
2. I specifically asked whether a **Petition to Domesticate a Foreign Judgment of an Arizona Maricopa County Superior Court Order dated March 23, 2023** had ever been filed in Cobb County under **O.C.G.A. § 9-12-130 et seq.**
3. **Libby Blackwell confirmed that no such petition was ever filed in Cobb County.**
4. On the same day, I contacted the **Gwinnett County Superior Court Clerk's Office** at **(770) 822-8100** and spoke with **Susan Rawlin, Deputy Clerk.**
5. I asked **Susan Rawlin** the same question about whether a **Petition to Domesticate a Foreign Judgment** had been filed in Gwinnett County.
6. **Susan Rawlin confirmed that no such petition was ever filed in Gwinnett County and that the only record on file was a Quiet Title action.**
7. I have also checked the **Gwinnett County case docket** and found no record of a domestication petition of a foreign judgement or any filing related to the Arizona order.
8. This confirms that **the Arizona court order was never legally domesticated in Georgia**, and the Georgia Quiet Title ruling was issued **without proper jurisdiction.**

I declare under penalty of perjury that the foregoing is true and correct.

**Executed on:** February 27th 2025
**Location:** Phoenix, Arizona

**Signed:**

**/s/ Anita Smith Harris**

Anita Smith Harris

11010 S. 51st St., Unit 50818

Phoenix, AZ 85044

Phone: (678) 296-4004

Email: skippysmith2850@gmail.c



E

# ..N ew R ez

EX.2

C/O I HH MorlgJge Service;
PO Bo> 5-13)
Mount L.;iurel NJ LIlI0S4

December 9, 2020

Account Number: 71IU343113
**Property Address:** 404 R,Jl!clop Dr
AL *1orth GA 30102 3*\71:l

Anrt.:i E Harr rs
945 N. Pa,adt!nd Unit 110
Mesa *AZ* 85201

**Customer(s):** Perry Richard H;irrrs Jr
Anil;if.H.:,n,,
**Case Number:** 4<;395383
**Regulatory Case ID:** 201120 57 IOlfB

Dear Anita E Harris,

This letter isin response to the recent communication from the Consumer Financial Protection Bureau onyourbehillf have been assigned to revrew this reque t and the re,ults of my review are outlined below.

In your correspondence, you expressed concern; reg;:irding the denial of the modification and assumption request In addition, you also expressed concerns regarding potentially fraudulent activity with the loss draft check processed on the account.

In October 2018, Ocwen Financial Corporation purchased PHH Mortgage Services (PHH); therefore, PHH is now a wholly owned subsidiary of Ocwen F1nanc1al Corporation. In an effort to streamline our servlcIng, Ocwcn Loan Servicing, LLC (Ocwen) accounts gradually transitioned to the PHH servicing systern and are now serviced under the PHH Moi1:gage Services name. For this account, that transition occurred on May 1, 2019.

Court records indicate that a chapter 13 bankruptcy case was filed by Mr. Perry Richard Harris Jr. on Aprils, 201ₒ, prior to this bankruptcy filing, in February 2018, we confirmed we had received a complete Mortgage Assistance Application **(MAA).** After reviewing the application, we determined the account would be eligible for a modification trial period plan. The trial plan consisted of three separate trial payments scheduled for April 1, 2018, May 1, 2018 and June 1, 2018 in the amount of $1091.19 each.

We received the first two trial payments then in June 2018, Mr. Harris advised during a telephone call that he Is not interested in contmurng with the modification offer. In response to the request, this offer was do ed. After the closure of thP mod1ficat1on offer, we received documentation advising Mr. Harris is interested in moving torw;ird with ;i deed in lieu of foreclosure. Upon reviewing this request, a title search was completed and determined we were u11able to move forward with this resolution option, as the title was not clear. A denial of Request of Deed in Lieu ot Foreclosure (copy enclosed) dated August 10, 2018 was mailed to the address of record, advising of the deed in lieu ineligibility.

More specifically, the title search indicated there is a senior mortgage with TCF National Bank Minnesota, which wa.s recorded in the Cobb County records on May 3, 1999, in book 12452, page 286-289. In add1t1011to the ernor mortgage, a judgement was entered for the plaintiff, Arrow Financial Services LLC A. F.S. as assignee of First Premier Bank. This

**NMLS** # 2726
*This communication 1s /rum a debt collector attempting tu wllect o debt; any information obtllined will be usedfvr that purpose. Howev<!r, if the debl h; 1n active bankmplcy or has been discharged through hankrup/cy, lhis cammunrcauan rs pnwrdt-d purt'ly for informational purpose:; only with regard to our secured lien on the above referenced property. It is not mten,ied os on attempt to collect a debt from you pcrsonally.*

# ', 'New Rez

C/O PHH Mol\gage Services

PO Bo>' 5437

Mount uiurel NJ 08054

Judgement was recorded in the Cobb County records on MMch 13, 2007 in Book 81, p.:1ge 5213-5214. To movt.:-'orw-Jrd with anyloss mltlga11011 option including a deed-111-l1eu, these liens must be resolved asa clear title 1s required.

With regards to yourloss draft check concerns, we 1ev11:iwed the account and indicate that on October 12, 2020, first draw check in the amount of $3,343, payable to both customers was issued. Further, it wasdetermined that 011mu11t1pl1: occasions, you contacted the loss draft team and requested for a front and back copy of the cl;:iim check .1s you 111d1c.:itcd that it was endorsed fraudulently: subsequently, in May 2020 and June 2020, copies uf theclaimcheck JJere md1h:d Jnd faxed to your attention. Regarding your current request to reissue the draw check without the name of the borrower 1t was ;idv1sed to you to return the dr;iw checks to us for deposit, ;ilong with the DivorceDecree ;rnd the Quit c.latm Deed and we are till aw:11ting the same.

The execution ofa Quit Claim Deedtransfers the title of the property to the person(s) named in the Quit Cloim Deed, but rt does notrelease liability for the debt from the account itself by the original borrower(s). We are obllg.:ited to service the account in accordance with the terms of the origin;il NotP.signed by Mr. and Ms. Harris.

Our review of the records indicate that theaccount was cipproved for ;i trial payment plan and the enclosed trial plan offer dated August 19, 2020 was sent to the address mentioned on the account. With this plan, you were1 equired to make three (3) payments, each in the amount of $1056.78, due on October 1, 2020, November 1, 2020 and December 1, 2020 respectively. However, the aforementioned trial offer cannot be finalized and isdenied in due to thenon-receipt of the trial payment.

As advised in our previous response, in the event that the property was awarded to you andMs. Harris in divorce proceedings, the loan associated with theaccount would still need to be assumed orrefinance for you to become the sole obligated party to this account. While the courts may require a customer to completea particular action 111relation toa domestic dispute involvinga property, it is up to the courts to enforce these actions, not the mortgage service• equest an assumptio11 to rernoveelffiervouor s. ,irris from the account,a family transfer package must be completed. For an assumption to be completed, the account needs to be contractuallycurrent and should not be in active bankruptcy.

We strive to provide exceptional service to our customers and we are sorry to hear of anyunsatisfactory experience you may have had with us. We sincerely apologize if you feel that these standards were not met.

Presently, the foreclosure proceedings were on hold due to the bankruptcy chapter 13, filed by you on September 3, 2020. However, the aforementioned bankruptcy has been dismissed on December 7,2020.

The Relationship Manager (RM) on this account is Manoj Paul, who may be reached by dialing (800) 750 2518. To speak with the RMyou will need to select from our main menu option 2 (To speak with the relationship manager assigned to this account, to discuss loan modification, short sale or deed in lieu or to report financialdifficulties, press 2.) and then select optionO (Press Oto spe;ik with your rel;itionship man;iger). If the RM is available, the call routes diri>ctly to them. However, if the RM is nol available the call will route to a queue for another agent. At thistime there is no voicemail option. Also, we are currently under new hours of operation during the Covid19 pandemic of 9am to 8pm ET.

We hope this response fully addresses the stated concerns. If there are any questions aboutthrs response, please submit your questions via email to ConsumerOmbudsman@Ocwen.com. If you prefer todiscuss \'our questions by phone you may contact our Ombudsman office at (844) 995-3682 at this time there is onlya voJCemailoption, however, calls will bereturned in 24to 48hours.

$T_hM_{iS}L_cS_o^\#m^2m^7u^2n^6$ication isfruma debt collector attempting to wllect adebt; any information obtL1ined will bemed Jar that µurpa e. However, if the debl i,; in active bankruptcy or has been discharged through bonkruplcy, this commun1ca11an rs prnv1dcd purely for informational purposes only with regard to our eecured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.

# NewRez

*C/0* Prih Mort .:i'"e Service,
PO So) S-B2
Mount .:iJre t,J 0:!0S4

CustY"'erServ,ce can be 1e.iched toll free at (877) 744 2506 for add1t1onal 1nformat1on rega1dingthismo,tg,.ige acco:.111t. We arcava,lablc Monday through Friday 8.00 am to 9:00 pm and Saturday 8:00am to 5:00 pm E.T.
In ormJto aoout th,s mo'tgage account ma, also be found online at mortgagequestions.com.



Jyoti Dubey
Cons1.Jmer Account Analyst
Office of the Consumer Ombudsman

Enc,osures

cc: Perry Richard Harris Jr.
2820 E Palmdale Ln
Gilbert AZ 85298

cc: CFPB Submitted Electronically

Please note thatNewRezLLCIs not the servicer of your current mortgage loan account. NewRez LLC1s the lending affiliate of NewResidential Mortgage, LLC, the company that owns the right to service yourloan. PHH MortgageServices performs all servicing act1v1ties on your loan. If you have any questions about your mortgage loan, please contact PHH Mortgage Services

**Oregon Property Owners:**Residential mortgage loan scrvlccrs arc regulated by the OregonDivision ofF1nanc1al Regulation. To file a complaint, call (888) 877-4894 or visit http://dfr.oregon.gov.

**New York PropertyOwners:** Exclusively for homeowners in New York, you may file complaints about the servicing of your loan with the New York State Department of Financial Services. For further informationcall theDep;:irtment's Consumer Assistance Unit at 1.800.342.3736 or visit the Department's website atwww.dfs.nv g.

**New YorkResidents:** If you believe the loss mitig;ition request has been wrongly denied, you m;iy filea complaint with the New York State Department of Financial Services at 1-800-342-3736 or www.dfs.nvgov.

**Texas Property Owners:** Forhomeowners in TelCas, complaints regarding the servicing of your mortgageshould be sent to the Department of Savmgs and Mortgage Lending, 2601 North Lamar, Suite 201, Austin, TX78705 or viaa toll-frte consumer hotline ;wa1lable at 877.276.5550.

**A** complaint form and instructions may be downloaded and printed from the department'swebsite located ;:it www.sr'1 . ""gov or obtained from the department upon request by: mail to the cJforementioned add1e ,telephone through their toll-free consumer hotline listed, or email atnll1nf0(dl ml.texas.gov.

**NMLS** # 2726
*Thl!i communication 15 fruma debt collector attempting to wl/ect a debt; any information obtained will be used for that purpose. Howi>vcr, if thl' dcbl is in active bankruptcy or has been discharged through bankruptcy, thiscammun1eallun rsp1ov1dcd purely for i11formational purposes 011/y with regard to our ecured lien on the above referencedproperty. It is not intended a on attempt to collect o debt from you personally.*

Clerk of the Superior Court
*** Filed ***
05/04/2022 8:00 AM

FN 2015-003563                                      05/02/2022


                                            CLERK OF THE COURT
HONORABLE JAMES DRAKE                          Y. Anchondo
                                                 Deputy


IN RE THE MATTER OF
PERRY HARRIS                                PERRY HARRIS
                                            2654 W HORIZON RDGE PKWY
                                            B5-69
                                            HENDERSON NV  89052


AND


ANITA ELAINE SMITH HARRIS                   CHELSEA LYNCH



                                            JUDGE DRAKE



## UNDER ADVISEMENT RULING


        On April 28, 2022 the Court held an Evidentiary Hearing regarding Respondent/Wife's *Petition to Enforce Divorce Decree: Retirement Accounts,* filed on March 4, 2022 and to address, the status of the Georgia property.  The Court is somewhat surprised by Wife's request for relief while at the same time disregarding this Court's other orders.

        The Court having considered the evidence and the testimony, rules as follows:

Georgia Property

        **THE COURT FINDS** that Wife has willfully violated this Court's Order of September 18, 2017 regarding the Georgia property for four and one-half years. Wife was ordered to either let the property in Georgia, 404 Ridgetop Drive, NW, Acworth, Georgia, go into foreclosure or to refinance the property and give fifty percent of the equity (if any) to Petitioner/Husband.  Wife has

Docket Code 926                     Form D000D                          Page 1

improperly used the Bankruptcy Court, with 7 separate filings, to thwart the resolution of the Georgia property's mortgage debt. Indeed, it was the Bankruptcy Court's Trustee (filing Motion

to Dismiss with Prejudice filed 8/27/2019) that Wife had never, in the previous five filings, ever brought forth a feasible Chapter 13 plan and filed her bankruptcies in bad faith. The Trustee noted "This case was clearly brought to frustrate the collection efforts of the Debtor's ex-husband by delaying the sale of the real property in Georgia." Wife's stated desire to move into the Georgia home in less than six months is not credible.

That being said, Husband is not wholly blameless in this regard either. Husband steadfastly refuses to let loan modifications go through and will not assist or sign any documents to facilitate Wife assuming the loan and eventually getting his name off the mortgage and ultimately, the title. It seems as though Husband has looked beyond just the initial steps of modification and has taken notice of the longer term possible underwriting policies that may indeed thwart Wife's goal. The problem here is that Husband is inserting himself into the role that is properly played by the lender. Let the lender be the one to inform Wife that because of the bankruptcy filings assumption or modification is impossible for many years.

**IT IS ORDERED** Husband shall not to stop, prevent or otherwise frustrate Wife's attempts at loan assumption or modification. Additionally,

**IT IS FURTHER ORDERED** Husband shall sign any and all documents needed for loan assumption and modification. Should Husband refuse to sign papers, Wife is fully authorized to sign on his behalf. If, at any time, Wife is told that modification and assumption is not possible or that she fails to meet the qualifications or that because of bankruptcy filings the assumption cannot take place for four years, then **IT IS FURTHER ORDERED** that Wife shall let the Georgia home go immediately into foreclosure. If Wife fails to allow the home to go into foreclosure, the Court, pursuant to Rule 83(A)(1)(c) and A.R.S. § 25-318(P), will suspend the award of all retirement accounts from the September 8, 2017. If requested, the Court will hold an Evidentiary Hearing and may consider some reallocation of retirement funds.

Retirement

By the terms of the parties Divorce Decree, both parties were awarded an equal share of each other's retirement.

**IT IS ORDERED** Husband shall inform Wife within thirty days the amount of "his points" so that his military pension can be divided. Each party shall respond within one week of any written request for signatures or information that is needed to complete the QDRO process. Failure to respond in writing within one week will result in a $100.00/day fine until the party responds.

FN 2015-003563                                   05/02/2022

Contempt and Attorney Fees

**THE COURT FINDS** and **IT IS ORDERED** that neither party is found in contempt at this time.

**IT IS FURTHER ORDERED** denying Wife's request for attorney fees regarding the enforcement matter.

No further claims or issues remain for the Court to decide. Therefore,

**IT IS FURTHER ORDERED** pursuant to Rule 78(C), Arizona Rules of Family Law Procedure, this final judgment/decree is signed by the Court and it shall be entered by the Clerk. The time for appeal begins upon entry of this judgment by the Clerk. For more information on appeals, see Rule 8 and other Arizona Rules of Civil Appellate Procedure.

**IT IS FURTHER ORDERED** denying any affirmative relief sought before the date of this Order that is not expressly granted above.

_____
HONORABLE JAMES DRAKE
JUDGE OF THE SUPERIOR COURT

All parties representing themselves must keep the Court updated with address changes.  A form may be downloaded at:
http://www.superiorcourt.maricopa.gov/SuperiorCourt/LawLibraryResourceCenter/



EXHIBIT 4

10/11/2022

Respond to this offer no later than:
## 10/29/2022

PERRY RICHARD HARRIS JR
ANITA E HARRIS
945 N PASADENA UNIT 110
MESA, AZ 85201

## **Account Information**

**Loan Number: 7110343113**

**Property Address:**
404 RIDGETOP DR
ACWORTH, GA 30102

We are here to help!

Your Relationship Manager:
Manoj Paul
RMA@mortgagefamily.com
Online:
www.mortgagequestions.com

## APPROVAL FOR PERMANENT MODIFICATION
### PLEASE READ CAREFULLY

Dear PERRY RICHARD HARRIS JR and ANITA E HARRIS:

**Congratulations!** You are approved for a loan modification. Please read this letter so that you understand the next steps necessary to accept the loan modification offer.

Below you will find important information about our decision regarding mortgage assistance with additional details on the following pages. However, do not forget that **time is of the essence** and to accept this modification you must respond by 10/29/2022 . This offer will expire so please make sure you respond by the date listed on this letter.

**What you need to do:**
1. To accept the loan modification, you must do the following:
   a. Sign the Modification Agreement and
   b. Return it to us in the enclosed, prepaid envelope by 10/29/2022

**What you need to know:**
1. You are approved for a Loan Modification with monthly payments in the amount of $1,546.72. The offer details are enclosed. Please read all materials carefully.
2. If the Modification Agreement has notary provisions at the end, the enclosed Modification should only be signed in the presence of a notary public and other witnesses (if applicable). All documents must be executed and the signatures must be exactly as the names are typed. Please retain one copy for your records and return the other original Modification Agreement.

**The following additional documents are enclosed for your information:**

7110343113                        *OCWN_PLS_FNL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.



- Summary of Your Modified Loan
- Additional Assistance Available
- Legal Disclosures

- Instructions for Making your Payment
- Modification Agreement

We are here to help! Manoj Paul has been assigned as your Relationship Manager and will be your designated representative for resolution, inquiries and submission of documents.

For any questions, please **contact us Monday through Friday 8:00am to 9:00pm ET at 800-750-2518, to speak with the assigned Relationship Manager**. If Manoj Paul is not available, another dedicated member of our Home Retention Team will be available to answer any questions.

Our Customer Care Center may also be contacted at 800-449-8767, Monday through Friday 8:00 am to 9:00 pm, Saturday 8:00 am to 5:00 pm ET

Sincerely,

Loan Servicing

<div style="text-align: right">5-814-CBL54-0000060-001-03-000-001-000-000</div>

7110343113

*OCWN_PLS_FNL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligations are not fulfilled.

NMLS # 2726



## SUMMARY OF YOUR MODIFIED LOAN

- **FIRST MODIFIED PAYMENT DUE DATE:** Your first modified monthly payment will begin on 11/01/2022.
- The modified interest rate is 5.125% and will be fixed for the remaining term of your loan.
- The modified monthly mortgage payment amount is as follows:
- **NEW MODIFIED PAYMENT:**

### Modified Monthly Payment

| | |
|---|---|
| Principal and Interest | $1,112.96 |
| Escrow* | $433.76 |
| Total Modified Monthly Payment | $1,546.72 |

*The escrow payment may be adjusted periodically in accordance with applicable law due to changes in property taxes, insurance amounts, or other escrow expenses. Therefore, your total monthly payment may change accordingly. We will notify you of any adjustments to the total monthly payment.

- **NEW PRINCIPAL BALANCE:** Any past due amounts as of the modification effective date, including unpaid interest, real estate taxes, insurance premiums, and certain assessments paid on your behalf to a third party, will be added to your mortgage loan balance.

- **ESCROW ACCOUNT:** The terms of your Modification Agreement require the servicer to set aside a portion of your new monthly payment in an escrow account for payment of your property taxes, insurance premiums and other required fees. Any prior waiver of escrows by your lender is no longer in effect. PHH Mortgage Services will draw on this account to pay your real estate taxes and insurance premiums as they come due. Please note that your escrow payment amount will adjust if your taxes, insurance premiums and/or assessment amounts change, so the amount of your monthly payment that PHH Mortgage Services must place in escrow will also adjust as permitted by law. This means that your monthly payment may change. Your initial monthly escrow payment will be included in the loan payment noted in the enclosed Agreement; you do not need to remit this amount separately.

- **NO FEES:** There are no fees under the Modification Program.

- **AGREEMENT:** You must **sign and return the Modification Agreement to us** in the enclosed, pre-paid envelope by the due date which is 10/29/2022 . If the Modification Agreement has notary provisions at the end, the enclosed Loan Modification Agreement should not be signed unless you are in the presence of a notary and other witnesses (if applicable). All of the documents must be executed and the signatures must be exactly as the names are typed. Please retain one copy for your records and return all other original Modification Agreements.

7110343113

*OCWN_PLS_FNL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligations are not fulfilled by the terms of the agreement.

NMLS # 2726



## ADDITIONAL LEGAL DISCLOSURES

**Notice Regarding Bankruptcy:** Please be advised that if you are part of an active Bankruptcy case or if you have received an Order of Discharge from a Bankruptcy Court, this letter is in no way an attempt to collect either a pre-petition, post-petition or discharged debt. If your bankruptcy case is still active, no action will be taken in willful violation of the Automatic Stay. If you have received an Order of Discharge in a Chapter 7 case, any action taken by us is for the sole purpose of protecting our lien interest in the underlying mortgaged property and is not an attempt to recover any amounts from you personally. Finally, if you are in an active Chapter 11, 12 or 13 bankruptcy case and an Order for Relief from the Automatic Stay has not been issued, you should continue to make payments in accordance with your plan.

**Tax Consequences of Loss Mitigations Options:** Your acceptance of a Loan Modification, Short Sale, or Deed-in-Lieu of Foreclosure may result in federal, state, or local tax consequences to you and/or affect your eligibility for any public assistance benefits. We cannot advise you on these impacts and encourage you to contact a tax professional to discuss any questions you may have.

If you would like to submit a qualified written request, a notice of error or a request for information, you must use the following address:

PHH Mortgage Services
PO Box 66002
Lawrenceville, NJ 08648-

7110343113

*OCWN_PLS_FNL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

5-814-CBL54-0000060-001-06-000-001-000-600



## PAYMENT REMITTANCE INFORMATION

**PLEASE DON'T FORGET:**
1. All checks should be payable to PHH Mortgage Services.
2. Always include the account number with the payment.



| Overnight Mail | Regular Mail |
|---|---|
| **Money Order, Personal Check, or Certified Check** | **Money Order, Personal Check, or Certified Check** |
| **Send To**: PHH Mortgage Services 1661 Worthington Rd., Ste. 100 ATTN: SV19 West Palm Beach, FL 33409 | **Send To**: PHH Mortgage Services PO BOX 24781 ATTN: SV 19 West Palm Beach, FL 33416 |
| **Reference:** PHH Mortgage Account # 7110343113 | **Reference:** PHH Mortgage Account # 7110343113 |

| Money Gram | Western Union |
|---|---|
| **Receiver Code:** 7440 **Payable to:** PHH Mortgage **City:** Mt Laurel **State:** New Jersey **Reference:** PHH Mortgage Account # 7110343113 **Agent Locator:** (800) 926-9400 | **By WUQC: Western Union Quick Collect** **Code City:** PHHUS **State:** NJ **Reference:** PHH Mortgage Account # 7110343113 |

5-814-CBL54-0000060-001-07-000-001-000-000

7110343113

*OCWN_PLS_FNL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

October 29th, 2022

To: New Rez

From: Anita E. Harris

RE:LN7110343113- Loan Modification

FAX # 856 917 2848

To Whom it May Concern:

Per your request, the Loan Modification was accepted, signed and mailed to you on Oct. 28th, 2022, in the prepaid mailer from your company.

I am faxing this copy as a backup- because the prepaid mailer I could not get it certified according to the United States Postal Service. Now that, I am thinking about it- I could have placed your prepaid mailer within a USPS prepaid mailer and made sure it was certified. Please forgive, I wasn't thinking. I pray that it does get to you all via USPS.

Again, this fax as stated will serve as a backup of what has already been sent via USPS on Oct.28th 2922.

Sincerely

Anita Harris

678 296-4004

Loan Number: 7110343113
Investor Loan Number: 0000505223

This document was prepared by PHH Mortgage Corporation

**After Recording Return To:**
PHH Mortgage Corporation
Attention: Modification Processing
PO Box 24737
West Palm Beach, FL 33416-9838

_____ [Space Above This Line For Recording Data] _____

## LOAN MODIFICATION AGREEMENT

Borrower (s): PERRY RICHARD HARRIS JR, ANITA E HARRIS

THIS IS A BALLOON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS $194,526.71, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.

**BALLOON PAYMENT DISCLOSURE**
THIS MODIFICATION AGREEMENT INCLUDES A BALLOON PAYMENT, WHICH MEANS THAT EVEN IF YOU MAKE ALL THE SCHEDULED PAYMENTS WHEN DUE, THE LOAN WILL NOT BE PAID IN FULL AT THE END OF ITS TERM. AS A RESULT, ON THE MATURITY DATE OUTLINED WITHIN THIS AGREEMENT, YOU WILL BE REQUIRED TO REPAY, IN A SINGLE PAYMENT, THE ENTIRE REMAINING PRINCIPAL BALANCE PLUS ALL ACCRUED BUT UNPAID INTEREST AND ALL OTHER AMOUNTS OWING ON THAT DATE (INCLUDING BUT NOT LIMITED TO ALL ADVANCES MADE BY LOAN SERVICER UNDER THE TERMS OF THE SECURITY INSTRUMENT).

*CAUTION TO BORROWER: NO OBLIGATION TO REFINANCE* – LOAN SERVICER HAS NO OBLIGATION TO REFINANCE THIS LOAN OR MAKE YOU A NEW LOAN ON THE MATURITY DATE. IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN IT COMES DUE, YOU MAY HAVE TO OBTAIN A NEW LOAN AGAINST THE PROPERTY TO MAKE THE BALLOON PAYMENT. ASSUMING ANOTHER LENDER MAKES YOU A NEW LOAN ON THE MATURITY DATE, YOU WILL PROBABLY BE CHARGED INTEREST AT THE MARKET RATE PREVAILING AT THAT TIME. SUCH INTEREST RATE MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. YOU MAY AGAIN HAVE TO PAY COMMISSIONS, FEES AND EXPENSES FOR THE ARRANGING OF THE NEW LOAN. IN ADDITION, IF YOU ARE UNABLE TO MAKE THE MONTHLY PAYMENTS OR THE BALLOON PAYMENT, YOU MAY LOSE THE PROPERTY AND ALL OF THE EQUITY THROUGH FORECLOSURE. KEEP THIS IN MIND IN DECIDING WHETHER TO AGREE TO THE TERMS OF THIS LOAN MODIFICATION.

5-814-CBL54-00000060-001-16-000-001-000-000

Please be advised, we were unable to achieve a modification option that would reduce the monthly payment; however, we were able to capitalize the delinquent balance and find a modification that is allowed by the investor of the account. If the requirements of the final Modification Agreement are complied with, the account may be modified. If this offer is not accepted, please contact us to discuss non-retention options.

The debtor, PERRY RICHARD HARRIS JR, ANITA E HARRIS, and The Bank of New York Mellon as Trustee for NovaStar Mortgage Funding Trust, Series 2005-4, NovaStar Home Equity Loan Asset-Backed Certificates, Series 2005-4 through the servicer of the underlying mortgage loan agreement, PHH Mortgage Corporation, have agreed to modify the terms of said underlying mortgage loan agreement. The Bank of New York Mellon as Trustee for NovaStar Mortgage Funding Trust, Series 2005-4, NovaStar Home Equity Loan Asset-Backed Certificates, Series 2005-4 is the owner of the loan and retains all rights to collect payments as per the underlying mortgage loan agreement. PHH Mortgage Corporation, remains servicer for said underlying mortgage loan agreement. 

This Loan Modification Agreement ("Agreement"), made this 11th day of October, 2022 ("Modification Agreement Date"), between PERRY RICHARD HARRIS JR, ANITA E HARRIS ("Borrower") and PHH Mortgage Corporation, Lender/Servicer or Agent for Lender/Servicer ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed ("Security Instrument") dated 11/02/2005 and recorded in the Records of Cobb County, GA and (2) the Note, bearing the same date as, and secured by, the Security Instrument (collectively, "Loan Documents"), which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

<div align="center">

404 RIDGETOP DR
ACWORTH, GA 30102

</div>

The real property described being set forth as follows:

<div align="center">

**(Legal Description Attached, if applicable, for Recording Only)**

</div>

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

**Representations:**

1. Borrower is experiencing a financial hardship and as a result, 1) is or will be in default under the Loan Documents and 2) does not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments due under the Loan Documents.
2. Under penalty of perjury, if required by the Lender, borrower provided Lender with full and complete information that, when provided, accurately stated borrower's income, expenses, and assets. To the extent requested by Lender, borrower provided documents that supported that information.
3. Borrower has made any and all required trial period plan payments or down payments.
4. Borrower currently has sufficient income to support the financial obligations under the Loan Documents, as modified by this Agreement.
5. Borrower understands that property title may be reviewed as a precondition to the modification.

**Acknowledgements and Preconditions to the Modification:**

1. Lender has no obligation to make any modification of the Loan Documents if any of the requirements under this Agreement are not met.
2. Prior to the Modification Effective Date (defined as 10/01/2022), if Lender determines that any of the representations above are no longer true and correct, 1) the Loan Documents will not be modified, 2) this Agreement will not be valid, and 3) Lender will have all of the rights and remedies provided by the Loan Documents.
3. The Loan Documents will not be modified unless and until 1) Lender approves this Agreement and 2) the Modification Effective Date has occurred.

**Modified Loan Terms:**

5-814-CBL54-0000060-001-019-000-001-000-000

1. If all of Borrower's representations above continue to be true and correct and all preconditions to the modification set forth above have been met, the Loan Documents will automatically become modified on 10/01/2022. If Borrower has failed to make any payments that are a precondition to this modification or receipt of clear title is not received, this modification will not take effect.

The new Maturity Date will be 12/01/2035.

Borrower understands that in order to reach an affordable payment under this modification, the loan may have been re-amortized beyond the maturity date. This means that if all payments are made in accordance with the loan terms, when Borrower reaches the maturity date, there will be an outstanding amount still due.



This amount includes an interest-bearing balloon payment in the amount of $194,526.71 ("Balloon Payment") which is due when the loan reaches maturity, sold, refinanced or otherwise accepted by the Lender as paid in full. Borrower specifically acknowledges that this is a balloon modification and therefore Borrower will have a balloon payment due at maturity in the approximate amount of $194,526.71.

**BALLOON PAYMENT: THIS MORTGAGE LOAN CONTAINS A BALLOON PAYMENT PROVISION. A BALLOON PAYMENT IS A SCHEDULED LUMP SUM USUALLY DUE AT THE END OF THE MORTGAGE LOAN TERM THAT IS SIGNIFICANTLY LARGER THAN THE OTHER REGULARLY SCHEDULED PERIODIC PAYMENTS. IF YOU CANNOT PAY THE BALLOON PAYMENT WHEN DUE, YOU MAY HAVE TO OBTAIN A NEW LOAN TO MAKE THE BALLOON PAYMENT OR YOU MAY LOSE YOUR PROPERTY THROUGH FORECLOSURE. BEFORE DECIDING TO TAKE THIS LOAN, CONSIDER YOUR ABILITY TO PAY THE BALLOON PAYMENT WHEN IT COMES DUE. THE BALLOON PAYMENT ON THE MORTGAGE LOAN YOU HAVE APPLIED FOR IS DUE 158 MONTHS FROM THE DATE YOUR MORTGAGE LOAN BEGINS.**

**CAUTION TO BORROWER: IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN DUE, IT MAY BE NECESSARY FOR YOU TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY FOR THIS PURPOSE AND YOU MAY BE REQUIRED TO AGAIN PAY COMMISSION AND EXPENSES FOR ARRANGING THE LOAN. KEEP THIS IN MIND IN DECIDING UPON THE AMOUNT AND TERMS OF THE LOAN THAT YOU OBTAIN AT THIS TIME.**

2. The current Unpaid Principal Balance is $138,772.37. The New Principal Balance of the Note will be $226,900.45 (the "New Principal Balance"). This includes amounts and arrearages that are past due as of the Modification Effective Date (including, but not limited to, unpaid and any previously deferred principal and interest, fees, escrow advances and other costs, collectively, "Unpaid Amounts") excluding any fees, costs and/or corporate advances not added to the account as of the Modification Agreement Date and amounts not added to the New Principal Balance due to investor and/or mortgage insurer restrictions less any amounts paid to the Lender but not previously credited to the Loan. Any amounts not added to the New Principal Balance will remain on the account until paid and will become due when the interest-bearing balance is paid in full or upon maturity as applicable pursuant to State or Federal law.

3. The New Principal Balance may represent the sum of the "Deferred Principal Balance" (if applicable), the "Principal Forgiveness" (if applicable) and the "Interest Bearing Principal Balance." The Interest Bearing Principal Balance is $226,900.45. Borrower understands that by agreeing to add the Unpaid Amounts to the Unpaid Principal Balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. Borrower also understands that this means interest will now accrue on the unpaid interest that is added to the New Principal Balance, which would not happen without this Agreement.

4. Borrower promises to pay the New Principal Balance, plus interest, and any future fees/costs to the order of the Lender. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of 5.125%, beginning 10/01/2022. Borrower promises to make monthly payments of principal and interest of U.S. $1,112.96, beginning on 11/01/2022 and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. Borrower promises to also pay any applicable monthly escrow payments as outlined in this Agreement. The initial monthly escrow amount is $433.76. The yearly rate of 5.125% will remain in effect until principal and interest are paid in full. If on 12/01/2035 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended

by this Agreement, Borrower will pay these amounts in full on the Maturity Date. Borrower agrees to pay in full all amounts still owed under the Note and the Security Instrument by the earliest of: (i) The date Borrower sells or transfers an interest in the Property, (ii) The date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

The initial monthly escrow amount is $433.76. The escrow payments may be adjusted periodically in accordance with applicable law due to changes in property taxes, insurance amounts or other escrow expenses and therefore the total monthly payment may change accordingly. The escrow payment amount shown is based on current data and represents a reasonable estimate of expenditures for future escrow obligations; however, escrow payments may be adjusted periodically in accordance with applicable law.



Borrower's payment schedule for the modified Loan is as follows:

| Years | Interest Rate (%) | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* (adjusts periodically) | Total Monthly Payment* (adjusts periodically) | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1 - 13.17 | 5.125 | 10/01/2022 | $1,112.96 | $433.76 | $1,546.72 | 11/01/2022 | 158 |

*The escrow payments may be adjusted periodically in accordance with applicable law due to changes in property taxes, insurance amounts or other escrow expenses and therefore the total monthly payment may change accordingly. The escrow payment amount shown is based on current data and represents a reasonable estimate of expenditures for future escrow obligations; however, escrow payments may be adjusted periodically in accordance with applicable law.

**Additional Agreements:**

1. **Transfer of Property.** If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

2. **Original Loan Document Conditions.** Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument and Note, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument and Note; however, if applicable, the following terms and provisions are forever canceled, null and void, as of 10/01/2022:

   a. all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   b. all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

3. Borrower understands and agrees that:
   a. **Default Under the Modification.** All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   b. **Original Loan Document Conditions.** All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the

5-814-CBL54-0000060-001-21-000-001-000-000

Page 4

Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender. Borrower agrees that the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

c. **Modification Does Not Constitute Release.** Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.



d. **Costs and Expenses.** All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender or not permitted per State or federal law.

e. **Agreement to Provide Any Additional Modification Documents.** Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower. Borrower will execute such other documents as may be reasonably necessary to correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. Borrower understands that either a corrected Agreement or a letter agreement containing the correction will be provided to Borrower for Borrower's signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If Borrower elects not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement. Borrower agrees to deliver any such corrective documents within ten (10) days after Borrower receives the Lender's written request for such replacement.

f. **Agreement of Use of Non-Public Information.** Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

g. **Consent to Contact.** Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

4. **Escrow Account.** By this section, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked and Borrower has been advised of the amount needed to fully fund the Escrow Account.

Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that

Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph. 

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

5. **Severability.** Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be or become prohibited or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Agreement.

6. **Inclusion of Exhibits.** Borrower authorizes Lender to attach an Exhibit A to this Agreement, which may include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk (or other recordation office) to allow for recording if and when Lender seeks recordation.

7. **Errors and Omissions.** That if any documents related to the loan documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, Borrower will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any

documentation the Lender deems necessary. All documents the Lender requests of Borrower under this section shall be referred to as "Documents." Borrower agrees to deliver the Documents within ten (10) days after Borrower receives the Lender's written request for such replacement. At Lender's option, this Agreement will be void and of no legal effect and the loan terms will revert to the terms prior to the approved modification.

8. **Final Agreement.** This Agreement may not be supplemented, changed, modified or omitted except by written document executed by both the Lender and the Borrower. This Modification constitutes the entire agreement between the Lender and Borrower and supersedes all previous negotiations and discussions between the Borrower and the Lender and neither prior evidence nor any prior or other agreement shall be permitted to contradict or vary its terms. There are no promises, terms, conditions, or obligations other than those contained in this Agreement.

9. **Additional Events of Default.** Without limiting the other events of default set forth in the Loan Documents, Borrower will be in default under this Agreement and under the Loan Documents upon the occurrence of any one or more of these events:

   a. Any material representation or warranty made by you in the Loan Documents, this Agreement, or any initial agreement proves to be false or misleading in any respect.

   b. Borrower fails to make the New Monthly Payments as required by this Agreement.

   c. Borrower sells or conveys any interest in the Property without Lender's prior written consent.

   d. Breach of any of the terms or provisions of this Agreement.

10. **Consequences of Default.** If Borrower defaults under this Agreement or the Loan Documents after the Modification Effective Date (your "Default"), Lender may, in addition to the remedies provided by the Loan Documents, subject only to applicable law, institute any foreclosure or collection proceedings without prejudice for having accepted any payments, including but not limited to the New Monthly Payments, under this Agreement and exercise any of its rights and remedies against Borrower under the Loan Documents and/or this Agreement.

11. **Mortgage Insurance.** Borrower understands that the mortgage insurance premiums on the Loan, if applicable, may increase as a result of the capitalization which may result in a higher total monthly payment. Furthermore, the date on which Borrower may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

12. **Credit Reporting.** Lender is required to report factual information to the credit reporting agencies. Lender may report information about the account to credit bureaus. Late payments, missed payments, or other defaults on the account may be reflected in the credit report.

13. **No Novation.** Borrower expressly agrees that this Agreement is not a new loan from Lender but simply the modification of the existing obligations under the Loan Documents. Neither Borrower nor Lender has any intention to extinguish or discharge the indebtedness or the liens evidenced by the Loan Documents.



Page 7

## BORROWER ACKNOWLEDGEMENT

**IMPORTANT – Do NOT sign this Agreement unless you are in the presence of a notary. If extenuating circumstances prevent one notary signature, separately signed and notarized agreements will be accepted; however, the agreements must be returned in the same package to PHH Mortgage Corporation.**

Each of the Borrower(s) and the Lender acknowledge that no representations, agreements or promises were made by the other party or any of its representatives other than those representations, agreements or promises specifically contained herein. This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

All individuals on the mortgage, note and the property title must sign this Agreement.

**For each borrower signature, one witness signature is required. If extenuating circumstances prevent one notary signature, separately signed and notarized agreements will be accepted; however, the agreements must be returned in the same package to PHH Mortgage Corporation.**

10/27/22
Date

PERRY RICHARD HARRIS JR
(Per court order of 5/2/22

_____
Witness – Signature

_____
Witness – Printed Name

10/27/22
Date

ANITA E HARRIS

_____
Witness – Signature

_____
Witness – Printed Name

to Dismiss with Prejudice filed 8/27/2019) that Wife had never, in the previous five filings, ever brought forth a feasible Chapter 13 plan and filed her bankruptcies in bad faith. The Trustee noted "This case was clearly brought to frustrate the collection efforts of the Debtor's ex-husband by delaying the sale of the real property in Georgia." Wife's stated desire to move into the Georgia home in less than six months is not credible.

That being said, Husband is not wholly blameless in this regard either. Husband steadfastly refuses to let loan modifications go through and will not assist or sign any documents to facilitate Wife assuming the loan and eventually getting his name off the mortgage and ultimately, the title. It seems as though Husband has looked beyond just the initial steps of modification and has taken notice of the longer term possible underwriting policies that may indeed thwart Wife's goal. The problem here is that Husband is inserting himself into the role that is properly played by the lender. Let the lender be the one to inform Wife that because of the bankruptcy filings assumption or modification is impossible for many years.

**IT IS ORDERED** Husband shall not to stop, prevent or otherwise frustrate Wife's attempts at loan assumption or modification. Additionally,

**IT IS FURTHER ORDERED** Husband shall sign any and all documents needed for loan assumption and modification. Should Husband refuse to sign papers, Wife is fully authorized to sign on his behalf. If, at any time, Wife is told that modification and assumption is not possible or that she fails to meet the qualifications or that because of bankruptcy filings the assumption cannot take place for four years, then **IT IS FURTHER ORDERED** that Wife shall let the Georgia home go immediately into foreclosure. If Wife fails to allow the home to go into foreclosure, the Court, pursuant to Rule 83(A)(1)(c) and A.R.S. § 25-318(P), will suspend the award of all retirement accounts from the September 8, 2017. If requested, the Court will hold an Evidentiary Hearing and may consider some reallocation of retirement funds.

Retirement

By the terms of the parties Divorce Decree, both parties were awarded an equal share of each other's retirement.

**IT IS ORDERED** Husband shall inform Wife within thirty days the amount of "his points" so that his military pension can be divided. Each party shall respond within one week of any written request for signatures or information that is needed to complete the QDRO process. Failure to respond in writing within one week will result in a $100.00/day fine until the party responds.

FN 2015-003563                                              05/02/2022

Contempt and Attorney Fees

**THE COURT FINDS** and **IT IS ORDERED** that neither party is found in contempt at this time.

**IT IS FURTHER ORDERED** denying Wife's request for attorney fees regarding the enforcement matter.

No further claims or issues remain for the Court to decide. Therefore,

**IT IS FURTHER ORDERED** pursuant to Rule 78(C), Arizona Rules of Family Law Procedure, this final judgment/decree is signed by the Court and it shall be entered by the Clerk. The time for appeal begins upon entry of this judgment by the Clerk. For more information on appeals, see Rule 8 and other Arizona Rules of Civil Appellate Procedure.

**IT IS FURTHER ORDERED** denying any affirmative relief sought before the date of this Order that is not expressly granted above.

_____
HONORABLE JAMES DRAKE
JUDGE OF THE SUPERIOR COURT

All parties representing themselves must keep the Court updated with address changes. A form may be downloaded at:
   http://www.superiorcourt.maricopa.gov/SuperiorCourt/LawLibraryResourceCenter/

State of _____

County of _____

On this ___ day of _____ , _____ , before me, the undersigned, a Notary Public in and for said county and
state, personally appeared _____personally
known to me or identified to my satisfaction to be the person(s) who executed the within instrument, and they duly
acknowledged that said instrument is their act and deed, and that they, being authorized to do so, executed and delivered
said instrument for the purposes therein contained.

Before me, a Notary Public in and for said County and State, also personally appeared _____,
WITNESS to the foregoing instrument, who, being by me duly sworn, did say that he/she knows the individual
who executed the instrument to be the individual(s) described in and who executed the foregoing instrument; that
said WITNESS was present and saw he/she execute the same; and that said WITNESS at the same time
subscribed his/her name as a witness thereto.

Witness my hand and official seal.

_____
Notary Public

My Commission Expires: _____

*was informed By*
*Relationship manager*
*did not need notarizian*
*Carla Anderson*

5-814-CBL54-0000060-001-26-000-001-000-000

# EXHIBIT 5

Deed Book 16122 Pg 5914
Filed and Recorded Mar-27-2023 02:07pm
2023-0022343
Real Estate Transfer Tax $0.00
0332023004870

Connie Taylor
Clerk of Superior Court Cobb Cty. Ga.

**Prepared By:**
Anita E. Harris

**After Recording Return To:**
3344 Cobb Parkway Northwest #1059
Acworth, Georgia 30101

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## QUITCLAIM DEED

On May 02, 2022 THE GRANTOR(S),

- Perry R. Harris, and Anita E. Harris, a formerly married couple who were divorced on January 24, 2017,

for and in consideration of: One Dollar ($1.00) and/or other good and valuable consideration conveys, releases and quitclaims to the GRANTEE(S):

- Anita E Harris, a single person, residing at 404 Ridgetop Drive Northwest, Acworth, Cobb County, Georgia 30102

the following described real estate, situated in Acworth, in the County of Cobb, State of Georgia

Legal Description: See attached *Exhibit A*

Grantor does hereby convey, release and quitclaim all of the Grantor's rights, title, and interest in and to the above described property and premises to the Grantee(s), and to the Grantee(s) heirs and assigns forever, so that neither Grantor(s) nor Grantor's heirs, legal representatives or assigns shall have, claim or demand any right or title to the property, premises, or appurtenances, or any part thereof.

Tax Parcel Number: 100080190051569473

Exhibit "4"

Mail Tax Statements To:
Anita E Harris
3344 Cobb Parkway Northwest #1059
Acworth, Georgia 30101

**[SIGNATURE PAGE FOLLOWS]**

Deed Book 16122 Pg 5916

FN 2015-003563                                    05/02/2022

to Dismiss with Prejudice filed 8/27/2019) that Wife had never, in the previous five filings, ever brought forth a feasible Chapter 13 plan and filed her bankruptcies in bad faith. The Trustee noted "This case was clearly brought to frustrate the collection efforts of the Debtor's ex-husband by delaying the sale of the real property in Georgia." Wife's stated desire to move into the Georgia home in less than six months is not credible.

That being said, Husband is not wholly blameless in this regard either. Husband steadfastly refuses to let loan modifications go through and will not assist or sign any documents to facilitate Wife assuming the loan and eventually getting his name off the mortgage and ultimately, the title. It seems as though Husband has looked beyond just the initial steps of modification and has taken notice of the longer term possible underwriting policies that may indeed thwart Wife's goal. The problem here is that Husband is inserting himself into the role that is properly played by the lender. Let the lender be the one to inform Wife that because of the bankruptcy filings assumption or modification is impossible for many years.

**IT IS ORDERED** Husband shall not to stop, prevent or otherwise frustrate Wife's attempts at loan assumption or modification. Additionally,

**IT IS FURTHER ORDERED** Husband shall sign any and all documents needed for loan assumption and modification. Should Husband refuse to sign papers, Wife is fully authorized to sign on his behalf. If, at any time, Wife is told that modification and assumption is not possible or that she fails to meet the qualifications or that because of bankruptcy filings the assumption cannot take place for four years, then **IT IS FURTHER ORDERED** that Wife shall let the Georgia home go immediately into foreclosure. If Wife fails to allow the home to go into foreclosure, the Court, pursuant to Rule 83(A)(1)(c) and A.R.S. § 25-318(P), will suspend the award of all retirement accounts from the September 8, 2017. If requested, the Court will hold an Evidentiary Hearing and may consider some reallocation of retirement funds.

Retirement

By the terms of the parties Divorce Decree, both parties were awarded an equal share of each other's retirement.

**IT IS ORDERED** Husband shall inform Wife within thirty days the amount of "his points" so that his military pension can be divided. Each party shall respond within one week of any written request for signatures or information that is needed to complete the QDRO process. Failure to respond in writing within one week will result in a $100.00/day fine until the party responds.

Case 2:25-bk-01794-EPB    Doc 42    Filed 03/31/25    Entered 03/31/25 10:05:35    Desc
Main Document      Page 44 of 248

Deed Book: 16122 Ps 5917

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

FN 2015-003563

05/02/2022

CLERK OF THE COURT
Y. Anchondo
Deputy

IN RE THE MATTER OF
PERRY HARRIS

PERRY HARRIS
2654 W HORIZON RDGE PKWY
B5-69
HENDERSON NV 89052

AND

ANITA ELAINE SMITH HARRIS

CHELSEA LYNCH

JUDGE DRAKE

## UNDER ADVISEMENT RULING

On April 28, 2022 the Court held an Evidentiary Hearing regarding Respondent/Wife's *Petition to Enforce Divorce Decree: Retirement Accounts,* filed on March 4, 2022 and to address, the status of the Georgia property. The Court is somewhat surprised by Wife's request for relief while at the same time disregarding this Court's other orders.

The Court having considered the evidence and the testimony, rules as follows:

Georgia Property

**THE COURT FINDS** that Wife has willfully violated this Court's Order of September 18, 2017 regarding the Georgia property for four and one-half years. Wife was ordered to either let the property in Georgia, 404 Ridgetop Drive, NW, Acworth, Georgia, go into foreclosure or to refinance the property and give fifty percent of the equity (if any) to Petitioner/Husband. Wife has improperly used the Bankruptcy Court, with 7 separate filings, to thwart the resolution of the Georgia property's mortgage debt. Indeed, it was the Bankruptcy Court's Trustee (filing Motion

Deed Book 16122 Pg 5918

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

FN 2015-003563                                    05/02/2022

Contempt and Attorney Fees

**THE COURT FINDS** and **IT IS ORDERED** that neither party is found in contempt at this time.

**IT IS FURTHER ORDERED** denying Wife's request for attorney fees regarding the enforcement matter.

No further claims or issues remain for the Court to decide. Therefore,

**IT IS FURTHER ORDERED** pursuant to Rule 78(C), Arizona Rules of Family Law Procedure, this final judgment/decree is signed by the Court and it shall be entered by the Clerk. The time for appeal begins upon entry of this judgment by the Clerk. For more information on appeals, see Rule 8 and other Arizona Rules of Civil Appellate Procedure.

**IT IS FURTHER ORDERED** denying any affirmative relief sought before the date of this Order that is not expressly granted above.

HONORABLE JAMES DRAKE
JUDGE OF THE SUPERIOR COURT

All parties representing themselves must keep the Court updated with address changes. A form may be downloaded at:
http://www.superiorcourt.maricopa.gov/SuperiorCourt/LawLibraryResourceCenter/

Case 2:25-bk-01794-EPB    Doc 42    Filed 03/31/25    Entered 03/31/25 10:05:35    Desc
Main Document    Page 46 of 248

## EXHIBIT A: LEGAL DESCRIPTION OF PROPERTY

## LEGAL DESCRIPTION

All that tract or parcel of land lying and being in land lot 76 of the 16th District, 2nd section, Cobb County, Georgia, Being lot 74 Ridgewood Creek, Unit 1, As per plat recorded in Plat Book 112, Page 45, Cobb County records which plat is hereby referred to and made a part of this description.

Subject to general taxes for the current year and subsequent years, covenants, conditions, easements, exceptions, reservations, restrictions, rights of way of records, if any.

**Grantor Signatures:**

DATED: 3/21/23

~~Perry R. Harris~~ (signature)

Perry R. Harris
2654 W Horizon Rdge Pkwy B5-69
Henderson, Nevada
89052

DATED: 3/21/23

(signature)

Anita E. Harris
3344 Cobb Parkway Northwest, 1059
Acworth, Georgia
30101

**In Witness Whereof,**

(signature)
Witness

_____

Witness

STATE OF GEORGIA, COUNTY OF COBB, ss:

On this _____ day of _____, _____, before me,
_____, personally appeared Perry R. Harris, known to me (or
satisfactorily proven) to be the persons whose names are subscribed to the within instrument and
acknowledged that they executed the same as for the purposes therein contained.

In witness whereof I hereunto set my hand and
official seal.

_____

Notary Public

_____

Title (and Rank)

My commission expires _____

Page 3 of 5

STATE OF GEORGIA, COUNTY OF COBB, ss:

Deed Book 16122 Pg 5922
Connie Taylor
Clerk of Superior Court Cobb Cty. Ga.

On this 21 day of March , 2023, before me,
Darlene Lorenzo , personally appeared Anita E. Harris, known to me (or satisfactorily proven) to be the persons whose names are subscribed to the within instrument and acknowledged that they executed the same as for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

_____
Notary Public
Signature of person taking acknowledgment

MSRII
_____
Title (and Rank)

My commission expires Mar 17, 2026

Clerk of the Superior Court
*** Filed ***
MAR 2 8 2023 8:00 a m

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

FN 2015-003563                                              03/24/2023

HONORABLE JAMES DRAKE

CLERK OF THE COURT
Y. Anchondo
Deputy

IN RE THE MATTER OF
PERRY HARRIS

RICHARD J PETERS

AND

ANITA ELAINE SMITH HARRIS

ANITA ELAINE SMITH HARRIS
UP

DOCKET FC
JUDGE DRAKE

## UNDER ADVISEMENT RULING RE: GEORGIA PROPERTY

The saga over the Georgia property has been going on since September 18, 2017. The Court will repeat some of the findings from the last hearing as they are still relevant after this last hearing.

**THE COURT FINDS** that Respondent/Wife has willfully violated this Court's Order of September 18, 2017 regarding the Georgia property for five and one-half years. Wife was ordered to either let the property in Georgia, 404 Ridgetop Drive, NW, Acworth, Georgia, go into foreclosure or to refinance the property and give fifty percent of the equity (if any) to Petitioner/Husband. Wife has improperly used the Bankruptcy Court, 7 separate filings, to thwart the resolution of the Georgia property's mortgage debt. Indeed, it was the Bankruptcy Court's Trustee (filing Motion to Dismiss with Prejudice filed 8/27/2019) that Wife had never, in the previous five filings, ever brought forth a feasible Chapter 13 plan and filed her bankruptcies in bad faith. The Trustee noted "This case was clearly brought to frustrate the collection efforts of the Debtor's ex-husband by delaying the sale of the real property in Georgia." At the previous hearing, Wife's stated desire to move into the Georgia home in less than six months was not

Case 2:25-bk-01794-EPB   Doc 42   Filed 03/31/25   Entered 03/31/25 10:05:35   Desc
Main Document   Page 51 of 248

credible and at today's hearing Wife confirmed that she had still not moved in but was "close by" the property. Wife's behavior over the course of this litigation has been extremely challenging and she was even temporarily jailed for refusing to vacate an Arizona property.

In May of last year, Wife was directed to attempt an assumption or modification. Additionally, Wife was authorized to sign on Mr. Harris' behalf *if* he refused to add his own signature to assumption or modification documents. The modification that Wife acquired however was not remotely like the terms in the original mortgage (expecting the outstanding balance plus arrearages and maybe some penalties). This new arrangement has a balloon payment of almost two hundred thousand dollars! Unfortunately, this Court's May 2, 2022 order has been improperly used in a manner to likely further antagonize Husband.

**THE COURT FURTHER FINDS** that this modification was not undertaken in good faith by Wife and Husband is not be responsible for these new terms as this Court's order did not authorize bad faith. Additionally, the Court heard credible testimony that Wife is, again, almost immediately behind significantly on mortgage payments. The Court finds that modification is not a viable alternative. Finally, at Trial, Wife testified that she signed Husband's name to a quit claim deed just a few days ago without ever asking him to sign and having him refuse. This is a clear violation of the May 2, Order.

**IT IS ORDERED** Wife is to hold Husband harmless for all debt associated with the Georgia property.

As outlined in the May 2, 2022 Order, the Court put everyone on notice that it might reallocate assets pursuant to 83(a)(1)(c) and 25-318(P). In the September 2017 Order, the parties were each awarded fifty percent of the other parties' retirement accounts earned during marriage. Neither party has begun to receive benefits from the other.

**IT IS FURTHER ORDERED** the award of Husband's military pension is vacated and now is awarded solely to him.

At Trial, Husband offered to forego any interest he had in Wife's ASRS (and 401K which may or may not exist) pension. The Court will not modify that award at this time as Wife still has past judgements for legal fees that have not been paid. The Court will entertain a Petition to Modify the ASRS retirement distribution after the attorney fees debts have been satisfied.

**THE COURT FURTHER FINDS** based on Wife's signing of the Quit Claim deed without prior presentation and the modification done in bad faith, that Wife has acted unreasonably. Wife shall be responsible for a portion of Husband's legal fees for this filing and Trial.

**IT IS FURTHER ORDERED** Husband shall file a China Doll affidavit **by no later than April 24, 2023.** Wife may respond in the normal course.

**THE COURT FINDS** there is no just reason to delay making a final order (for the exception of attorney fees).

**IT IS THEREFORE ORDERED** pursuant to Rule 78(b), Arizona Rules of Family Law Procedure, that this is a final judgment/decree and it shall be entered by the Clerk. The time for appeal begins upon entry of this judgment by the Clerk. For more information on appeals, see Rule 8 and other Arizona Rules of Civil Appellate Procedure.

**IT IS FURTHER ORDERED** denying any affirmative relief sought before the date of this Order that is not expressly granted above.


HONORABLE JAMES DRAKE
JUDGE OF THE SUPERIOR COURT

All parties representing themselves must keep the Court updated with address changes. A form may be downloaded at:
http://www.superiorcourt.maricopa.gov/SuperiorCourt/LawLibraryResourceCenter/

Case 2:25-bk-01794-EPB    Doc 42    Filed 03/31/25    Entered 03/31/25 10:05:35    Desc
Main Document    Page 53 of 248

EXHIBIT 6

## IN THE SUPERIOR COURT OF GWINNETT COUNTY

E-FILED IN OFFICE - KC
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**23-A-04954-4**
6/7/2023 10:08 AM
TIANA P. GARNER, CLERK

### STATE OF GEORGIA

**Perry Richard Harris Jr.**

_____

_____

PLAINTIFF

CIVIL ACTION   23-A-04954-4
NUMBER:_____

VS.

**Anita E. Harris et al.**

_____

_____

DEFENDANTS

### SUMMONS

**TO THE ABOVE NAMED DEFENDANT AND ALL PARTIES LISTED ON EXHIBIT "1" ATTACHED HERETO:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**James R. Fletcher II Esq.**
**328 SE Alexander Street, Ste 10**
**Marietta GA 30060**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____ day of 7th day of June, 2023 _____, 20____.

Tiana P. Garner
Clerk of Superior Court

By_____
Deputy Clerk

INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

SC-1 Rev. 2011

## Exhibit "1"

***Defendants:***

1. Anita E. Harris

2. The Bank of New York Mellon, f/k/a The Bank of New York as Successor in Interest to JPMorgan Chase Bank, N.A. as Trustee for Novastar Mortgage Funding Trust, Series 2005-4, Novastar Home Equity Loan Asset-Backed Certificates, Series 2005-4

3. PHH Mortgage Corporation

E-FILED IN OFFICE - KC
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**23-A-04954-4**
6/7/2023 10:08 AM
TIANA P. GARNER, CLERK

IN THE SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA

| | |
|---|---|
| Perry Richard Harris Jr. <br>     Plaintiff <br><br> v. <br><br> Anita E. Harris; <br> The Bank of New York Mellon, f/k/a The Bank <br>   of New York as Successor in Interest to <br>   JPMorgan Chase Bank, N.A. as Trustee for <br>   Novastar Mortgage Funding Trust, Series 2005-4, <br>   Novastar Home Equity Loan Asset-Backed <br>   Certificates, Series 2005-4; and <br> PHH Mortgage Corporation <br>     Defendants | CIVIL ACTION <br>     23-A-04954-4 <br> FILE NO. _____ |

## PETITION TO QUIET TITLE

COMES NOW Perry Richard Harris Jr. ("Plaintiff"), by and through the undersigned

counsel of record, and hereby files this Petition to Quiet Title against Defendants Anita E.

Harris; The Bank of New York Mellon, f/k/a The Bank of New York as Successor in Interest to

JPMorgan Chase Bank, N.A. as Trustee for Novastar Mortgage Funding Trust, Series 2005-4,

Novastar Home Equity Loan Asset-Backed Certificates, Series 2005-4; and PHH Mortgage

Corporation (collectively hereinafter "Defendants"), respectfully showing as follows:

### JURISDICTION AND VENUE

1.  Jurisdiction and venue are proper in this Court.

2.  Plaintiff brings an action for conventional quia timet, which sounds in equity, and venue

    lies in the county where one of the defendants against whom substantial equity is sought

    resides. See *Johnson v Red Hill Associates, Inc.*, 278 Ga. 334 (2004). Here, the

    registered office for defendant PHH Mortgage Corporation is located in Gwinnett County

    Georgia.

1

3. Venue and jurisdiction as to the other parties is further proper under the Long Arm Statute as they are non-residents of Georgia but this action involves title to land in Georgia and contractual rights regarding real property located in Georgia.

4. Plaintiff Perry Richard Harris Jr. ("Plaintiff") is a natural person. Plaintiff is referred to in the deed instruments referred to herein as "Perry R. Harris". Plaintiff is a resident and domiciliary of the State of Nevada as it is the most recent place to which Plaintiff removed with the intention of remaining there for an indefinite time as to the place of his fixed domicile.

5. Defendant Anita E. Harris is a natural person. Upon information and belief, Defendant Anita E. Harris is a resident and domiciliary of the State of Arizona as it is the most recent place to which she removed with the intention of remaining there for an indefinite time as to the place of her fixed domicile.

6. Defendant The Bank of New York Mellon, f/k/a The Bank of New York as Successor in Interest to JPMorgan Chase Bank, N.A. as Trustee for Novastar Mortgage Funding Trust, Series 2005-4, Novastar Home Equity Loan Asset-Backed Certificates, Series 2005-4 (hereinafter "BONYM") is the current holder of a secured interest in the subject Property. The Bank of New York Mellon Corporation is organized under the laws of the State of Delaware. A true and correct copy of its summary page from the Delaware Secretary of State for this Defendant is attached hereto as Exhibit "1" which shows its current registered agent for service of process is The Corporation Trust Company located at Corporation Trust Center, 1209 Orange St, Wilmington DE 19801. The Georgia Secretary of State has not issued a certificate of authority to transact business in Georgia to The Bank of New York Mellon, which has no registered office or registered agent

2

within Georgia. However, such a certificate is unnecessary under O.C.G.A. § 14-2-1501(b)(7-8) for BONYM to hold the Security Deed interest.

7. PHH Mortgage Corporation ("PHH Mortgage") is a corporation organized under the laws of the State of New Jersey. The Georgia Secretary of State has issued a certificate of authority to transact business in Georgia to PHH Mortgage. A true and correct copy of the most current annual registration with the Georgia Secretary of State for PHH Mortgage is attached hereto as Exhibit "2" which shows its registered agent is Corporation Service Company located at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092 in Gwinnett County Georgia. PHH Mortgage Corporation is named as a party defendant in this action to the extent it may be affected by a decree in this action.

## COUNT I: Conventional Quiet Title

8. Plaintiff brings an action to quiet title to property under O.C.G.A. § 23-3-40 et seq., and to cancel a 2022 Quitclaim Deed which is a cloud on his interests.

9. The subject real property is commonly known as 404 Ridgetop Dr Acworth GA 30102 in Cobb County Georgia. The Property has Cobb County Tax Parcel ID 16007600290. The Property is also described as:

> All that tract or parcel of land lying and being in Land Lot 76 of the 16th
> District, Second Section, of Cobb County, Georgia, being Lot 74,
> Ridgewood Creek, Unit One, as per plat recorded in Plat Book 112, Page
> 45, Cobb County Records, which Plat is hereby referred to and made a
> part of this description.
> (the "Property").

3

10. Plaintiff Perry Richard Harris Jr. and Anita E. Harris were formerly married but are now divorced.

11. Anita Harris conveyed the Property to Anita E. Harris and Perry R. Harris through a Quit Claim Deed dated February 27, 1998 which is recorded in Deed Book 11047 Page 305, Cobb County Georgia Records. A true and correct copy of this instrument is attached hereto as Exhibit "3". This instrument was recorded March 2, 1998. Through this Quit Claim Deed, Plaintiff and Defendant Anita E. Harris owned the Property as joint tenants in common. Plaintiff holds an estate of freehold present through this instrument.

12. Defendant Anita E. Harris caused to be made and recorded a Quitclaim Deed for the Property purportedly by "Perry R. Harris and Anita E. Harris" as grantors to "Anita E. Harris" as grantee. (the "2022 Quitclaim Deed"). The 2022 Quitclaim Deed was recorded March 27, 2023. A true and correct copy of this instrument is attached hereto as Exhibit "4".

13. The 2022 Quitclaim Deed should be cancelled as a cloud on Plaintiff's interest in the Property. See O.C.G.A. § 23-3-40 ("The proceeding quia timet is sustained in equity for the purpose of causing to be delivered and canceled any instrument which has answered the object of its creation or any forged or other iniquitous deed or other writing which, though not enforced at the time, either casts a cloud over the complainant's title or otherwise subjects him to future liability or present annoyance, and the cancellation of which is necessary to his perfect protection.").

14. The 2022 Quitclaim Deed is iniquitous and casts a cloud over Plaintiff's title to the Property.

15. The 2022 Quitclaim Deed might be vexatiously or injuriously used against Plaintiff.

4

16. The 2022 Quitclaim Deed subjects Plaintiff to present annoyance.

17. The 2022 Quitclaim Deed causes Plaintiff injury by reason of a containing a hostile claim of right in favor of Anita E. Harris.

18. The cancellation of the 2022 Quitclaim Deed is necessary to Plaintiff's perfect protection.

19. Plaintiff cannot immediately or effectually maintain or protect his rights by any other course of proceeding open to him than this action for quiet title.

20. Plaintiff did not sign the 2022 Quitclaim Deed.

21. Plaintiff did not authorize the execution, delivery or recording of the 2022 Quitclaim Deed by Anita E. Harris or any other person.

22. Plaintiff did not take action to name Anita E. Harris or any other person as his agent or power of attorney to execute, deliver or record the 2022 Quitclaim Deed.

23. Defendant Anita E. Harris had no authority to convey Plaintiff's interest in the Property to Anita E. Harris individually.

24. The signature appearing on the 2022 Quitclaim Deed above the name Perry R. Harris is not that of the Plaintiff.

25. The signature appearing on the 2022 Quitclaim Deed is as follows:

DATED: 3/2/23

Perry R. Harris
2654 W Horizon Rdge Pkwy B5-69
Henderson, Nevada
89052

26. Upon information and belief, Anita E. Harris was the person who added the handwriting for the purported signature for Perry R. Harris on the 2022 Quitclaim Deed.

5

27. The authority claimed by Anita E. Harris to add the purported signature for Perry R. Harris on the 2022 Quitclaim Deed was "per court order dated 5/2/22". However, that court order did not give Defendant Anita E. Harris the authority to sign the name of Perry R. Harris which she claimed.

28. The 2022 Quitclaim Deed attached a May 2, 2022 order (the "May 2, 2022 Order") from the Superior Court of Arizona, Maricopa County, in an action styled In Re The Matter of Perry Harris and Anita Elaine Smith Harris, Superior Court of Arizona, Maricopa County, Case No FN 2015-003563 (the "Arizona Action").

29. The May 2, 2022 Order held in relevant part:

> **IT IS ORDERED** Husband shall not to stop, prevent or otherwise frustrate Wife's attempts at loan assumption or modification. Additionally,
>
> **IT IS FURTHER ORDERED** Husband shall sign any and all documents needed for loan assumption and modification. Should Husband refuse to sign papers, Wife is fully authorized to sign on his behalf. If, at any time, Wife is told that modification and assumption is not possible or that she fails to meet the qualifications or that because of bankruptcy filings the assumption cannot take place for four years, then **IT IS FURTHER ORDERED** that Wife shall let the Georgia home go immediately into foreclosure. If Wife fails to allow the home to go into foreclosure, the Court, pursuant to Rule 83(A)(1)(c) and A.R.S. § 25-318(P), will suspend the award of all retirement accounts from the September 8, 2017. If requested, the Court will hold an Evidentiary Hearing and may consider some reallocation of retirement funds.

30. The May 2, 2022 Order in the Arizona Action did not authorize the 2022 Quitclaim Deed or the subject Modification.

31. The May 2, 2022 never authorized the signing of the 2022 Quitclaim Deed; at best it conditionally authorized signing of "documents needed for loan assumption and modification", of which the 2022 Quitclaim Deed was not one.

32. The May 2, 2022 Order contained a condition precedent to any authority preceded by the term "Should". The condition precedent to any authority was "Should Husband refuse to sign papers [needed for loan assumption and modification]".

6

33. The condition precedent failed, as Plaintiff did not refuse to sign papers needed by Anita E. Harris for loan assumption and modification.

34. Plaintiff has not ratified the 2022 Quitclaim Deed, but has instead challenged it once he learned of it.

35. Plaintiff challenged the 2022 Quitclaim Deed in the Arizona Action, leading to that court entering a subsequent order styled "Under Advisement Ruling Re; Georgia Property" dated March 24, 2023 which was filed March 28, 2023 in the Arizona Action. (the "March 24, 2023 Order"). A true and correct copy of the March 24, 2023 Order is attached hereto as Exhibit "5".

36. The Arizona court confirmed in the March 24, 2023 Order that the 2022 Quitclaim Deed and Modification signed by Anita E. Harris were unauthorized, and reasoned that the condition precedent had failed, holding in relevant part:

> In May of last year, Wife was directed to attempt an assumption or modification. Additionally, Wife was authorized to sign on Mr. Harris' behalf *if* he refused to add his own signature to assumption or modification documents. The modification that Wife acquired however was not remotely like the terms in the original mortgage (expecting the outstanding balance plus arrearages and maybe some penalties). This new arrangement has a balloon payment of almost two hundred thousand dollars! Unfortunately, this Court's May 2, 2022 order has been improperly used in a manner to likely further antagonize Husband.
>
> **THE COURT FURTHER FINDS** that this modification was not undertaken in good faith by Wife and Husband is not be responsible for these new terms as this Court's order did not authorize bad faith. Additionally, the Court heard credible testimony that Wife is, again, almost immediately behind significantly on mortgage payments. The Court finds that modification is not a viable alternative. Finally, at Trial, Wife testified that she signed Husband's name to a quit claim deed just a few days ago without ever asking him to sign and having him refuse. This is a clear violation of the May 2, Order.
>
> **IT IS ORDERED** Wife is to hold Husband harmless for all debt associated with the Georgia property.

37. The March 24, 2023 Order further held:

> **THE COURT FURTHER FINDS** based on Wife's signing of the Quit Claim deed without prior presentation and the modification done in bad faith, that Wife has acted unreasonably. Wife shall be responsible for a portion of Husband's legal fees for this filing and Trial.

38. The determination in the March 24, 2023 Order is entitled to collateral estoppel effect between Plaintiff and Anita E. Harris: (1) the parties are identical, (2) the issue is identical and arise from the same set of facts [i.e. the loan regarding and ownership of the subject Property and authority to sign the 2022 Quitclaim Deed or the Modification], (3) the prior adjudication was made on the merits by a court of competent jurisdiction, and (4) the parties had a full and fair opportunity to litigate the issues in the Arizona Action. See *QOS Networks Ltd. v. Warburg, Pincus & Co.*, 294 Ga. App. 528, 669 S.E.2d 536, (2008) (applying preclusive effect to New York judgment when second action brought in Georgia).

39. The March 24, 2023 Order was made final pursuant to Rule 78(b) of the Arizona Rules of Family Law Procedure, and the time for appeal began immediately. Plaintiff gives notice of intent to rely upon Arizona law including but not limited to Arizona Rules of Civil

8

Procedure[1] including Rule of Civil Procedure 58,[2] and Rule 78[3] of the Arizona Rules of Family Law Procedure.[4]

40. The March 24, 2023 Order was not appealed, reversed or set aside, constitutes a final adjudication between Perry R. Harris and Anita E. Harris, and is entitled to preclusive effect.

41. Plaintiff is entitled to the quiet title relief sought hereinabove.

42. The amount in controversy between the parties is alleged to be less than $75,000.00.

43. Upon information and belief, the equity of Plaintiff and Defendant Anita E. Harris in the Property is less than $75,000, as the value of the Property after being reduced by the balance owed on the loan secured by the Security Deed is less than $75,000.

44. Upon information and belief, if Plaintiff is successful in having the 2022 Quitclaim Deed cancelled and joint tenancy to the Property restored in Plaintiff, Defendant Anita E. Harris would be deprived of less than $75,000 in equity in the Property.

---

[1] Rules of Civil Procedure for the Superior Courts of Arizona are available online at
https://govt.westlaw.com/azrules/Browse/Home/Arizona/ArizonaCourtRules/ArizonaStatutesCourtRules?guid=N93E3A75086BD11E6B9D68CD8AD30786D&transitionType=CategoryPageItem&contextData=(sc.Default)&bhcp=1 .

[2] See 16 A.R.S. Rules of Civil Procedure, Rule 58.

[3] See Rule 78(b) ("(b) Judgment upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, third-party claim, or petition to modify or enforce a judgment, the court may direct the entry of an appealable judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines there is no just reason for delay and recites that the judgment is entered under Rule 78(b). If there is no such express determination and recital, any decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties, and is subject to revision at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities. For purposes of this section, a claim for attorney fees is considered a separate claim from the related judgment regarding the merits of the action.").

[4] Arizona Rules of Family Law Procedure are available online at
https://govt.westlaw.com/azrules/Browse/Home/Arizona/ArizonaCourtRules/ArizonaStatutesCourtRules?guid=N1A651810715611DAA16E8D4AC7636430&transitionType=CategoryPageItem&contextData=(sc.Default) .

9

45. Upon information and belief, any loss in equity to Anita E. Harris and gain in equity to Plaintiff would be less than $75,000 if Plaintiff is successful in this action.

46. Defendant Anita E. Harris has acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense. Plaintiff is entitled to an award of his attorney's fees and expenses pursuant to O.C.G.A. § 13-6-11.

47. All costs of this action should be taxed upon Defendant Anita E. Harris. See O.C.G.A. § 23-3-41(b)("In such cases the costs shall be taxed against the litigants in the discretion of the court."); O.C.G.A. § 9-15-1 ("In all civil cases in any of the courts of this state, except as otherwise provided, the party who dismisses, loses, or is cast in the action shall be liable for the costs thereof.").

48. All conditions precedent to the relief sought herein have been satisfied or waived.

## COUNT II: DECLARATORY JUDGMENT

49. Plaintiff brings an action for declaratory relief under O.C.G.A. § 9-4-1 et seq. to confirm that Plaintiff is not a party to a Modification regarding the loan underlying the Security Deed upon the Property, and to determine the amounts owed under this loan.

50. There is a present dispute between Plaintiff and Defendants as to the terms of the subject loan (especially the validity of a purported Loan Modification Agreement) and the amounts owed under this loan.

51. Plaintiff and Anita E. Harris conveyed a Security Deed dated November 2, 2005 to Mortgage Electronic Registration Systems, Inc., a Delaware corporation ("MERS") as grantee, as nominee for Novastar Mortgage, Inc., a Virginia corporation, as lender. (the "Security Deed"). The Security Deed is recorded in Deed Book 14249 Page 735 to 757,

10

Cobb County Georgia Records. A true and correct copy of this instrument is attached hereto as Exhibit "**6**". This instrument was recorded November 11, 2005.

52. MERS assigned the Security Deed to The Bank of New York Mellon, f/k/a The Bank of New York as Successor in Interest to JPMorgan Chase Bank, N.A. as Trustee for Novastar Mortgage Funding Trust, Series 2005-4, Novastar Home Equity Loan Asset-Backed Certificates, Series 2005-4 (hereinafter "BONYM") through a Corporate Assignment of Security Deed. (the "BONYM Assignment"). The BONYM Assignment is recorded in Deed Book 15313 Pages 246 et seq., Cobb County Georgia Records. A true and correct copy of this instrument is attached hereto as Exhibit "**7**". This instrument was recorded February 12, 2016.

53. No further assignment of the Security Deed appears of record. Accordingly, BONYM is the current record holder of the Security Deed interest.

54. Anita E. Harris caused a Loan Modification Agreement to be purportedly made between Plaintiff and Anita E. Harris as parties of the first part and BONYM (by and through its servicer PHH Mortgage) as party of the second part. A true and correct copy of Loan Modification Agreement, including the cover page provided by PHH Mortgage, is attached hereto as Exhibit "**8**". This instrument is referred to in this action as the "Modification".

55. This Modification was made to purportedly modify the loan taken out by Plaintiff and Anita E. Harris on November 2, 2005, which is secured by the Security Deed.

56. The subject Modification does not affect Plaintiff's rights or obligations. The original terms of the loan documents remain in effect, such that the amounts owed on the loan

11

may be determined by reference to the original loan terms and the subsequent payment history.

57. Actions taken by PHH Mortgage as alleged herein are as servicer of the subject loan and as authorized agent of BONYM.

58. The Modification purports to affect Plaintiff's rights and obligations. BONYM, through PHH Mortgage as servicer and agent, has disputed Plaintiff's efforts to cancel the Modification.

59. BONYM, through PHH Mortgage as servicer and agent, seeks to determine the amounts owed under the loan by reference to the Modification and payment history subsequent to it only.

60. Plaintiff has uncertainty and is in need of direction to affect his future actions, including but not limited to for determining what amounts are owed to pay off the loan and redeem the equity in the Property, in honestly reporting his assets and liabilities to third parties for purposes of financial statements, loans and otherwise, in honestly preparing his tax returns, and in honestly informing future lenders or purchasers of the amount owed under the Security Deed and of his equity in the Property.

61. Plaintiff is in need of declaratory relief of the legal relations between Plaintiff and Defendants.

62. Declaratory relief in this case is proper. See, e.g. *RTS Landfill, Inc. v. Appalachian Waste Sys., LLC Inc.*, 267 Ga. App. 56, 63, 598 S.E.2d 798, 804 (2004) (action proper under Declaratory Judgment Act to determine enforceability of a contract).

12

63. The purported signature of Plaintiff on the Modification is as follows:

r each borrower signature, **one witness signature is required.** If extenuating
jnature, separately signed and notarized agreements will be accepted;
urned in the same package **to PHH Mortgage Corporation.**

10/27/22
Date

PERRY RICHARD HARRIS JR
(Per court order of 5/2/22

64. The authority claimed by Anita E. Harris to enter into the Modification was the same
    May 2, 2022 Order in the Arizona Action. However, the May 2, 2022 Order did not give
    Defendant Anita E. Harris unfettered authority to bind Perry R. Harris to the
    Modification; any authority granted was limited and conditional. The condition
    precedents to any authority of Anita E. Harris did not arise.

65. Plaintiff did not sign the Modification.

66. "The relation of principal and agent arises wherever one person, expressly or by
    implication, authorizes another to act for him or subsequently ratifies the acts of another
    in his behalf." O.C.G.A. 10-6-1. Here, Plaintiff never made Anita E. Harris or anyone
    else his agent to act for him to sign the 2002 Quitclaim Deed or the Modification.

67. Plaintiff did not authorize the execution or delivery of the Modification by Anita E.
    Harris or any other person.

68. Plaintiff did not take action to name Anita E. Harris or any other person as his power of
    attorney to execute the Modification.

69. "Where the exercise or performance of an agency is by written instrument, the agency
    shall also be created by written instrument; provided, however, unless a contrary intent is
    expressly set forth therein, any written instrument creating an agency regardless of the
    formality of its execution shall conclusively be deemed to authorize the execution of

13

instruments with the formalities necessary or appropriate to accomplish the purposes for which the agency was granted. . . ." O.C.G.A. § 10-6-2. Here, the subject 2022 Quitclaim Deed and the Modification are written instruments, but no agency for Plaintiff was created by written instrument in favor of Anita E. Harris or anyone else.

70. Defendant Anita E. Harris had no authority to amend Plaintiff's loan contract through the Modification.

71. The May 24, 2023 Order in the Arizona Action confirmed the lack of authority by Anita E. Harris to sign the Modification, as set forth hereinabove.

72. Plaintiff did not ratify the Modification. To the contrary, Plaintiff immediately challenged it upon learning about it.

73. On December 27, 2022, Plaintiff wrote to PHH Mortgage to inform them of the misuse of the May 2, 2022 Order and requested cancellation of the Modification. However, PHH Mortgage rejected the request.

74. Plaintiff further attempted to resolve the issue through the Office of the Consumer Ombudsman from the Consumer Financial Protection Bureau.

75. In a response made through the CFPB, BONYM (through its servicer PHH Mortgage) stated that it was relying upon the May 2, 2022 Order, and unequivocally stated that "PHH will not cancel the modification agreement". A true and correct copy of the communication string for this CFPB complaint, including the response by BONYM (through its servicer PHH Mortgage), is attached hereto as Exhibit "9".

76. Plaintiff made other efforts to resolve the dispute but they were to no avail.

77. Plaintiff has made good faith efforts to resolve the dispute directly with BONYM (through its servicer PHH Mortgage), but those efforts were unsuccessful.

14

78. Plaintiff is left with no remaining choice but to resort to the courts to resolve this dispute.

79. Plaintiff seeks and is entitled to a declaratory judgment that the Modification does not constitute or affect a contract between Plaintiff and any Defendants.

80. Plaintiff seeks and is entitled to a declaratory judgment as to the amounts owed under the subject loan and which are secured by the Security Deed.

81. Plaintiff is entitled to the declaratory relief sought hereinabove.

82. Defendant Anita E. Harris has acted in bad faith, been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense. Plaintiff is entitled to an award of his attorney's fees and expenses pursuant to O.C.G.A. § 13-6-11.

83. All costs of this action should be taxed upon Defendant Anita E. Harris. See O.C.G.A. § 9-15-1.

84. The amount in controversy between the parties is alleged to be less than $75,000.00.

85. Plaintiff does not challenge the existence of the secured Security Deed interest or that he should be free of that encumbrance. Plaintiff does not challenge the existence of the underlying loan or that he should be free from it. Plaintiff merely challenges the propriety of the Modification to the loan.

86. Upon information and belief, any increase or decrease in the loan balance or secured interest in the Property occasioned by the cancellation of the Modification would affect each Defendant to an extent less than $75,000, as the balance owed on the loan and secured by the Security Deed *without* the Modification would remain within $75,000 of the balance owed on the loan and secured by the Security Deed *with* the Modification.

87. Neither the total value of the Property nor the total balance of the loan underlying the Security Deed are relevant to the amount in controversy between the parties. See, e.g.

15

*Gammon v. Bank of Am.*, Case No. :13-cv-00050-TCB-RGV, Magistrate Judge's Final

Report, Recommendation, And Order, 2013 WL 12382824 (N.D. Ga. Sept. 17, 2013)

(addressing method of calculating amount in controversy in action regarding loan

modification), Report and Recommendation Adopted Sub Nom. *Gammon v. Bank of Am.,*

*N.A.*, No. 3:13-CV-50-TCB, 2013 WL 12382825 (N.D. Ga. Oct. 8, 2013).

88. All conditions precedent to the relief sought herein have been satisfied or waived.

WHEREFORE, Plaintiff prays:

(a)     that this Court render judgment in favor of Plaintiff and against each Defendant;

(b)     that this Court quiet title to Plaintiff's interest in the Property, and cancel all

instruments and equities of redemption which constitute a cloud on Plaintiff's

title;

(c)     that this Court enter the declaratory relief sought hereinabove;

(d)     that this Court award to Plaintiff his attorney's fees and expenses against Anita E.

Harris;

(e)     that this Court tax all costs against Anita E. Harris;

(f)     that this Court enter such other and further relief as is just and proper under the

circumstances.

Respectfully submitted on June 7, 2023

/s/ James R. Fletcher II
James R. Fletcher II
Georgia Bar No. 232541
Fletcher Law Firm LLC
328 SE Alexander Street, Suite # 10
Marietta GA 30060
Phone: 404-409-5665
Email: Jim@FletcherLawFirm.com
Attorney for Plaintiff
Our File No. 2902.0001

16

**EXHIBIT 7**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SUPERIOR COURT FOR THE STATE OF GEORGIA
## COUNTY OF GWINNETT.

**CAUSE NUMBER: 23-A-04954-4**

**PERRY RICHARD HARRIS J,**

Plaintiff

Vs.

**ANITA E. HARRIS ET AL.**

**THE BANK OF NEW YORK, FKA,**

**THE BANK OF NEW YORK AS**

**SUCCESSOR IN INTEREST TO JP**

**MORGAN CHASE BANK, N.A AS**

**TRUSTEE FOR NOVASTAR**

**MORTGAGE FUNDING TRUST,**

**SERIES 2005-4, NOVASTAR**

**HOME EQUITY LOAN ASSET**

**BACKED CERTIFICATES,**

**SERIES 2005-4 AND; PHH**

**MORTGAGE CORPORATION.**

Defendants

**DEFENDANTS MOTION TO DISMISS PLAINTIFFS QUIET TITLE ACTION, DUE TO IMPROPER VENUE/JURISDICTION**.

Here Comes Pro Se Defendant Anita E. Harris and Pursuant to the Georgia Rules of Civil Procedure submit this Motion to Dismiss the quiet title claim on the grounds of improper venue or jurisdiction, pursuant to Georgia Code § 9-10-30 and based on the following arguments:

## I.  Standard to review the pleadings of pro se litigants:

1.    The Defendant is submitting her pleadings as pro se litigant and has not hired an attorney. Thus, as far as the pleading standard of Pro Se litigants is concerned, they are always entitled to a less stringent view by the Honorable Superior Courts. Pro Se litigants are not supposed to be jurists hence their pleadings are entitled to a kind and lenient standard of review by the courts. This is held time and again in the judgments of the apex courts, some of them are quoted as under:

"Plaintiff is pursuing his claim pro se. As such, his pleadings are held to a less stringent standard than those of an attorney. *See Tannenbaum v. United States,* 148 F.3d 1262, 1263 (11th Cir.1998)."

"The pleadings of pro se litigants should be held to a lesser standard than those drafted by lawyers." McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1356 (Fed. Cir. 2007)"

"The Supreme Court has instructed federal courts to liberally construe the 'in artful pleading' of pro se litigants. Eldridge v. Block, 832 F.2d 1132,1137 (9th Cir. 1987)."

Therefore, in the light of the above-mentioned judgments, defendants as being Pro Se litigants are entitled to a lenient review of their pleadings and seek the kind favor of this honorable court.

## **INTRODUCTION**

1. The defendant is the rightful owner of the home at 404 Ridgetop Drive, Acworth GA in Cobb County subject to the quiet title action. The Plaintiff seeks to challenge the Defendants title through this action.

### **I.      Improper Venue or Jurisdiction**

2.   The Plaintiff filed the quiet title action in Gwinnett County, Georgia. However, the Defendant asserts that the proper venue for this matter should be Cobb County, Georgia. The property at the center of this dispute is in Cobb County, Georgia, and neither party has a connection to Gwinnett County, making it an incorrect venue or jurisdiction for this case.

According to Georgia Code § 9-10-30, the court chosen for a case must be a proper venue based on the events giving rise to the lawsuit or the residence of the parties involved. The events that gave rise to this lawsuit did not occur in Gwinnett County Georgia, and I am not a resident of Gwinnett County Georgia. As such, the Superior Court of Gwinnett County Georgia is an improper venue for this case.

### **II.      Lack of Timely Service**

3. The Plaintiff served the Defendant with the complaint on June 27, 2023, in Phoenix Arizona. As per the relevant rules, the Defendant has until July 26th, 2023, to respond to the complaint.  However, the Defendant did not receive adequate time to prepare a complete response due to not being physically located in the state of Georgia but living temporarily in the state of Arizona, thus making it challenging for Defendant to locate adequate counsel. This insufficient time to respond unfairly hinders the defendant's ability to present a well-reasoned defense.

### III.  False Representation Regarding Appeal:

4.     Upon reviewing the Plaintiff's complaint, the Defendant noticed a    false claim stating  that the Defendants appeal had been dismissed since June 7th, 2023. Contrary to this representation, the Defendants appeal was not dismissed on June 7th, 2023, but was dismissed for untimely filing on July 5th, 2023, due to clerical mistakes, which inadvertently caused Defendants appeal to be dismissed due to untimely filing. . However, the appeal at this moment is being reconsidered due to these errors that were made inadvertently by the lower courts. (Please see attached Exhibit 1) This misleading information misrepresents the Defendants legal standing and casts doubt on the plaintiff's credibility.

### IV. Request for Relief

**5.** The defendant respectfully requests that this Honorable Court:

● Dismiss the quiet title case for improper venue or jurisdiction, and

● Allow the Defendant additional time to prepare and file a complete response to the plaintiff's complaint.

## Conclusion

Considering the improper venue or jurisdiction, untimely service, and false representation in the Plaintiff's complaint, the Defendant urges the court to dismiss the quiet title action. Additionally, the Defendant seeks an extension of the response deadline to prepare a comprehensive and well-founded defense.

**DATED** this 26th day of July 2023

**Respectfully Submitted by:**

*Anita E. Smith-Harris*

Anita E. Smith-Harris

(Pro Se Respondent)

## CERTIFICATE OF SERVICE:

The Defendant certifies that she has mailed and delivered her pleading to the office of the below-mentioned attorney(s) and to the plaintiff on the date mentioned above.

Sent to:

**Perry R. Harris**

2654 W Horizon Rdge Pkwy B5-69

Henderson, Nevada 89052


**James R. Fletcher II**

Georgia Bar No. 232541

Fletcher Law Firm LLC

328 SE Alexander Street, Suite # 10

Marietta GA 30060

Phone: 404-409-5665

jim@FletcherLawFirm.com

File No. 2902.0001


Original of this is filed with:

**CLERK OF COURT**

# EXHIBIT 8

IN THE SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA

| | |
|---|---|
| Perry Richard Harris Jr., ) | |
| Plaintiff ) | CIVIL ACTION |
| ) | FILE NO. 23-A-04954-4 |
| v. ) | |
| ) | |
| Anita E. Harris, et al. ) | |
| Defendants ) | |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served true, correct and complete copies of the following:

1. Final Judgment (entered)

by enclosing a separate copy of same in separate envelopes for each recipient, each with adequate first-class postage prepaid and affixed thereto, respectively addressed as follows, and depositing same in the United States Mail:

Anita E. Harris
11010 S 51st St.
Box 50818
Phoenix AZ 85076-7633

**And**
Anita E. Harris
3344 N Cobb Pkwy Unit 1059
Acworth GA 30101

And by statutory electronic service under OCGA 9-11-5(b,f), by transmitting a copy via e-mail in portable document format (PDF) to the person to be served using all e-mail addresses provided pursuant to subsection (f) of OCGA 9-11-5 and showing in the subject line of the e-mail message the words "STATUTORY ELECTRONIC SERVICE" in capital letters, to:

The Bank of New York Mellon and PHH Mortgage Corporation
c/o Sarah T. Reise -**sarah.reise@troutman.com**
Anita E. Harris - **skippysmith2850@gmail.com**

1

Respectfully submitted on December 5, 2023

By: /s/ James R. Fletcher II
James R. Fletcher II
Georgia Bar No. 232541
Fletcher Law Firm LLC
328 SE Alexander Street, Suite # 10
Marietta GA 30060
Phone: 404-409-5665 | Fax: (888) 371-1248
Email: jim@FletcherLawFirm.com
Attorney for Plaintiff | Our File No. 2902.0001

**Rule 36.4 Statement:** This signature is affixed to the *Certificate of Service* (to Final Judgment in the case of Perry Richard Harris Jr. v. Anita E. Harris et al. Superior Court of Gwinnett County Georgia, Civil Action File No. 23-A-04954-4.

E-FILED IN OFFICE - IT
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**23-A-04954-4**
**12/4/2023 12:12 PM**
TIANA P. GARNER, CLERK

After recording return to:
James R. Fletcher II Esq
Fletcher Law Firm LLC
328 SE Alexander Street, Ste 10
Marietta GA 30060
Phone: 404-409-5665

Cross Reference:
Deed Book 11047 Page 305
Deed Book 16122 Page 5914
Deed Book 14249 Page 735
Deed Book 15313 Pages 246
Cobb County Georgia Records

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| Perry Richard Harris Jr., | ) | |
| Plaintiff | ) | CIVIL ACTION |
| | ) | FILE NO. 23-A-04954-4 |
| v. | ) | |
| | ) | |
| Anita E. Harris, et al. | ) | |
| Defendants | ) | |

### FINAL JUDGMENT

This matter comes before the Court with the consent of Plaintiff Perry Richard Harris Jr.

("Plaintiff") and Defendants The Bank of New York Mellon f/k/a The Bank of New York as

successor in interest to JP Morgan Chase Bank, N.A. as trustee for Novastar Mortgage Funding

Trust, Series 2005-4, Novastar home equity loan asset backed certificates, series 2005-4 and

PHH Mortgage Corporation (the "Lender Defendants"). On August 31, 2023, the Court entered

an Order Granting Default Judgment as to Anita E. Harris (only) and Denying Defendant Anita

E. Harris' Motion to Dismiss, the time for its appeal has expired, and it is a final judgment. As

1

this Final Judgment resolves all remaining claims, it constitutes the final judgment of this action

and the Clerk shall close the case. This case is removed from the October 18, 2023 calendar.


A Judgment is entered in favor of Plaintiff Perry Richard Harris Jr. and against the Lender

Defendants. It is Ordered and Adjudged:

### A. Quiet Title Relief

Plaintiff's Count I for conventional quiet title relief under O.C.G.A. § 23-3-40 et seq. is

GRANTED. The subject real property is commonly known as 404 Ridgetop Dr Acworth GA

30102 in Cobb County Georgia and has Cobb County Tax Parcel ID 16007600290. The

Property is also described as:

> All that tract or parcel of land lying and being in Land Lot 76 of the 16th District,
> Second Section, of Cobb County, Georgia, being Lot 74, Ridgewood Creek, Unit
> One, as per plat recorded in Plat Book 112, Page 45, Cobb County Records, which
> Plat is hereby referred to and made a part of this description.

> (the "Property").

Anita Harris conveyed the Property to Anita E. Harris and Perry R. Harris through a Quit

Claim Deed dated February 27, 1998 which is recorded March 2, 1998 in Deed Book 11047

Page 305, Cobb County Georgia Records. (Petition Exhibit "3"). The Court holds that Anita E.

Harris and Perry R. Harris are joint tenants in common to the Property, **subject to** a Security

Deed of record in Deed Book 14249 Page 735, Cobb County Georgia Records (Petition Exhibit

"6"), last assigned to Defendant The Bank of New York Mellon as Trustee through a Corporate

Assignment of Security Deed recorded in Deed Book 15313 Page 246 (Petition Exhibit "7").

The Court finds that the Quitclaim Deed purportedly from Perry R. Harris and Anita E.

Harris to Anita E. Harris only, recorded in Deed Book 16122 Page 5914 to 5922 Cobb County

Georgia Records (the "2022 Quitclaim Deed") (Petition Exhibit "4") was not signed by Perry R.

2

Harris nor was it authorized by Perry R. Harris or the Superior Court of Arizona, Maricopa County.

The 2022 Quitclaim Deed was previously and is again hereby CANCELLED OF RECORD because it is iniquitous and casts a cloud over Plaintiff's title to the Property, might be vexatiously or injuriously used against Plaintiff, subjects Plaintiff to present annoyance, and causes Plaintiff injury by reason of a containing a hostile claim of right in favor of Anita E. Harris. The cancellation of the 2022 Quitclaim Deed is necessary to Plaintiff's perfect protection. Plaintiff could not immediately or effectually maintain or protect his rights by any other course of proceeding open to him than this action for quiet title.

**B. Declaratory Relief**

Plaintiff's Count II for declaratory relief under O.C.G.A. § 9-4-1 et seq. is GRANTED. Anita E. Harris caused a Loan Modification Agreement to be purportedly made to modify the November 2, 2005 loan between Plaintiff and Anita E. Harris as parties of the first part and BONYM (by and through its servicer PHH Mortgage) as party of the second part. (the "Modification"). (Petition Exhibit "8"). Plaintiff did not sign the Modification, but Defendant signed Plaintiff's name using a May 2, 2022 Order from an Arizona Court as her purported authority. However, that order gave no such authority as its March 24, 2023 Order confirmed, to which this Court gives preclusive effect.

The Court declares, as between Plaintiff Harris and the Lender Defendants, that Plaintiff Harris was not a party to the Modification and it is therefore invalid and void. The subject Modification does not affect Plaintiff's rights or obligations, and the original terms of the loan documents remain in effect.

3

A contract between multiple parties cannot be modified by only some of them in a way which is detrimental to a non-consenting party.[1] Similarly, there may be no "unilateral" modification of a contract.[2] Accordingly, because the secured loan affects *both* Plaintiff Harris and Defendant Harris in ways which are detrimental to Mr. Harris and to which he did not consent, then the entire Modification is set aside, even as to Mrs. Harris. This finding was previously made as to Defendant Harris as well through this Court's August 31, 2023 Order.

### C. Attorney's Fees, Expenses and Costs.

Plaintiff and the Lender Defendants consent that each shall bear their own attorney's fees and expenses regarding this matter.


The Clerk of Superior Court is hereby directed to record this judgment in the land records and make the cross-references above.

SO ORDERED this 4th day of December, 2023

Judge Tamela L. Adkins
Superior Court of Gwinnett County

---

[1] See *Spiegel v. Hays*, 103 Ga. App. 293, 299, 119 S.E.2d 123, 128 (1961) ("A contract depends upon the mutual consent of all of the parties thereto, and the provisions of a written agreement cannot be changed by the consent of less than all of them. *Southern Feed Stores v. Sanders*, 193 Ga. 884(3), 20 S.E.2d 413. It is a general rule that the terms of a tripartite agreement cannot be modified to the detriment of one of the parties by the others without his consent. 17 C.J.S. Contracts § 375.").

[2] See *Goldstein v. Ipswich Hosiery Co.*, 104 Ga. App. 500, 520, 122 S.E.2d 339, 353–54 (1961) ("It is elemental that it is not possible to have a unilateral modification of a contract previously entered into between the parties.").

4

**Consented to by:**

/s/ James R. Fletcher II
James R. Fletcher II
Georgia Bar No. 232541
Fletcher Law Firm LLC
328 SE Alexander Street, Suite # 10
Marietta GA 30060
Phone: 404-409-5665
Fax: (888) 371-1248
Email: jim@FletcherLawFirm.com
Attorney for Plaintiff
Our File No. 2902.0001

/s/ Sarah T. Reise
Sarah T. Reise
Georgia Bar No.181567
Troutman Pepper Hamilton Sanders LLP
600 Peachtree St., Suite 3000
Atlanta, GA 30308
Tel: (404) 885-3000
Facsimile: (404) 885-3900
sarah.reise@troutman.com
Attorneys for The Bank of New York Mellon
f/k/a The Bank of New York as successor in
interest to JP Morgan Chase Bank, N.A. as
trustee for Novastar Mortgage Funding
Trust, Series 2005-4, Novastar home equity
loan asset backed certificates, series 2005-4
and PHH Mortgage Corporation

**Rule 36.4 Statement**: This signature is affixed to the *Final Judgment* in the case of Perry Richard Harris Jr. v. Anita E. Harris et al. Superior Court of Gwinnett County Georgia, Civil Action File No. 23-A-04954-4.

5



EXHIBIT 5

Deed Book 14249 Pg
Filed and Recorded Nov-11-2005 02:54pm
2005-02022294
Georgia Intangible Tax Paid $466.50

*Jay C. Stephenson*

Jay C. Stephenson
Clerk of Superior Court Cobb Cty. Ga.

After Recording Return To:
NOVASTAR MORTGAGE, INC.
6200 Oak Tree Blvd. 3rd Floor
Cleveland, Ohio 44131
Loan Number: 05-C05223

Nations Title Agency of Georgia, Inc.
Likens & Blomquist, P A
125 TownPark Drive, Ste 200
Kennesaw, GA 30144
05GA07428

──────────── [Space Above This Line For Recording Data] ────────────

# SECURITY DEED

MIN: 100080190051569473

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "Security Instrument" means this document, which is dated NOVEMBER 2, 2005 , together with all Riders to this document.
**(B)** "Borrower" is PERRY R HARRIS AND ANITA E HARRIS

Borrower is the grantor under this Security Instrument.
**(C)** "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(D)** "Lender" is NOVASTAR MORTGAGE, INC.

Lender is a CORPORATION organized
and existing under the laws of VIRGINIA
Lender's address is 6200 Oak Tree Blvd. 3rd Floor, Cleveland, Ohio 44131

**(E)** "Note" means the promissory note signed by Borrower and dated NOVEMBER 2, 2005
The Note states that Borrower owes Lender ONE HUNDRED FIFTY-FIVE THOUSAND ONE HUNDRED TWENTY-FIVE AND 00/100 Dollars (U.S. $155,125.00 ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than NOVEMBER 1, 2035 .

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3011 01/01
Page 1 of 13

DocMagic €€€€€€€ 800-649-1362
www.docmagic.com

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☒ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Other(s) [specify] |
| ☒ 1-4 Family Rider | ☐ Biweekly Payment Rider | |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

|  COUNTY | of COBB | |
|---|---|---|
| [Type of Recording Jurisdiction] | [Name of Recording Jurisdiction] | |

Case 2:25-bk-01794-EPB    Doc 42    Filed 03/31/25    Entered 03/31/25 10:05:35    Desc
Main Document        Page 87 of 248



SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.
(STATE: GEORGIA, COUNTY: COBB)

which currently has the address of  404 RIDGE TOP DRIVE                [Street]

                    ACWORTH                          , Georgia      30102      ("Property Address"):
                    [City]                                          [Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender:  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of

its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying

the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave

materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

Case 2:25-bk-01794-EPB    Doc 42    Filed 03/31/25    Entered 03/31/25 10:05:35    Desc
Main Document    Page 92 of 248

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate

Case 2:25-bk-01794-EPB    Doc 42    Filed 03/31/25    Entered 03/31/25 10:05:35    Desc
Main Document    Page 93 of 248

as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's

address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will

state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate

payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order:  (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. Borrower waives all rights of homestead exemption in the Property.

25. Assumption Not a Novation. Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. Security Deed. This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ (Seal)
PERRY R HARRIS -Borrower

_____ (Seal)
ANITA E HARRIS -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Notary Public
State of Georgia ARIZONA

My commission expires: 02/24/2007

OFFICIAL SEAL
WILLIAM F. TURNER
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires Feb. 24, 2007
(Seal)

Case 2:25-bk-01794-EPB Doc 42 Filed 03/31/25 Entered 03/31/25 10:05:35 Desc Main Document Page 98 of 248

## LEGAL DESCRIPTION

All that tract or parcel of land lying and being in land lot 76 of the 16th District, 2nd section, Cobb County, Georgia, Being lot 74 Ridgewood Creek, Unit 1, As per plat recorded in Plat Book 112, Page 45, Cobb County records which plat is hereby referred to and made a part of this description.

Subject to general taxes for the current year and subsequent years, covenants, conditions, easements, exceptions, reservations, restrictions, rights of way of records, if any.

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 2nd day of NOVEMBER, 2005 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to NOVASTAR MORTGAGE, INC., A VIRGINIA CORPORATION
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

404 RIDGE TOP DRIVE, ACWORTH, GEORGIA 30102
[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

E.  "BORROWER'S RIGHT TO REINSTATE" DELETED. Section 19 is deleted.

F.  BORROWER'S OCCUPANCY.  Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

G.  ASSIGNMENT OF LEASES.  Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property.  Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

H.  ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.  Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable.  Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent.  This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs.  Any application of Rents shall not cure or waive any default

MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01                                                                    DocMagic ☎ 800-649-1362
                                                                                    www.docmagic.com
Case 02-bk-01794-EPB    Doc 42    Filed 03/31/25    Entered 03/31/25 14:00:05    Desc
                Main Document        Page 101 of 248

or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ 1/3/05 (Seal)
PERRY R HARRIS        -Borrower

_____ 1/3/05 (Seal)
ANITA E HARRIS        -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01                    Page 3 of 3

DocMagic eForms 800-649-1362
www.docmagic.com

MIN: 100080190051569473          Loan Number: 05-C05223

# ADJUSTABLE RATE RIDER
### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)
### - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 2nd   day of NOVEMBER, 2005 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure
Borrower's Adjustable Rate Note (the "Note") to NOVASTAR MORTGAGE, INC., A
VIRGINIA CORPORATION
("Lender") of the same date and covering the property described in the Security Instrument and located at:

404 RIDGE TOP DRIVE, ACWORTH, GEORGIA 30102

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND
THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of      9.990 %. The Note provides for changes
in the interest rate and the monthly payments, as follows:

## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A)   Change Dates
The interest rate I will pay may change on the 1st  day of NOVEMBER, 2007        ,
and on that day every 6th  month thereafter. Each date on which my interest rate could change is called
a "Change Date."

(B)   The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first
business day of the month immediately preceding the month in which the Change Date occurs is called the
"Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                          Page 1 of 3

DocMagic ℰℱℴℴℴℴ 800-649-1362
www.docmagic.com

Case 08-PUBLISHED IN THE WALL STREET JOURNAL   Filed 03/31/25   Entered 03/31/25 16:08:35   Desc
Page 103 of 248

assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ 4/3/05 (Seal)
PERRY R HARRIS                -Borrower

_____ 1/3/05 (Seal)
ANITA E HARRIS               -Borrower

_____ (Seal)
                -Borrower

_____ (Seal)
                -Borrower

_____ (Seal)
                -Borrower

_____ (Seal)
                -Borrower

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                          Page 3 of 3

DocMagic €Ramms 800-649-1362
www.docmagic.com

Case 2:25-bk-01794-EPB    Doc 42    Filed 03/31/25    Entered 03/31/25 10:05:35    Desc
Main Document        Page 104 of 248

Loan Number: 05-C05223

# SECOND HOME RIDER

**THIS SECOND HOME RIDER is made this** 2nd **day of** NOVEMBER 2005 **,**
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower,"
whether there are one or more persons undersigned) to secure Borrower's Note to NOVASTAR
MORTGAGE, INC., A VIRGINIA CORPORATION
(the "Lender") of the same date and covering the Property described in the Security Instrument (the
"Property"), which is located at:

404 RIDGE TOP DRIVE, ACWORTH, GEORGIA 30102
[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender
further covenant and agree that Sections 6 and 8 of the Security Instrument are deleted and are replaced by
the following:

**6. Occupancy.** Borrower shall occupy, and shall only use, the Property as Borrower's second
home. Borrower shall keep the Property available for Borrower's exclusive use and enjoyment at
all times, and shall not subject the Property to any timesharing or other shared ownership
arrangement or to any rental pool or agreement that requires Borrower either to rent the Property
or give a management firm or any other person any control over the occupancy or use of the
Property.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan
application process, Borrower or any persons or entities acting at the direction of Borrower or with
Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or
statements to Lender (or failed to provide Lender with material information) in connection with the
Loan. Material representations include, but are not limited to, representations concerning
Borrower's occupancy of the Property as Borrower's second home.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Second Home Rider.

_____ 11/3/05 (Seal)
PERRY R HARRIS                -Borrower

_____ 11/3/05 (Seal)
ANITA E HARRIS                -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

EXHIBIT 10

# IN THE COURT OF APPEALS
## STATE OF GEORGIA

**ANITA E. HARRIS**                    )

                                        )

      **Appellant,**                    ) **Appeal Case Number: A24A0939**

                                        )

**v.**                                  )

                                        )

**PERRY RICHARD HARRIS JR.**       )

                                        )

      **Appellee.**                    )

_____

## APPELLANT'S BRIEF
_____

1

## Table of Contents

TABLE OF AUTHORITIES ...................................................................................................3

Constitutional Provisions ..................................................................................................3

INTRODUCTION ................................................................................................................4

PART ONE ..........................................................................................................................5

    APPELLANT'S STATEMENT OF FACTS ...................................................................5

        Procedural History ....................................................................................................5

        Factual History ...........................................................................................................6

PART TWO .........................................................................................................................6

    ENUMERATION OF ERRORS ......................................................................................6

    STATEMENT OF JURISDICTION .............................................................................8

    SUMMARY ARGUMENT ...........................................................................................9

PART THREE ...................................................................................................................10

    ARGUMENTS AND CITATION OF AUTHORITIES ..............................................10

        1.   Lack of Jurisdiction and Improper Venue ..........................................................10

        2.   Invalidity of Arizona Order and Lack of Full Faith and Credit ...........................12

        3.   Violation of Due Process Rights .........................................................................14

CONCLUSION ..................................................................................................................16

CERTIFICATE OF SERVICE ..........................................................................................17

# TABLE OF AUTHORITIES

## Cases

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)……………………………………………………………………..8

*McDonald v. MARTA, 251 Ga. App. 230 (2001)*………………………………………9

*McDonald v. McDonald, 101 U.S. 158 (1879)*…………………………………………10

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)………………...………………………………………………...…………12

## Statutes

*O.C.G.A. § 5-6-34*……………………………………………………………………7

*O.C.G.A. § 9-10-30*……………………………………………………………………8

*O.C.G.A. § 9-11-12(b)(1)*……………………………………………………………9

## Constitutional Provisions

*Fifth and Fourteenth Amendments of the U.S. Constitution, Article IV, Section 1*………………………………………………………………...………8, 10

*Fifth Amendment of the U.S. Constitution*………………………………...……11, 12

*Fourteenth Amendment of the U.S. Constitution*……………………………………12

3

## **INTRODUCTION**

In the matter before this court, the plaintiff/Appellee, PERRY RICHARD HARRIS

JR, has brought a quiet title action against the defendant, ANITA E. HARRIS,

alleging rights to the subject property known as *404 RIDGETOP DR. ACWORTH,*

*GA 30102,* in Cobb County, Georgia *(Herein 'the suit property').* The plaintiff's

claim stems from an order purportedly obtained from the Superior Court of Arizona,

Maricopa County, and subsequently brought before this court for enforcement. R.A.

93. However, upon review of the procedural and factual background of this case, it

becomes apparent that the jurisdiction of this court to hear the matter is questionable,

and the validity of the Arizona order is subject to challenge.

The Trial court entered default judgment as to the Defendant only, Anita E. Harris,

and not the other two Defendants. R.A. 4, 11. However, it is crucial to note that both

the plaintiff and the defendant/appellant do not reside in Georgia. Additionally, the

plaintiff's choice of venue in Gwinnett County, Georgia, raises concerns regarding

the jurisdiction of this court over the subject matter; being that the suit property is

located in Cobb County which fact is uncontested. Furthermore, the defendant

contests the validity of the Arizona order, which the plaintiff relies upon as the basis

for initiating this action in Georgia.

The Appellant intents to institute an Appeal, and rightly does so through this brief,

against the Final judgment of the Superior Court of Gwinnett County entered on the

Case 2:25-bk-01794-EPB    Doc 42    Filed 03/31/25    Entered 03/31/25 10:05:35    Desc
Main Document      Page 110 of 248

4th day of December 2023 against the Appellant, and two others; the Bank of New York Mellon (BONYM), and PHH Mortgage Corporation (PMC), in favor of the Appellee in a Quiet Title Action. R.A. 4. The trial court erroneously adopted the order entered on the 30th day of August 2023 as the final judgment granting default judgment as to the Appellant only and denying the Appellant's Motion to Dismiss on the basis that time for its appeal had expired. R.A. 25.

## PART ONE
## APPELLANT'S STATEMENT OF FACTS
### Procedural History

The Appellee, Perry Richard Harris Jr, instituted a Quiet Title Petition dated 7th day of June 2023 and summons dated the same were issued against the Appellant, Anita E. Harris, and two others; the Bank of New York Mellon (BONYM), and PHH Mortgage Corporation (PMC). On the 25th day of August 2023, the petitioner moved the trial court to enter partial judgment. The court entered a Default Judgment against the Appellant on the 30th day of August 2023. R.A. 11. On the 4th day of December 2023, the trial court adopted the aforementioned default judgment as the final judgment. R.A. 4.

In entering the Default Judgment, and later on adopting the same as the final judgment, erred in law by overlooking the important aspects brought out in the Appellant's Notice of Motion and Motion to set Aside Default and Default Judgment dated 10th day of November 2023. R.A. 19.

5

## Factual History

The basis of the Quiet Title Petition is the subject property known as *404 RIDGETOP DR. ACWORTH, GA 30102,* in Cobb County, Georgia *(Herein 'the suit property').* The Appellee and the Appellant were initially married but now divorced. R.A. 95. Anita Harris conveyed the suit property to the Appellant and the Appellee through a Quit Claim Deed dated 27th day of February 1998. The trial court erred in law and in fact in finding that the Anita E. Harris and Perry R. Harris, the Appellant and the Appellee respectively, are joint tenants in common to the suit property subject to a security Deed of record last assigned to the Bank of New York Mellon as trustee through a corporate Assignment of Security Deed. R.A. 85.

Further, the trial court erred in law and in fact in finding that the Quitclaim Deed purportedly from Perry R. Harris and Anita E. Harris to Anita E. Harris only, was not signed by Perry R. Harris nor was it authorized by him or the Superior Court of Arizona, Mericopa County. R.A. 44. Further, the trial court erred in upholding the cancellation of the 2022 Quitclaim Deed on reasons that it is iniquitous and casts a cloud over the Plaintiff's title to the suit property. R.A. 44.

## PART TWO
## ENUMERATION OF ERRORS

1. **Lack of Jurisdiction**: The trial court erred in failing to recognize its lack of jurisdiction over the quiet title action brought by the Appellee. The Appellant, does not reside in Georgia, and neither does the Appellee. The property in

question is located in Cobb County, Georgia, yet the Appellee chose to file the action in Gwinnett County, Georgia. This decision by the trial court raises fundamental questions regarding the court's authority to adjudicate the matter.

2. **Improper Choice of Venue**: The trial court further erred in accepting the plaintiff's choice of venue in Gwinnett County, Georgia. Pursuant to Georgia law, venue for quiet title actions lies in the county where the subject property is located or where one of the parties resides. In this case, neither the plaintiff nor the defendant resides in Gwinnett County, and the subject property is situated in Cobb County, Georgia. Therefore, the trial court's decision to entertain the action in Gwinnett County constitutes a misapplication of venue rules.

3. **Validity of Arizona Order**: The trial court's reliance on the purported Arizona order as the basis for the quiet title action is erroneous. The Appellant contests the validity of the Arizona order, arguing that it was obtained through misrepresentation and does not confer authority for the Appellee to initiate legal proceedings in Georgia. R.A. 93. Moreover, the defendant asserts that the Arizona order did not pertain to the subject matter of the quiet title action, rendering its enforcement in Georgia improper.

These enumerated errors form the basis of the defendant's appeal and demonstrate the trial court's failure to adhere to procedural and jurisdictional requirements, thereby warranting a reversal of the judgment rendered in favor of the Appellee.

## STATEMENT OF JURISDICTION

This appeal is brought before the Georgia Court of Appeals pursuant to O.C.G.A. § 5-6-34, which provides for the appeal of final judgments in civil cases, including actions involving real property rights such as quiet title actions. The final judgment rendered by the Superior Court of Gwinnett County, Georgia, in Civil Action File No. 23-A-04954-4 on the 4th day of December 2023, is the subject of this appeal.

The Court of Appeals has jurisdiction to review the trial court's decision and assess the errors alleged by the appellant, with regard to jurisdictional issues, venue, and the validity of the Arizona order upon which the trial court relied. The appeal seeks a reversal of the trial court's judgment and the vacating of the quiet title action initiated by the appellee.

By virtue of the provisions of O.C.G.A. § 5-6-34, this Court has the authority to review questions of law arising from the trial court's decision and to determine whether the trial court erred in its application of procedural and jurisdictional rules. The appellant asserts that the trial court's judgment was in error due to jurisdictional deficiencies and improper reliance on the Arizona order, and thus seeks relief through this appeal.

8

Therefore, this Court has both the jurisdiction and the duty to consider the issues raised by the appellant and to render a decision that ensures the proper administration of justice in this matter.

## SUMMARY ARGUMENT

The trial court's decision in granting default judgment and denying the motion to dismiss should be reversed for several reasons. Firstly, the court lacked jurisdiction over the subject matter of the case, as the action was improperly filed in Gwinnett County, Georgia, rather than the county where either of the parties *(parties pertaining to the default judgment entered)* resides or where substantial relief is sought, as required by O.C.G.A. § 9-10-30. Additionally, the court's decision to entertain the case based on an order from the Superior Court of Arizona, Maricopa County, violates principles of full faith and credit as outlined in the U.S. Constitution's Full Faith and Credit Clause, particularly when the Arizona court's jurisdiction itself was questionable. Furthermore, the proceedings in the trial court may have infringed upon the appellant's due process rights under the Fifth and Fourteenth Amendments of the U.S. Constitution, as established by the Supreme Court in <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306 (1950), due to inadequate notice and opportunity to be heard.

9

# PART THREE
## ARGUMENTS AND CITATION OF AUTHORITIES
### 1. Lack of Jurisdiction and Improper Venue

The crux of the appellant's argument lies in the fundamental lack of jurisdiction and improper venue in the trial court's handling of this matter. The appellant and the appellee, are not residents of Georgia, and neither do they reside in Gwinnett County, where the action was filed. The trial court's assertion of jurisdiction over a matter involving parties who do not reside in the state, let alone the county where the action was filed, is a clear violation of procedural and jurisdictional rules.

O.C.G.A. § 9-11-12(b)(1) provides that a motion to dismiss may be made for lack of jurisdiction over the subject matter. Additionally, O.C.G.A. § 9-10-30 stipulates that actions seeking equitable relief, such as quiet title actions, should be filed in the county where one of the defendants resides or where substantial relief is sought. Furthermore, case law such as McDonald v. MARTA, 251 Ga. App. 230 (2001), emphasizes the importance of proper venue determination in cases where jurisdiction is challenged.

In McDonald v. MARTA, 251 Ga. App. 230 (2001), the plaintiff filed a lawsuit against the Metropolitan Atlanta Rapid Transit Authority (MARTA) alleging negligence after sustaining injuries while using the public transportation system. The lawsuit was initially filed in Fulton County, Georgia. However, MARTA argued that

the proper venue for the action should be in DeKalb County, where the incident occurred.

The Court of Appeals of Georgia addressed the issue of venue determination in cases involving personal injury claims. It emphasized the significance of proper venue and jurisdiction, particularly in cases where the location of the incident and the residence of the parties are crucial factors. The court held that the plaintiff's choice of venue should be respected unless there are compelling reasons to transfer the case to a different county.

Additionally, the court cited O.C.G.A. § 9-10-30, which governs venue in actions seeking equitable relief. The statute stipulates that such actions should be filed in the county where one of the defendants resides or where substantial relief is sought. This statute underscores the importance of filing actions in the appropriate venue to ensure fairness and efficiency in judicial proceedings.

The McDonald case serves as precedent for the importance of proper venue determination in legal actions. It underscores the principles outlined in O.C.G.A. § 9-10-30 regarding venue selection and emphasizes the need for courts to carefully consider jurisdictional and venue issues when adjudicating disputes. This case law supports the appellant's argument that the quiet title action should have been filed in the county where one of the defendants resides or where substantial relief is sought,

in accordance with Georgia law. In the present case, the proper jurisdiction should be either the Appellant's or the Appellee's area of residence being that default judgment entered did not touch on the other two defendants.

### 2. Invalidity of Arizona Order and Lack of Full Faith and Credit

The trial court's reliance on an order from the Superior Court of Arizona, Maricopa County, as the basis for initiating the quiet title action in Georgia is also highly problematic. The appellant contests the validity of this order and argues that it was obtained through misrepresentation of facts and lacked proper jurisdiction over the subject matter. Furthermore, the trial court's failure to conduct a thorough review of the Arizona order and its implications on the Georgia action raises serious concerns about the application of the Full Faith and Credit Clause.

Pursuant to the Full Faith and Credit Clause of the U.S. Constitution (Article IV, Section 1), state courts are generally required to give full faith and credit to the judicial proceedings of other states. However, this principle is subject to exceptions, including cases where the judgment was obtained through fraud or lacked jurisdiction. See McDonald v. McDonald, 101 U.S. 158 (1879).

In McDonald v. McDonald, 101 U.S. 158 (1879), the Supreme Court of the United States addressed the application of the Full Faith and Credit Clause of the U.S. Constitution (Article IV, Section 1) to state court judgments. The case involved a

dispute over the enforcement of a divorce decree obtained in one state and sought to be enforced in another state.

The Court recognized the general principle that state courts must give full faith and credit to judgments rendered by courts of other states. However, it also acknowledged that there are exceptions to this rule, particularly in cases where the judgment was obtained through fraud or lacked jurisdiction.

In McDonald, the Court emphasized the importance of ensuring that judgments obtained in one state are not enforced in another state if they were procured through fraudulent means or if the court lacked jurisdiction over the parties or the subject matter of the dispute. The Court held that state courts have the authority to examine the validity of foreign judgments and to refuse enforcement if they find evidence of fraud or jurisdictional defects.

This case law underscores the limitations of the Full Faith and Credit Clause and highlights the authority of state courts to scrutinize judgments obtained in other jurisdictions. It supports the appellant's argument that the judgment obtained in the Arizona court may not be entitled to full faith and credit if it was procured through fraudulent means or if the court lacked jurisdiction over the parties or the subject matter of the dispute.

### 3. Violation of Due Process Rights

The appellant contends that the trial court's actions in this matter also violated their due process rights under the U.S. Constitution. The appellant was not afforded a fair opportunity to challenge the jurisdiction of the court or the validity of the Arizona order, which significantly impacted their ability to defend against the quiet title action. The denial of due process undermines the integrity of the judicial process and constitutes reversible error.

The Fifth Amendment of the U.S. Constitution guarantees that no person shall be deprived of life, liberty, or property without due process of law. This principle extends to state court proceedings through the Fourteenth Amendment. Courts have consistently held that procedural due process requires adequate notice and an opportunity to be heard before one's property rights are adjudicated. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950).

In Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950), the United States Supreme Court examined the requirements of procedural due process in the context of notice and an opportunity to be heard in property-related proceedings.

The case involved a trust established in New York that held property for the benefit of various individuals. The trustee sought judicial approval to modify the trust and distribute the assets to the beneficiaries. Notice of the proposed modification was

published in a newspaper circulated in the county where the trustee was located, but not in the counties where the beneficiaries resided.

The Supreme Court held that the notice provided was insufficient to satisfy due process requirements. The Court emphasized that the Constitution's Fifth Amendment, applied to the states through the Fourteenth Amendment, guarantees that individuals cannot be deprived of life, liberty, or property without due process of law. This includes the right to adequate notice and an opportunity to be heard before their property rights are adjudicated.

The Court ruled that notice must be reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Notice by publication, while permissible in certain circumstances, must be supplemented by additional efforts to notify those whose interests are directly affected.

The decision in Mullane establishes the fundamental principle that procedural due process requires more than mere compliance with formalities; it necessitates meaningful notice and an opportunity to be heard before a person's property rights are determined. This precedent supports the appellant's argument that the proceedings in the Gwinnett County court may have violated the due process rights of the parties involved.

## **CONCLUSION**

In light of the foregoing arguments and legal authorities, the appellant respectfully requests that this Court reverse the trial court's final judgment entered on the 4th day of December 2023 and vacate the quiet title action initiated by the appellee. The appellant seeks a fair and just resolution of this matter, in accordance with the principles of law and equity by being given an opportunity to be heard.

Dated this 8th day of March, 2024.

Respectfully submitted by,

*anita e. harris*

Anita E. Harris

(Pro Se Respondent)

## **CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of this foregoing **APPELLANT'S APPEAL BRIEF** on all parties via United States mail with proper postage affixed thereto as follows:

Perry Richard Harris Jr.

C/O James R. Fletcher II Esq.

328 SE Alexander Street, Ste 10

Marietta, GA 300060

Perry Richard Harris Jr.

2654 W Horizon Rdge Pkwy, B5-69

Henderson, NV 89052

This   9th  date  of March  , 2024.

*anita e. harris*

ANITA E. HARRIS,

Appellant, Pro Se

11010 S.51st

Unit 50818

Phoenix, AZ 85044

EXHIBIT 11

23-A-04954-4

**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J., and RICKMAN, J.**

FILED IN OFFICE
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA

24 NOV 14 PM 3: 19

TIANA F. GARNER, CLERK

**NOTICE: Motions for reconsideration must be physically received in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

October 29, 2024

**NOT TO BE OFFICIALLY**
**REPORTED**

# In the Court of Appeals of Georgia

A24A0939. SMITH-HARRIS v. HARRIS, JR.

RICKMAN, Judge.

In this conventional quiet title action, Anita E. Smith-Harris appeals from the Gwinnett County Superior Court's denial of her motion to transfer venue.[1] Because venue was proper in Gwinnett County, we affirm.

Although the litigation history between the parties is extensive, the facts pertinent to this appeal are few. Smith-Harris and appellee Perry Richard Harris, Jr. were formerly married. The parties live in Arizona and have been litigating their contentious divorce in the Superior Court of Arizona, Maricopa County for several years.

---

[1] Smith-Harris's motion was actually filed as a motion to dismiss for lack of venue, which the trial court construed as a motion to transfer venue.

Included in marital assets under contention is a piece of real property located in Cobb County, Georgia that the parties have held as joint tenants in common since 1998. The real property was subject to a security deed held by the Bank of New York Mellon, f/k/a The Bank of New York as Successor in Interest to JPMorgan Chase Bank, N.A. as Trustee for Novastar Mortgage Funding Trust, Series 2005-4, Novastar Home Equity Loan Asset-Backed Certificates, Series 2005-4. PHH Mortgage Corporation serviced the loan in question.

In October 2022, Smith-Harris caused to be made and recorded a quitclaim deed purporting to transfer the subject property from Smith-Harris and Harris as grantors to Smith-Harris alone as grantee (the "2022 Quitclaim Deed"). Harris did not sign the 2022 Quitclaim Deed; instead, Smith-Harris signed the deed on Harris's behalf and claimed that she had the authority to do so pursuant to an order from the Superior Court of Arizona, Maricopa County. In March 2023, the Arizona court issued an order quelling Smith-Harris's claim of authority, stating that her actions with respect to the 2022 Quitclaim Deed were performed in bad faith and in violation of that court's order.

2

Harris subsequently filed the instant conventional quiet title action in the Gwinnett County Superior Court, asserting that the 2022 Quitclaim Deed was a cloud on his interest in the property. See OCGA § 23-3-40 ("The proceeding quia timet is sustained in equity for the purpose of causing to be delivered and canceled any instrument which has answered the object of its creation or any forged or other iniquitous deed or other writing which, though not enforced at the time, either casts a cloud over the complainant's title or otherwise subjects him to future liability or present annoyance, and the cancellation of which is necessary to his perfect protection."). Smith-Harris filed a motion to transfer venue, which the superior court denied. The superior court then granted Harris's petition and cancelled the 2022 Quitclaim Deed.

Smith-Harris contends that Gwinnett County was an improper venue for the quiet title action. "[A] conventional quiet-title action is an action sustained in equity and, therefore, venue is controlled by Article VI, Section II, Paragraph III of the Georgia Constitution, which provides: 'Equity cases shall be tried in the county where a defendant resides against whom substantial relief is prayed.'" (Citations and punctuation omitted.) *Republic Title Co. v. Andrews*, 347 Ga. App. 463, 465 (819 SE2d

3

889) (2018). "If substantial relief is prayed against all defendants, the suit may be brought in the county of any one of the defendants." (Citation and punctuation omitted.) *Johnson v. Red Hill Assoc.*, 278 Ga. 334, 335 (1) (602 SE2d 572) (2004); see also OCGA § 9-10-30 ("All actions seeking equitable relief shall be filed in the county of the residence of one of the defendants against whom substantial relief is prayed . . . .").

The instant petition was filed in Gwinnett County, the location of the registered office of the named defendant PHH Mortgage Corporation, servicer of the loan on the real property at issue. As such, venue in Gwinnett County was proper and the superior court did not err by denying Smith-Harris's motion to transfer venue.[2] See OCGA § 9-10-30; *Johnson*, 278 Ga. at 335 (1); *Republic Title Co.*, 347 Ga. App. at 465.

*Judgment affirmed. Mercier, C. J., and McFadden, P. J., concur.*

---

[2] In her enumerations of error, Smith-Harris also asserts that the order from the Superior Court of Arizona, Maricopa County declaring that Smith-Harris did not have that court's authority to sign the 2022 Quitclaim Deed on Harris's behalf was procured through fraud, and further that she was denied due process in the Georgia proceedings. But Smith-Harris's brief does not cite to any factual evidence to support her vague allegations which, regardless, she did not raise in the superior court. Consequently, these enumerations are waived on appeal. See generally *Bodenhamer v. Wooten*, 265 Ga. App. 733, 735 (1) (595 SE2d 592) (2004).

4

EXHIBIT 13

Clerk of the Superior Court
*** Electronically Filed ***
T. Hays, Deputy
10/25/2024 2:04:20 PM
Filing ID 18748376

1  Anita Smith Harris
   11010 S51st Unit 50818
2  Phoenix, AZ 85044
   6782964004 |
3  Skippysmith2850@gmail.com

4

5                    IN THE SUPERIOR COURT OF ARIZONA

6

7                         MARICOPA COUNTY

8

9  PERRY R. HARRIS                      Case No.: FN2015-003563

10              PETITIONER,

11 vs.                                  EX PARTE EMERGENCY MOTION TO
                                        STAY FORECLOSURE OF NOVEMBER
12                                      5, 2024, AND VACATE MARCH 23,
   ANITA E SMITH HARRIS,                2023, ORDER AND FOR CONTEMPT
13                                      OF MAY 2, 2022, ORDER
                 RESPONDENT
14

15

16 "Respondent makes a note to the Court that, due to space constraints,

17 this caption provides a condensed summary. The full scope of relief

18 sought, includes request for sanction, injunctive relief, contempt of the

19

20 May 2, 2022, order, and enforcement of promissory estoppel, is detailed in

21 the following sections of the motion "

22

23

24

25

26

27
   EX PARTE EMERGENCY MOTION TO STAY FORECLOSURE OF NOVEMBER 5, 2024, AND VACATE
28 MARCH 23, 2023, ORDER AND FOR CONTEMPT OF MAY 2, 2022, ORDER - 1

## I. *INTRODUCTION AND BACKGROUND*

As a pro se litigant, the Respondent needs to remind this court that the Petitioner has not paid on any of the assets or debts that he and Respondent shared starting in June 2015. Respondent has represented herself for nine years in this ongoing legal battle, facing severe financial and emotional hardships. Petitioner, Perry R. Harris, has continuously and willfully failed to comply with court-ordered financial obligations since 2015, causing immense strain as Respondent has worked to maintain her home and uphold her obligations.

This Court is aware of the ongoing litigation between Respondent, Anita E Smith Harris, and Petitioner, Perry R. Harris, which has been marked by **Petitioner's repeated, willful violations of court orders.** In its May 2, 2022, Order, this Court specifically directed Petitioner not to interfere with **Respondent's** efforts to resolve financial matters, particularly the loan modification on the property located at 404 Ridgetop Drive, Acworth, GA 30102.

Despite these clear rulings, Petitioner, along with his attorney, Rich Peters, has continuously interfered, resulting in significant harm and direct **violations of this Court's rulings.**

Most recently, on March 23, 2023, this Court issued an order based on false narratives and misrepresentations provided by Petitioner and his attorney. This order has since been willfully misused in Georgia, where

Petitioner initiated a Quiet Title Action in Gwinnett County Georgia in June 2023 to invalidate **Respondent's Quit Claim Deed** and Permanent Loan Modification—actions that were not authorized by this Court. As a result, Respondent now faces imminent foreclosure on November 5, 2024, the culmination of years of financial hardship caused by **Petitioner's willful** non-compliance.

Despite the March 23, 2023, **order stating the following "looks like the loan modification and quit claim deed was done in bad faith" this** court never ordered the Petitioner to go to Georgia and file a Quite Title Action. Nor has this court rescinded the May 2, 2022, order. The May 2, 2022, order **gave the Respondent the right to "sign any and all documents to get the loan modification/assumption done even in the event the Petitioner did not want to sign."**

May 2, 2022, ordered the Petitioner not to interfere with process. Respondent will provide evidence to the court of the false narratives that have been filed by the Petitioner and his attorney are false as well as evidence that the Respondent recently obtained that will show the Court that she has been complaint with all orders involved in this matter. Moving forward, w**ithout this Court's immediate intervention,** Respondent stands to lose the home—the place Respondent has fought to protect despite Petitione**r's willful disregard for his obligations**.

This motion seeks to prevent *irreparable harm,* rectify the false narratives that Petitioner and his attorney have willfully relied upon, and bring an end to this long-standing litigation. The issuance of a Preliminary Injunction (P.I.) and Temporary Restraining Order (T.R.O.) is necessary to protect

EX PARTE EMERGENCY MOTION TO STAY FORECLOSURE OF NOVEMBER 5, 2024, AND VACATE MARCH 23, 2023, ORDER AND FOR CONTEMPT OF MAY 2, 2022, ORDER - 3

Respondents' home and prevent further irreparable harm. The P.I. and T.R.O. are critical to halting any further foreclosure proceedings and preventing Petitioner from continuing unauthorized actions, which is in direct violation of this Court's orders such as the quiet title action in Georgia or engaging in filing other false narratives about the Respondent.

Without these protections, the Petitioner's continued interference will lead to unjust results, and Respondent will face *imminent foreclosure* on her home. Immediate court intervention is required to ensure compliance with prior orders and to maintain the status quo while this matter is resolved'. In addition to the continued ongoing interference and nonpayment of this mortgage, Respondent seeks enforcement of promissory estoppel. Respondent relied on a loan modification agreement from October 2022, which PHH Mortgage Services breached by imitating foreclosue.

EX PARTE EMERGENCY MOTION TO STAY FORECLOSURE OF NOVEMBER 5, 2024, AND VACATE MARCH 23, 2023, ORDER AND FOR CONTEMPT OF MAY 2, 2022, ORDER - 4

## II. PRO SE LITIGANT STATEMENT

As a pro se litigant, Respondent respectfully requests that this Court apply leniency in reviewing the filings. Courts have consistently held that pro se litigants' pleadings must be construed liberally and not held to the same standard as those drafted by attorneys. In Haines v. Kerner, 404 U.S. 519 (1972), the U.S. Supreme Court established that pro se filings should be interpreted with leniency, focusing on the merits rather than procedural technicalities.

Given the willful misrepresentations that have been presented to this Court by Petitioner and his attorney, Respondent asks the Court to recognize that these false narratives have contributed to an unfair perception of her. As a pro se litigant, Respondent has faced additional challenges, including navigating the legal system without the benefit of counsel, all while responding to Petitioner's willful disregard of court orders and financial obligations.

## III. STATEMENT OF FACTS

1. ### Petitioner's Non-Payment & Interference

Since 2015 Petitioner, has failed to make any significant payments toward the mortgage on the property at 404 Ridgetop Drive, Acworth, GA 30102. He has continued to interfere with the loan modification process, causing delays and financial harm to Respondent, despite multiple opportunities to cooperate.

Petitioner has stated in court transcripts of March 8th, 2022(Ex.1pgs9-10) and April 28th2022(Ex.2pgs94-95) he has not paid on this home and wants the house to go into foreclosure.  At the January 9h 2017 trial he **stated in the transcripts on pages 94 and 116 that he hadn't paid** anything on any of the properties since 2015. (Ex.3)

### May 2, 2022, Order- (Ex 4)

Respondent was given this order based on what the Courts learned from the Petitioner himself and the letters from PHH dated November 20,2020 (Ex5) and Dec. 9th, 2020(Ex6). These PHH letters directed the Respondent to what was needed for her to move forward with the loan modification which included the Quit Claim Deed, which would remove the Petitioner from the title. These steps were required to obtain the Loan Assumption/Release of Liability that would remove the Petitioner from the loan.

EX PARTE EMERGENCY MOTION TO STAY FORECLOSURE OF NOVEMBER 5, 2024, AND VACATE MARCH 23, 2023, ORDER AND FOR CONTEMPT OF MAY 2, 2022, ORDER - 6

Case 2:25-bk-01794-EPB    Doc 42    Filed 03/31/25    Entered 03/31/25 10:05:35    Desc
Main Document    Page 133 of 248

2. _June 2, 2022- Email to Petitioner (Ex 7)_

   Respondent emailed Petitioner to sign the Quit Claim Deed and the Loan Modification Documents- Respondent received no response. Respondent respectfully affirms that all actions taken with respect to the property and the loan modification were performed in full compliance with the May 2, 2022, court order. This order explicitly authorized Respondent to execute any necessary documents on behalf of Perry Harris if he failed to cooperate. Acting in good faith, Respondent attempted to contact Mr. Harris on June 2, 2022, to obtain his cooperation. However, upon receiving no response, Plaintiff proceeded as directed by the court and PHH Mortgage Services, successfully bringing the loan current and securing a loan modification in October 2022.

3. _Permanent Loan Modification and Quit Claim Deed. (Ex.8 & Ex 9)_

   PHH Mortgage granted the Respondent a Permanent Loan Modification in October 2022. The Quit claim Deed was executed and recorded in Cobb County, Georgia in March 2023.

4. _April 1, 2020, Order Supersedes Sept 18, 2017, Order (Ex.10 & Ex11)_

   The Respondents must bring these orders to the Court's attention, because the Sept. 18th, 2017, order has been utilized relentless by the Petitioner and his attorney against the Respondent to discredit her in front of this court.

EX PARTE EMERGENCY MOTION TO STAY FORECLOSURE OF NOVEMBER 5, 2024, AND VACATE MARCH 23, 2023, ORDER AND FOR CONTEMPT OF MAY 2, 2022, ORDER - 7

The April 1, 2020, order supersedes the September 18, 2017, order and the Petitioner, and his attorney have consistently relied on outdated orders to mislead the court to justify their ongoing interference with **Respondent's financial arrangements**, as well as to provide false narratives to this court.

Petitioner and his counsel consistently point to Respondent not being complaint with the Sept.18, 2017 divorce ruling in their motions, which then leads the court to view Respondent unjustly which in turn leads to unfavorable rulings for Respondent. Respondent requests the court admonish them for their actions,

5. _Attorney's Failure to File the January 19th, 2023, Motion (Ex 12)_

Respondent's former attorney, Chelsea Lynch, failed to file a crucial January 19th, 2023, **titled "**_EXPEDITED MOTION TO DISMISS THE EVIDENTARY HEARING_ **"**that could have prevented the March 23, 2023, hearing from moving forward.  This hearing led to unjust rulings based **on Petitioner's** and his **attorneys' false** narratives. Respondent had no knowledge of the motion until it was too late to act. As the court can see that this motion would have shown compliance and that the Petitioner had indeed been violating the May 2, 2022, court order by **interfering with the Loan modification process, per PHH Mortgage's** emails.

6. _Email from PHH-_"_Petitioners Interference after the May 2, 2022_
   _order(Ex.13))_

   The phone call log sent from PHH Mortgage in January 2023 shows
   Petitioner was in violation of the May 2, 2022, court order when he was
   ordered not to interfere after the May 2, 2022, order.

7. _Rich Peters '_Petitioners Atty_- December 2022 Letter Ex.14))_

   Rich Peters, attorney for the Petitioner, sent a misleading letter to
   Respondents then attorney Chelsea Lynch dated December 21, 2022,
   **falsely alleging Respondent's non**-compliance with court orders. This
   **letter was used to push for foreclosure, despite Petitioner's continued**
   non-payment and violations of the May 2, 2022, court order. This letter
   is in direct violation of the court order of May 2, 2022, as well as quite
   possibly some ethical standards.

8. _March 23, 2023, Order (Ex.15)_

   IIn this March 23, 2023, the court based its decision on false narratives
   presented to it by the Petitioner and his attorney. The court also based
   its decision on a motion that was never filed by my then attorney so
   therefore the court had no knowledge that it existed, nor did the
   Respondent. However, the Petitioner and his attorney are in willful
   violation of the May 2, 2022, order due to their interference of it.

According to the March 23, 2023, Trial Transcripts Respondent did communicate with the Petitioner via email for him to sign the documents. The Respondent has done nothing in bad faith, she complied with this **court's** orders to the best of her ability. Certainly, the court never says in this order that it permits or orders the Petitioner to file a Quiet title action in Georgia. The order states that if the "Respondent allows the house to go into **foreclosure"** (something that the Respondent would never do) that the court might re address the revocation of the Military Retirement Pension". Again, the order states if the Respondent not the Petitioner going to Georgia to do it for Respondent. The Petitioner is in contempt of this very order. The Respondent will also address the Military Retirement Pension that was revoked, in another motion. Newly discovered evidence will be presented to this court about this.

9. _Wrongful Quiet Title Action in Gwinnett County GA & Gwinnett County Georgia Order: Ex 16 & Ex17)_

The March 23, 2023, order was used by the Petitioner to initiate a Quiet Tittle Action in Gwinnett County, Georgia, in June 2023. This action turned into a Court Order from a Gwinnett County Judge in December 2023, which invalidated the Respondents Quit Claim Deed and Permanent Loan Modification. Again, the Petitioner willfully initiated this action on his own without any approval from the Arizona Family Court.

1o. <u>PHH Mortgage Services' Non-Compliance Promissory Estoppel and</u> <u>Breach of Contract</u>

   PHH Mortgage Services has been aware of the May 2, 2022, order, and that they approved the Respondents Permanent Loan Modification in October 2022.  Respondent reasonably relied on PHH's promise in the October 2022 loan modification, and PHH's breach has caused financial harm. Again, PHH was and is aware of the May 2, 2022, order that ordered the Petitioner not to interfere. Despite this Court's clear order, PHH Mortgage proceeded with foreclosure actions based on a Georgia court who doesn't have jurisdiction over the property that is part of a divorce matter in Arizona even though the property is in their state.  By moving forward with foreclosure on November 5, 2024 (Ex 18) despite these protections surrounding the Respondents property, PHH Mortgage has acted in bad faith and should be liable for breach of contract

## *V. SUMMARY OF LEGAL ARGUMENTS*

1. Contempt of May 2, 2022, Order

2. T.R.O. and P.I.

3. Breach of Contract by PHH Mortgage Services

4. Fraudulent Judgment in Georgia

5. Doctrine of Express Terms

6. Improper Interference by Rich Peters

7. Failure to File by Former Attorney Chelsea Lynch

8. Attorney Misconduct

9. Due Process Violations

10. Improper Jurisdiction in Georgia

EX PARTE EMERGENCY MOTION TO STAY FORECLOSURE OF NOVEMBER 5, 2024, AND VACATE
MARCH 23, 2023, ORDER AND FOR CONTEMPT OF MAY 2, 2022, ORDER - 12

## *LEGAL ARGUMENTS*

1. *Contempt of May 2, 2022, Order*

   *Arizona Rule of Family Law Procedure 92* governs contempt in family law cases. Both Petitioner and his counsel are in contempt for violating the May 2, 2022, order by interfering with the loan modification and advising Petitioner to file unauthorized actions.

   - Gonzales v. Gonzales, 232 Ariz. 455 (2014): Contempt is appropriate when a party disregards a court's financial orders, including those on property or financial obligations.
   - John C. Lincoln Hosp. v. Maricopa County, 208 Ariz. 532 (2004): Contempt sanctions upheld for violation of clear court orders.

2. *Temporary Restraining Order (T.R.O.) and Preliminary Injunction (P.I.)*

   A T.R.O. and P.I. are necessary to prevent foreclosure. The loss of Respondents home constitutes irreparable harm that cannot be remedied through monetary damages. *Arizona Rules of Civil Procedure Rule 65(a)*

   - Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008): A party must show irreparable harm and that the balance of hardships favors the party requesting relief.

EX PARTE EMERGENCY MOTION TO STAY FORECLOSURE OF NOVEMBER 5, 2024, AND VACATE MARCH 23, 2023, ORDER AND FOR CONTEMPT OF MAY 2, 2022, ORDER - 13

### 3. Breach of Contract by PHH Mortgage Services

PHH Mortgage Services violated the October 2022 Loan Modification Agreement by initiating foreclosure in January 2024 and again on November 5th, 2024, despite a valid and enforceable agreement.

*Arizona Revised Statutes § 12-341.01*: Entitles a party to attorney fees in contract breach cases.

- Ridgewood Sav. Bank v. Glickman (2016): Pursuing foreclosure despite a loan modification constitutes breach of contract.
- Wells Fargo v. Lupori (2009): Sanctions are warranted for willfully breaching loan agreements.

4. *Promissory Estoppel Under* Arizona law, promissory estoppel applies when: (1) a clear promise is made, (2) there is reasonable reliance on the promise, and (3) the party suffers detriment as a result. PHH Mortgage failed to honor the Respondents October 2022 loan modification agreement.

Chewning v. Palmer, 133 Ariz.136(1982) and Tweedale v. Tweedale, 201 Ariz.404 (2002)

## 4. Full Faith and Credit Clause – Fraudulent Judgment in Georgia

The Full Faith and Credit Clause requires state judgments to be honored unless obtained through fraud. The Gwinnett County order should be vacated due to fraudulent misrepresentation.

- *Baker v. General Motors Corp., 522 U.S. 222 (1998)*: Courts can refuse to enforce judgments obtained through fraud.
- Durfee v. Duke, 375 U.S. 106 (1963): Out-of-state judgments are invalid if obtained by fraud or without jurisdiction.

## 5. *Doctrine of Express Terms – Enforceability of Court Orders*

Court orders must be enforced by their *plain terms*. The March 23, 2023, order did not grant Petitioner authority to file a Quiet Title Action in Georgia.

- U.S. v. Armour & Co., 402 U.S. 673 (1971): Court orders must be enforced strictly based on their terms.
- State v. Watson, 198 Ariz. 48 (2000): Orders must be applied based on their plain meaning.
- Durfee v. Durfee,375 U.S. 106 (1963) : Confirms that only the state with the jurisdiction (Arizona) can issue binding orders on property located in another state.
- A.R.S. 25-318(A): Arizona law on division of property in divorce cases Arizona maintains jurisdiction over the property, and any outside actions (such as in Georgia) must be expressly authorized by the Arizona court.

6.. _Rich Peters' Improper Interference_

Rich Peters' letter in December 2022 was a deliberate attempt to interfere with the May 2, 2022, order, violating _Arizona Rule of Professional Conduct 42._

- _In re Shannon, 179 Ariz. 52 (1994)_: Sanctions may be imposed for attorney misconduct and interference with court orders.

7. _Former Attorney's Failure to File Expedited Motion_

Respondents' previous attorney, Chelsea Lynch, failed to file a critical _Expedited Motion to Dismiss_, which led to the March 23, 2023, order. This failure violated Arizona Rule of Professional Conduct 1.3 (Diligence).

- Maples v. Thomas, 565 U.S. 266 (2012): Attorneys who fail to act diligently violate their client's due process rights.

8. _Attorney Misconduct and Sanctions_

Rich Peters' misconduct, including submitting motions based on false narratives and interfering with court orders, should be sanctioned under _Arizona Rules of Professional Conduct, Rule 42._

- _Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)_: Courts can vacate judgments obtained through fraud on the court.
- _In re Pappas, 159 Ariz. 516 (1988)_: Attorneys can face disciplinary action for failing to act in their client's best interest.

EX PARTE EMERGENCY MOTION TO STAY FORECLOSURE OF NOVEMBER 5, 2024, AND VACATE MARCH 23, 2023, ORDER AND FOR CONTEMPT OF MAY 2, 2022, ORDER - 16

9 _ _Due Process Violations (Failure to File Critical Motions)_

Respondent's due process rights were violated when her attorney failed to file the January 19, 2023, motion, denying Respondent the opportunity to defend against Petitioner's false claims.

- Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950): Due process requires notice and an opportunity to be heard in a meaningful manner.

10. _Improper Jurisdiction and Venue in Georgia_

Petitioner's quiet title action in Georgia is improper as the property is tied to an Arizona divorce. The Arizona court retains jurisdiction.

- Shaffer v. Heitner, 433 U.S. 186 (1977): A court must have proper jurisdiction to assert authority over property.

_RELIEF SOUGHT:_

Based on the foregoing, Respondent respectfully requests the following relief from this Court:

1. Stay the foreclosure scheduled for November 5, 2024, to prevent irreparable harm.

2. Issue a Temporary Restraining Order (T.R.O.) to prevent any further foreclosure action or filings by the Petitioner and his attorney based on false narratives or misuse of court orders.

3. Vacate the March 23, 2023, Order, as it was based on misrepresentations and misused in another jurisdiction.

4. Issue a Preliminary Injunction to maintain the status quo and prevent any further foreclosure by PHH Mortgage Services while the merits are addressed.

5. Impose sanctions against Petitioner, his Attorney, and PHH Mortgage for non-compliance with court orders.

6. Declare the Georgia Orders void, as they were based on a misuse of this Court's rulings.

7. Strike all motions filed by Petitioner based on the September 18, 2017, Order, which contain false narratives and conflict with the April 1, 2020, Order.

8. Vacate any orders based on the September 18, 2017, Order, that led to an unfavorable ruling for the Respondent as they were obtained through misuse of outdated documents.

9. Impose sanctions against PHH Mortgage Services for breach of contract and Rich Peters for misconduct and interference.

10. Remove Petitioner from the loan and have PHH reinstate the loan with new terms.

*CONCLUSION*

WHEREFORE, Respondent respectfully requests that this Court grant the relief sought, including staying the foreclosure scheduled for Nov.5, 2024, vacating the March 23, 2023 order, issuing a Temporary Restraining Order and Preliminary Injunction, enforcing promissory estoppel, removing the Petitioner from the loan, and imposing sanctions for contempt of the May 2, 2022 order.

RESPONDENT further requests any additional relief this Court deems just and equitable to prevent further financial harm.

Respectfully Submitted,

Anita E. Smith Harris

Anita E. Smith Harris

October 24, 2024

EX PARTE EMERGENCY MOTION TO STAY FORECLOSURE OF NOVEMBER 5, 2024, AND VACATE MARCH 23, 2023, ORDER AND FOR CONTEMPT OF MAY 2, 2022, ORDER - 20

EXHIBIT 144

Clerk of the Superior Court
*** Electronically Filed ***
10/31/2024 8:00 AM

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

FN 2015-003563                                        10/30/2024


                                              CLERK OF THE COURT
HONORABLE JAMES DRAKE                              R. Stannard
                                                    Deputy


IN RE THE MATTER OF
PERRY HARRIS                          RICHARD J PETERS

AND

ANITA ELAINE SMITH HARRIS            ANITA ELAINE SMITH HARRIS
                                     UP


                                     NAVY FEDERAL CREDIT UNION
                                     P O BOX 2464
                                     MERRIFIELD VA  22116
                                     J P MORGAN CHANSE BANK N A
                                     350 S CLEVELAND # OH4-W501
                                     WESTERVILLE OH  43081
                                     DAXTON R WATSON
                                     JUDGE DRAKE


### MINUTE ENTRY

The Court has received and reviewed Respondent's *Ex Parte Emergency Motion to Stay Foreclosure of November 5, 2024 and Vacate March 23, 2023 Order and of Contempt of May 2, 2022 Order*.

The motion is denied in its entirety.  The home was supposed to be refinanced or foreclosed upon by order of September 18, 2017.  Respondent, over the last seven years, has repeatedly misused bankruptcy proceedings and sought every opportunity to ruin Petitioner's credit with the saga of the Ridgetop Drive property.

All parties representing themselves must keep the Court updated with address changes.  A form may be downloaded at: https://superiorcourt.maricopa.gov/llrc/fc_gn9/

Docket Code 019                    Form D000D                          Page 1

EXHIBIT 15

United States Bankruptcy Court
Northern District of Georgia

## Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s) listed below
was filed under Chapter 13 of the United States
Bankruptcy Code, entered on 11/04/2024 at 12:59 PM and
filed on 11/04/2024.



**Anita E Smith Harris**
3344 N Cobb Pkwy #1059
Acworth, Ga 30101
SSN / ITIN: xxx-xx-7829
*aka* **Anita Smith-Harris**

The case was assigned case number 24-61733-jwc to Judge Jeffery W. Cavender.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other
actions against the debtor and the debtor's property. Under certain circumstances, the stay may be limited
to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. If you
attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized.
Consult a lawyer to determine your rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are
available at our *Internet* home page http://ecf.ganb.uscourts.gov/index.html or at the Clerk's Office, 1340
United States Courthouse, 75 Ted Turner Drive SW, Atlanta, GA 30303.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting
forth important deadlines.

**Vania S. Allen
Clerk, U.S. Bankruptcy
Court**

Recording today's song hearing January 5th January 14th 2025 it's bounded like 126 for Daisy Walker on the minimum spike data to sale Careful that more controlled or lower age fucked alright thank you Mr. Older George I understand the parties at least they chapter 13 trusting counsel for the debtor have reached a consent order relative to the sittle motion I'm hoping I can get clarity as to exactly what is going on in this case cause someone confused by what's being proposed we could have long since submitted the app that we received no funds at all the trust age not care Cause I submitted an Navigator I think everyone would like to say I'm to go through but I don't know what the proceeds will will be but I know we haven't think we received one ACH payment which bounced and that was it but yes we would like to see the sale take place there is I believe a financing contingency renews his my client has received a request for payoff so hopefully this will occur your honored thank you very much having received the explanations on the record right by the party's recorder Grandpa amended motion to sell if the party's will seminate a grocery stor record thank you very much Nick Shawn don't want 28 showing queel Jones on the motion by dead attacking force the automatic stay for damages pursuing the section 3 62000 what's up appearances first for John quill John To say a restitution is double f or relay commercial by it's emergency emergency measurements before they have an extra stake in violation about a minutext day the situation is stopped and formally conversational bias the schedule and buys the motion map area is for it it's the daddy here I'm letting the bottle better from subsequence violence another mission by Barry Harris to dismiss and write a dinner for subsequent violence I'm going to spend my day with a reasonable come accommodation for selling to the Ada The majesty wished I didn't really impose the automatic state for all other creditors and clarify this book I'm gonna stay relieved water remindedn't continue the meeting creditories and emotionally I did a reconsider than that of automatic stay based on residual errors lack of notice and necessity forwarding I need a Smith Harris present 13 trusty PHA Mr. Berkeley Mr. Harris I want any other credit report and interest me to make an appearance this morning I would like the first year from the chapter 13 trustee as to THE status of the case Steve to miss the too much as of a trustee or 22 of the 10 that are here one is confirmation and the other is the trustees request for dismissal with the bar a bar on filing some as harris's case just for had a context of where we are filed November 4th the 2024th the 3:41 meeting was scheduled for December 11th of 2024 but there was no appearance at that hearing I know miss Harris did file a request for continuance which is also set for today but at that point in time on December 11th no chapter 13 plan had been filed as a December 14th the trust you received a copy of the of a chapter 13 plan but it is not the approved northern district of Georgia plan so that's not an effective plan confirmation today is the first scheduled confirmation hearing of an medicines in not having the meaning of creditors the trustee did not file substitute significant substantive objections in this case due to not having been able to conduct that meeting but the objections that we did file there's been no payments made in this case to the trustee The plan as already mentioned is the wrong form plan it looks like there's not been a statement of financial affairs more form 22 to C that's been filed up now it's about objections requesting that we also request a copy of the 23 tax returns reviewing what has been filed in this case you're honor just eveng the test money I'm a pretty funny one I noticed in addition to the plan issue that there's previously mentioned in prior hearings that she's here in Georgia and we're potentially moving here to Georgia but she's utilized to Arizona I'm not sure at this point whether there's an appropriate or not i do not believe that Arizona allows non residents to utilize exemptions So II think that's the question the voluntary petition only reflects it looks like one prior bankruptcy case but this case is the ninth final bankruptcy case additionally the better schedules reflect negative negative negative negative negative negative $1306 schedule J after after the on expenses are monthly expenses which doesn't show that a feasible plan could even be proposed with monthly set payments and the trust is based on the filing history which I'll review the trusty is requesting that this case be dismissed we have asked for a bar on refiling based on the final history which begins back in 2016 the first case is 16 - 0888 this was filed August 3rd of 2016 it was dismissed in December on December 5th of 2016 that was a chapter 13th plan in Arizona it was dismissed for failure to fund the plan the next case was 16 1 4 3 4 0 that was found December 21st of 2016 it was dismissed on January 8th of 2018 again filed an Arizona as a chapter 13 and it was dismissed of your honor for other reasons Based on the docket in Arizona the next case number 3 was filed as 18 - 03520 that was filed April 5th and 2018 and

dismissed on November 7th of 2019 again a chapter 13 case filed in Arizona the document reflects that it was dismissed for failure to fund the plan the next case number 4 was 1808772 that was filed July 24th of 2018 who was dismissed August 3rd of 2018 again that was actually chapter 7 case in Arizona that was filed during the And the C of the previously mentioned check 13 case so it was dismissed due to that being a second pinning violin the fifth case was 19 0 6 0 1 that was a chapter 13 case on Arizona filed May 29th of 2019 it was dismissed July 13th of 2020 it was dismissed based on the docket for other reasons there was also an adversary proceeding that was filed with that case which is 20 - 0067 after the dismissal of the underlying bankruptcy case the adversary proceeding was dismissed or terminated shortly thereafter in August 2020 Next bankruptcy case was bankruptcy case number 20 - 10107 that was filed September 3rd of 2020 dismissed on December 4th and 2020 again a chapter 13 filed in Arizona it was dismissed or failure to fund the plan according to the docket seventh case is bankruptcy case 21 - 03388 filed May 3rd I 2021 dismissed August 16th of 21 again a chapter 13 case filed in Arizona docket on that case reflects that it was dismissed for failure to Public planning the case filed the first case filed here in Georgia was cased number 24 - 58144 it was found August 5th of 2024 it was dismissed for a failure to pay the filing fee on August 22nd of 2024 and then the instant case which is 2461733 was filed as I mentioned on November 4th 2024th and is the instant case based on this lengthy history of filings combined with all of the violence and the number of hearings that are before the court you're honored it does not appear that this is a visible chapter 13 case The debtor is appearing and is prosecuting a case but it doesn't appear to be one that is feasible as a chapter 13 the trust of you I have no position regarding the substance of any claims that she may have but at this point I don't think that this is to pursue them I don't think the underlying chapter 13 case is it's feasible based on the budget and and the other deficiencies within the planning schedules it is not a profitable posture today and I've not received any evidence either via through the violence in this case or any of the profers made it previous hearings that would You need to believe that this is a feasible case and so on that basis based on the outstanding objections and the finally history in this case test with the bar and filing for a 180 days as to chapter 13 I am aware that Mr. Harris's motion has requested maybe asking for a longer period of time the trustee does not have any opposition to that but just our our request relief wasn't a 180 days thank you Good morning yes we did at last stop and you're gonna be here right now the continued and asked Mr. Bean yeah I would like the numerous bank received file in stopping the movement for me it's with the air of the saying that she can live in the house and if she wants to house That is not and it's not a liberal I have the pictures to show that there is not this you can't believe it so the house is not good enough I'll get changed I'll get it I'll be happy and uh cancel because again it was in it was a fraudgment and so what would I what I want to do here on my knees I want to be a bit of the house I don't too anything want to do with the house and I want to name off of G mortgage documents via numbers to off the mortgage and I want to move out with my liwe've been doing this since 2050 A house payment that payment has not been made to p a 2 20 50 we're talking what's we're talking almost 10 years and so I have been I have been handcuffed for 10 years holding his house which I want nothing to do with this material as PHH moves forward we don't want to back with doing the foreclosure this has been her pattern throughout and that is why I would like to move forward 1 day we'll meet with the bar We quit the bar we're filing again because yet I want this house come I want to go and then pictures showed at this map loop and that's all I have we thought I'll tomorrow prefer to climb up with a mechanical melon but I couldn't hear a ballet he had reached the circumcircle on climb the false yesterday I'll be reaching out as $168700.89 Have we found an objection to the plan that has planned the sleeper arlet's see where it occurs the chocolate interests you the case is not feasible and there's amend that budget asked Chris to come app for eighteen hundredrn upgrade dollars just are sturdy long-term discipline you've come and then I've gotten that nothin come before you're $43 instead I was proclaiming paying you on the plan $443 is not sufficient to carry the enriches I've told my client what's in the texting month's law will plan to turn That it would be able to do that and maintain or not to expense it as included presidential mortgage payments I don't have any information for the court and whether precipitation works favorites have been made today only 2 have come ma'am was petitions figures for our client oh yeah that's seeking dismissal of the case and we're not what I we're not waking up far every filing but it's instead of spelling the court to parole on the trustees motion and Mr. Harris's motion Mr. Derek McKinney confirmer or not

whether any magnificent remains for 2015 you can have the payment history attached to the record of the claim the last time the funds were received was actually I wish satisfied the payment for December 1st 2015 so there've been these 2 couple of days here There alone is probably due for the February 1st 2016 trailer oh are at least a plan to hold outstanding motorcycles that's a horrified note correct your owner's a Deluxe payment but before that was May 2018 and the note before that was 2050 it was once every 3 years usual very much alright miss Harris I'll hear from you good morning you're on her yeah I am I'm hearing everything and I Was a prepared to that you have to speak on the emotions that I had provided to you but as far as this goes I am saying that I my case should not be dismissed or and I dismiss but also I do going to say I kind of agree with with the trustees she did say towards I mean miss Anna Naya is said towards the end I'm here because I am trying to protect the asset and that also Maybe this may not be the proper venue I think that's what she said but for me I had no choice but to protect the property because there is a and I'm going to stand on it a valid court order in Arizona I'm just stating that Mr. Harris didn't no longer be involved and this other order that he brought to Georgia and I wouldn't have been in Georgia you know because of the house I'm here in Georgia you know trying to get the house prepared but also since he brought the quiet title action in the State of Georgia I just felt that it was proper I didn't even want to file a chapter 13 it seems like I was forced to because of what PHH did do I say they Re of the word I'm using I guess is renewed on my loan modification and I also want to say that is Mr. Darker bit the rocket I'm sorry if I pronounced it incorrectly but he took notice of says veretic payments each and every time I was in a long modification I made those payments and then PH would make the trial payments and NPH which have to come back and say well Mr. Harris was called in once again and said no we're not doing this and then then this foreclosure madness would start over again and I'm very you know it's very embarrassing I mean I don't like violence at chapter 13 Yes but not one of my cases was said I did anything in bad faith and I know I haven't I've been just been trying to save the property and you know it was you know and Mr. Harris himself he you know he's a reason why I'm here today I mean he's not paid 1 thing and I didn't say how can I how would I want the house to go into I've the been fourth trying to stop it and I wouldn't want that I've been trying to stop it and thought I that there was not going to be anymore chapter 13th violence especially when I got that order from the Arizona courts in May of 22 with the help of PH Stating you know from their letters this is how we can do this and they they told me specifically in the letters in which was written to the to me and then I proceeded to give it to the judge in Arizona and it stated in their letters that Hey an order for you you know Mr. Harris to be removed you have to get current on the hill alone and you know you make the 3 payments and I'll also get current on the loan which I did and that was in May of 2022 well October 2022 and we have to execute a quick claim D to Remove him from the title and then they sent me the paperwork to assume the loan but also in that intro they had said they have letters to me stating that oh you're the successor and interest to the property as well and I really I mean I kept saying it too but I didn't really know what it meant but I'm found out a little bit about what that meant for me but anyway I followed through with with what PHH had directed me to do and from the letters they sent me and so I've done it I did that and then the judgeing Arizona even state that we know that Mr. Harris has interfered in and even the transcripts the court transcripts that I try to provide for you estates in there that Mr. Harris claims that he's never paid and um and the judge himself said Wolf Well it'll mess up your credit and her credit too why would you want to do that it doesn't any make sense and it really doesn't make any sense to me either so II have been trying to do the right thing and I am waiting for me maybe the house is under right now it needs repairs because there was a windstorm a thunderstorm actually but I've been doing a little bit by a little bit that I that I can do but how to stay in with with with the topic here is that no I didn't want to come back here but I thought I could reason with PA date and let them know that You know I was I was abiding by what they had told me to do an end also the the courts in Arizona now live the judge there didn't then give him the authority to go to Georgia and file the quiet title action and the Arizona judge said I could sign in all documents and I just did what the judge told me to do and then he went and they had a hearing in March of 2023 and I also had a drip I mean I did have an attorney at that point but she had left before that hearing and the hearing that where Mr. Harris took that order of March at 20:23 and I just want to stand on this and that and say that the order did not say that my my loan modification was invalid or anything of that that nature for me that May 2nd 2022 orders stated that he should not interfere and he

continues to interfere and if it weren't for Mr. Harris now I wouldn't be here because PHH did not start this foreclosure proceeding until after he went to Georgia and filed the quiet title action before that they We're doing nothing but working with me and so you know moving forward I do understand what it looks like but it was clearly I felt like what's the word to rest I mean I had to do what I had to do and I did that and if you can go back when the attorney and I said that time my first bankruptcy what happened back then within that second bankruptcy which I was going to talk to you about that lasted for almost 2 years and if that January Ninth trial had not gone gone a rain it shouldn't have because I had filed bankruptcy December 21st 2016 and I know I'm kind of mixing everything here together hope you can stay with me I wouldn't be here today if the trial would have been recalitored like it should have been and also all of this madness wouldn't you know I've lost totally everything there would have been no way that I would have lost anything but anyway right now the last thing I wanna say is well is that down you know I know what it it looks like and I did get the I did file emotion I did do what it was that the Miss attorney and I said that I how did not file the other documents for the chapter 13 I did submit those and I did respond to PHHS motion to dismiss that I it down schedule J because they were talking about the regular tunes at that point were a 150000 so I had to recount but also I have been looking for attorneys with the list that was provided by the trustee and been going through them and most authorities the ones that I've gotten in contact with they said well we like to start from the beginning and So therefore you would have to have your pace dismissed or some things that I can't can't do that so I'm sitting here taking notes for myself and I the well I know that I could hire a limited scope attorney on the divorce side I didn't know about the bankruptcy side but to help me with that because I believe that the case yes it wouldn't be my as they maybe feasible because of the high ridges but and also being I will say disabled I know that dumb What I'd have to do ISIS try to go back to work full-time which I could which I've been looking into and talking with my docto Russian what night the only way that I could pay those ridges and then plus the mortgage itself I would have to go back into the teaching profession was a contract teacjerk full-time but I still believe that I have a submission with those reaches because my at the very least I just want to say to my long notification that I entered into if anything I would have been 24 months behind and I have shown where the Before the where what the amount was before the actual loan modification I say my loan modification took place the ridges before looks like a 105 payments missed whatever Bright is it is a big big difference from being 24 months behind I complete to the cf. UB just last week of regarding the things that have been happening with PHA again and that's also about the successor and interest to the property and about how cause I had a inarticle at the end of last year about having people right in like myself that have been harmed by we're mortgage companies by not dumb what was the exact word of that they want to pine the cf. Eb regulations when a person divorces or due to a death of the successor in interest but I understand how everything looks but I know I never did anything in bad faithis is pathetics I will make sure that the run default of normal I'm extraordinary to the extension you want to argue on any of them that we have this opportunity thank you sir is there anything further you want to add so what I was just saying was so I'll shit I'll argue those was an hour when I bought already OK alright OK I'm learning there's a bill here but the motion the emergency motion and to avoid a benicio that's the one I'd like to be heard on and so I was kind of giving you a guests a little background anyway and that's I did and I just wanna say is that and this is from my own Milton everything here that I did file the young but my chapter 13 I said that was my best or I was ended for a long time I filed it on December 21st and the automatic stay went into effect immediately okay but then on January 5th of 2017 the superior court they denied my motion to continue the trial which you know when I go when I look at the case law and everything that I have been looking at is I know that was in violation and I think that because I didn't have an attorney I wasn't given that same um I guess respect or just for just for the judge at the point to say no we're not going to I'm not gonna issue I'll stay OK and then on January 9th the superior court proceeded with a trial and then on January 19th or 18th that's when the judge from the bankruptcy court and all of her bankruptcy proceedings and all of her bankruptcy orders have all aluminum too during that time frame That she let that stay was lifted on January 19th or January 18th she kept saying that on every one of her motions I have had time to go back and review review that and not once did she save that the state was lifted on January 9th to have a trial and also you know that in the case of swords whatever that any action during the stay is invalid from the outset I mean so even though my case may have been

temporarily dismissed before for because of filing fees Still goes back and it's built it was still on December 21st 2016 all the way until may of 2000 February may of 2018 and and even so I mean so that's that's my argument there and that you know it's a number of cases that that reflect on online and so I just say that if it weren't for that stay being violated I wouldn't be here today okay maybe I would have have another I mean a new trial the trial should have never been because I think about it if the judge bankruptcy judge says OK the state is lifted January 18th For them to proceed but not with dividing subsiso especially the homes is what so it just kept as I was reviewing the case again for myself I think that the judge judges or my judge shouldn't you say Hey the state was in effect as of October as of December 2021st two thousandand 17 therefore that if there wasn't trial that trial was voided out okay and we should have a new trial and so I know that the judges can do that themselves it it's shouldn't have to be up to myself and also So my attorney then when I did have a backup so it turned me at that point he did put in a ejection and he said Hey this she was hair shouldn't it not even be here this was back in this was up in September of 2017 when I was some in my bankruptcy and I hired him and he said you're right you're the uh shouldn't even be here that when the violation when it's a violation of the automatic stay and they want to hit with everything it should be void he kept saying the word void ebony I didn't know what it meant but clearly at first and then I had a higher day off But divorce attorney and he saw it too and he even shared it with my first judge chavota which was the family court attorney he shared with her and it was obvious to me now that I reflect about it now that there were issues with that by the it seems like the bankruptcy judge hep just alluding to her or her how order was that his January 19th and then it seems like she put it on to the The divorce judge to cancel out her own order but she she didn't so in the end of it all it just seems like where it's a word that I saw here SU AI don't know how to pronounce it as she writes Monte at SPONTE that you know it just seems like somebody had a duty to do it and I think it comes back to the bankruptcy court because you guys are have the authority But to do the right thing to do the right thing and it should have been a they should have been void in another and then all of the selfish stuff that has happened would have never happened and then you're on your whole argument rest on the fact that the trial and took place on January 9th volleyball I am valid at the automatic speed and your bankruptcy case which was case number 16 that's 43841434 Of the day of that trial on January 9th 2017 your bankruptcy case had been dismissed as of that night so there was no automatic stay in my ex as of the time of that trial the stain was reimposed to subsequent to that because you found a motion another motion to have your case reinstated but it wasn't reinstated but it wasn't reinstated until after the trial and so all your arguments about that trial being in biology and automatic study Simply aren't supported by the factual record before the Arizona court and at the end of the end the automatic stay was in place as of December 21st 2016 and therefore the case should have been stayed as though the time you found your bankruptcy in advance of the trial and then so there wasn't no automatic study in place as at the time the case I understand that but also The court heard the trial because there's no automatic stay doesn't mean that it should be for a there's no automatic stay stopping the trial for going forward at that point time ohh cool even when it states that you know that the II would say to that with Mr. Harris he filed his chapter 13 it was automatically recounted I thought that's what it would be for me as well because as as an as a gift the record show was clearly bad as of the day to vet trial January 9th 2017 The case was dismissed and there was no automatic stay so any argument you make that through the automatic stay in place while January 9th 2017 have no factual basis or no legal basis and therefore the relief you're seeking to have everything that's happened since then declared void appetition has no merit I'm gonna ask them and we'll ask one more thing you're under if you don't mind just asking because they would not have wouldn't the judge herself would have said the same thing The judge it is to the extension want to declare actions taken in violation and automatic stay from an Arizona bankruptcy case the appropriate form to seek such relief as the Earth and the micropsy court not this court but even if you had gone back to the Arizona bankruptcy got the record in that record shows that there was no automatic study at first right but you're for that reason you're motion to avoid having issue a while access taking advantage of the automatic stay in for restitution of stopple equipment relief a procedural bias It's going to be there's no simply no legal basis for your motion my mom makes your honor because I think the ones that we were wouldn't well I was addressing those others the reasonable accommodation for sewing to the Ada I don't wish to speak on that And the to about the predators media well yes I am but I was

wondering if I could do that when I when I ask for it we're Ohio lioh you know like under privacy and confidentiality under federal law if I could Ask for that to have this motion heard and a under I don't know under seal or under privacy matters asking for the reasonable accommodation I'll make you argue that motion according to me today but I will address it to them before I conclude to next year I was wondering what you were talking about I also have an emergency motion on YouTube Of course previously hurt your motion to re impose this day and for the reason stated on the record of the last hearing or previous hearings we're supposed to stay because how do you fail to meet your heart twist applies that there was Cos 4 a position to stay on this case O mentioned that point I guess the reason I did the that motion is because I wasn't set up on the electronic notice notification was not that I wasn't there too to really substantiate the reason why shouldn't have been removed and I will also wanted to find out if that meant just for PAJ or all of my creditors that's what I was trying to clarify I think the court might clear in this ruling last time when it gave you an opportunity to be hard on your motion to reimpose the stay that time and it was a stay as to all creditors I mean the stay expired and there was no stay point running back up the history this case is you followed a motion to extend a stay or emotional development I forget how you like them but you've found it it's very beginning the case you're and you didn't show up with that here and the court because you didn't show up with that You then followed a motion to reimpose today arguing is that you didn't receive notice of that hero and that you should have the stay reimposed and the court after hearing arguments for you and hearing all the faces upon which you were saying that they should be reimposed the court denied that much because you failed to satisfy the burden of proof necessary to have the state reimposed it's terms expire 30 days after you've filed the case The court refused to reimpose the stay in and subsequent to the court's denial of your motion to reimpose the state you found in another motion torean post is day I think essentially are you exactly arguments you made previously that's the motion that's current before me is your second motion to be opposed to stay and I haven't heard any basis I haven't seen any basis in your second motion and promotion to re impose a stay that would provide grounds for OK I guess I'm just gonna come back to the same thing as that I was not actually made aware of it but Probably I know this went to the address you provided in your home and even though the motion was denied for the initial ocean was denied for one approximation that court heard you at the next hearing it's so too Ram you think you're on so for the basis to reimpose the stay it's just because of this is that you know PHI believe still violated their agreement with me and I would not be before you before that's court if If I didn't have to be I'd never throw away I wanted to be in foreclosure and I shouldn't be in foreclosure but do not go back to an order from your litigation cand you scout of the middle of that litigation order that was arguably favorable to you in connection with your modification attempts with BAJ but what you ignore in your arguments are the subsequent organization from the Arizona corps which made clear that you didn't have the authority to do To what you were doing in connection with that modification program and so though I think your arguments completely ignore the subsequent history from your time and state court which made clear that the court disagreed with that you had the authority to do what you what are attempting to do I did try to show this court too is I guess both of those orders I mean it seems like one contradicted the other and I did just what they ordered asked me to do I didn't do anything more other than what I was ordered to do and I just know that March 23rd 23 order did not I have Mr. Good Mr. Harris the authority to go to Georgia and file a quiet title watching and I still do I still have litigation going on in Arizona courthat is where I'm at with that but I still say I still stand on that order to understand what you're saying you're I'm not disputing what you're also found a motion by the dinner to continue the meeting of creditors in your case By chapter 13 trustees office in the US trusting office doesn't involve itself in scheduling 341 meetings so that motion will be denied that OK I understand now I just fitted sent that to hurt but uh oh thank you sir that's the way that is probably what I was arguing about in my argument was about the Not receiving I wasn't signed up for the electronic portion to to get it quickly soh basically there as you were saying pretty much the same any other issue miss Harrison as he wished to be hurt all before the court rolls on that menu button the chapter 13 trustees motion dismissed some Mr. Harris's motion to dismiss no no you're on are other than that I am not just saying acting in bad faith I'm just trying to do what I need to do to try to save The home and prayer club was that the court taken to consideration all orders from the Amazon order and both Arizona orders if you can look at it and making sure that dumb you know that dumb I've not done anything in in bad faith

I'm just nothing else built it took not even guilty but trying to keep my house that's the only thing I have is nothing else I do have Sing further you wish to be her mom but I just I want to correct for the record I noticed that the I had mentioned that there was a negative budget however I did receive that I was looking at an old budget she had a minute Mr. Darker Mitchell's Crawford was correct I just wanted to correct that for your honor it is not sufficient to pay the amount of careers that are scheduled but aside from that your owner my previous proffer stands in the trustees so request dismissal at the heart Thank you Mr. Harris anything further than that thank you Mr. Harris Mr. Durham had anything further today this case has a long history before it's ever got to this court as presented on the record that was a phone is made in front of the Arizona bankruptcy court maintain prior cases or Replay 7 prior cases before the Arizona bankruptcy court only have 2 cases before this court which is quite a lengthy history of Harris Smith miss Ms. Smith Harris being in bankruptcy court but she wasn't alone in bankruptcy court she was also in state court Arizona on divorce issues and link the litigation relative to issues not arising out of that force the issue that supports currently considering is the chapter 13 trustees motioned to dismiss the case with the borrowers refiling as well as Mr. Harris's motion just missed the case with Laura refiled The case is right for dismissal based on they stopped and the records in the porch were viewed with the record of this case the is case clearly not in a confirmable postrip the plan proposed is not on the form plan just a Victoria but also that the plan proposed treatment doesn't address appropriately the creditor claims in this case the corn ordinary of any proposed plan based on income numbers show budget filed in this case Make clear that any plan proposed would not be heedful that there would be no basis are income numbers to confirm a feasible plan in this case to repay the substantial original claim that ph holds I've heard Ms. Smith Harris's arguments with respect to the fact that she disputes the original amount but much of her dispute goes back to the unsuccessful attempt to modify the law which is addressed It's in the Arizona divorce litigation as well as addressed state court litigation as I recall pending 1M uh what that county can hear I Believe I think there's from the court's Perspective elements CLEAR that despite given that Only sporadic payments maybe 2 payments in the last 10 Years 2 were still payments in the last 10 Years have been made on the loan that there is yeah given the letters current income numbers Bro which lasted a period of time but was also dismissed by the Arizona bankers There's a case number 19 dial 06601 was dismissed for later in my clan payment release number 21 that a 03388 was dismissed for failure to my plan payments and in the first case bought in this court 24 - 58144 was dismissed for failure to pay the filing fee but not much happened at all in that case which takes us to the third to the present case where no plan payments have been made the case has not been prosecuted and The case is not right for confirmation given the long history of the litigation in the bankruptcy court is clear that moral refile is a program appeared before the court probably prosecuting this case or the prior case file in this court and that's a failure failed any of the barricades filed in Arizona and therefore the court finds that at barrel refiling a chapter 13 case for a period of 1 year is appropriate and it will enter more to that effect all the other motions wrong and I don't have no legal basis for which the court can grant relief motion by the dinner to avoid abandoning issues taken about the Stockholm echoed Uber leaf and procedural bias which appears at Doctor number 26 will be denied for the reasons previously stated that there was no stay in place at the time she argues well the January 9th 2017 trial her bankruptcy case had been dismissed at the time of the trial no automatic stakes in place she's not entitled to any relief when I'm finding it or I should take a nap for that later boy Devon issue She refiled that motion at I've docked over 49 and the cool of that motion not for the same reasonshe found a motion by the dinner for reasonable accommodations percent of the 88 and I want to address that proportion a little bit it's not clear to the court that miss miss Harris Smith has asked That she expressed that she doesn't want to be her publicly to whatever disability she may have state she asked for a reasonable combination other than their disabilities act but importantly the Americans with disabilities act as not applied to the federal Judiciary when I saw you in red Duffy CV 15 4 7 3 8 7 9 at no it's a district of Montana But it which says that by definition the 88 does not apply to federal government it's just special that it cannot allow the dead or accountable to appear on travel via video the court does obviously take have concerns to the extent any party that appears before hasn't a disability but the thing that the court primarily focus on is whether a party has a communication disability a billing to read or an ability to hear and I've not heard any Disability relative to that that would include and based on everything she's

fine she clearly has no issue communicating with court on appropriate attempt at the beginning of writing or verbally and therefore the core plans know the visual or hearing impairment for which the court could provide accommodations and so for that reason the words I'm going to deny that the dinner's motion for reasonable combinations themselves with a Ada She also filed a motion to reimpose this today for all the creditors and clarify the scope of the Stanley Ford I think I've previously addressed that indicating that dentist's day came on for hearing because the court said it other kind of motions have to be horrible in the first 30 days of the case miss Eric's Ms. Smith Harris notice about that initial motion and therefore followed a motion to reimpose the stay the court heard argument from her at a previous hearing And I've found that hearing that Mrs. Smith errors provided no terminate for reimbursement automatic stay in this case the court heard additional argument from her I heard no basis upon which the court could reimpose my study and therefore that book should be denied that motion appeared in Doctor North 53 any of the creditors which appears in Doctor number 54 that book shall be denied and They based on procedural errors lack notice and assessment for relief and again the court addressed that the fact that miss Harris Smith did not kindly receive according to her notice of the hearing was not a procedural error to the mailing address she provided I on the docket for scheduling of hearings that the address used a lack of notice the court provided Ms. Smith Harris Through the whole period we had no poor opportunities to make a case for a while I was in this case and I was damming those hearings Smith Harris has never provided a factual or legal basis on which the court could re impose the state in this case and for that reason that motion which appears a document number 59 will be did not as well so for all those reasons in court's going to dismiss the case Your honor just didn't light up all of that I just want to make sure it's clear is what the court papering kind of an omnibus order or the Gordon of the Gordon warehouse a lot of disorder consist of its ruler so that means when you said the omnibus that everything that's going to be out there so we're gonna just verbally I mean put it in writing where it is playing that I can see everything in OK uh dismissal the case with the borrower refile Already

EXHIBIT 16

Anita Smith Harris
6782964004
Jakeharris2850@gmail.com

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| ANITA SMITH HARRIS,<br><br>DEBTOR, | Case No.: 24-61733 JC CHPT13<br><br><br>EMERGENCY MOTION TO REOPEN AND REINSTATE BANKRUPTCY CASE BASED ON NEWLY DISCOVERED EVIDENCE AND FRAUD ON THE COURT |

## INTRODUCTION

Your Honor, I submit this motion for your review. This case involves allegations of fraud upon the Bankruptcy Court, newly discovered evidence, and an ongoing foreclosure that may cause harm if not promptly addressed. Due to the complexity of this situation, all necessary facts and legal arguments have been detailed to ensure a fair consideration of the matter. I request the Court's careful review of the evidence presented.

**REQUEST FOR EMERGENCY HEARING PURSUANT TO BLR 9006-2**

Comes now the Debtor, Anita Smith Harris, and pursuant to BLR 9006-2, respectfully requests that this Court schedule an emergency hearing on an expedited basis to address the urgent issues presented in this motion.

EMERGENCY MOTION TO REOPEN AND REINSTATE BANKRUPTCY CASE BASED ON NEWLY DISCOVERED EVIDENCE AND FRAUD ON THE COURT - 1

The Debtor faces immediate and irreparable harm if this matter is not heard urgently, as PHH Mortgage is proceeding with a foreclosure sale scheduled for March 4, 2025.

The Debtor has provided clear evidence that the foreclosure is based on a legally void Quiet Title Judgment and that PHH Mortgage obtained prior rulings through fraud upon the Bankruptcy Court.

The urgency of this matter warrants an expedited hearing because any delay will result in the wrongful loss of the Debtor's home, an action that cannot be undone once completed.

Under BLR 9006-2, the Debtor requests that the Court shorten the notice period and schedule this matter for an emergency hearing before the scheduled foreclosure date of March 4, 2025.

The Debtor is prepared to provide testimony and evidence to support this request and is available for a hearing at the Court's earliest convenience.

This Court's February 18, 2025, Order denying the Motion to Reinstate and Motion to Stay Pending Appeal was based on fraudulent misrepresentations made by PHH Mortgage and Perry Harris.

WHEREFORE, the Debtor respectfully requests that the Court:

(a) Schedule an emergency hearing on this matter as soon as possible before March 4, 2025.

(b) Temporarily enjoin PHH Mortgage and Perry Harris from proceeding with the foreclosure pending the outcome of this hearing; and

(c) Grant such other and further relief as this Court deems just and proper.

EMERGENCY MOTION TO REOPEN AND REINSTATE BANKRUPTCY CASE BASED ON NEWLY DISCOVERED EVIDENCE AND FRAUD ON THE COURT - 2

**SECTION 1: THE QUIET TITLE JUDGMENT IS VOID DUE TO THE UNDOMESTICATED ARIZONA ORDER, AND THE MARCH 4, 2025 FORECLOSURE IS VOID AB INITIO**

Under Georgia law (O.C.G.A. § 9-12-130 et seq.), a foreign judgment, like the March 24, 2023, Arizona Order, must be domesticated before being enforced in Georgia.

Steps for domestication:

- File an authenticated copy of the foreign judgment with the appropriate Georgia superior court.
- Notify all interested parties, allowing them to contest the judgment.
- The Georgia court must review and approve the domestication for it to have legal effect.

The Arizona Order was never domesticated because:

- No authenticated copy was filed in a Georgia superior court.
- The Debtor was not notified, thus could not contest it.
- No Georgia court approved or recognized the Arizona Order, making it unenforceable in Georgia.

As the Arizona Order was not domesticated, the Gwinnett County Quiet Title Judgment that relied on it is void under O.C.G.A. § 9-11-60(d)(1). Consequently, any foreclosure based on this judgment, including by PHH Mortgage, is void ab initio.

EMERGENCY MOTION TO REOPEN AND REINSTATE BANKRUPTCY CASE BASED ON NEWLY DISCOVERED EVIDENCE AND FRAUD ON THE COURT - 3

## SECTION 2: THE QUIET TITLE ACTION SHOULD HAVE BEEN DISMISSED BACK IN JULY 2023 – COURTS IGNORED THE DEBTOR'S VALID MOTIONS AND APPEAL

The Debtor filed several motions and an appeal in 2023, arguing that the Quiet Title Judgment was void, but the courts did not respond. The following filings should have dismissed the Quiet Title Action immediately, yet they were ignored:

A. Motion to Dismiss the Quiet Title Action (July 2023)

Filed due to improper venue as the case was filed in Gwinnett County instead of Cobb County, where the property is located. PHH Mortgage, named as a defendant, failed to object, allowing the case to proceed in the wrong county.

B. Appeal of the Quiet Title Judgment

The appellate court did not address a key issue:

The Quiet Title Judgment was based on an undomesticated Arizona Order, which is considered void ab initio under Georgia law.

The Court had several opportunities to address this matter, but no action was taken, allowing PHH Mortgage and the ex-husband to continue their actions.

## Section 3: Fraud Begins – The Attorney Jim Fletcher Filed a Fraudulent Quiet Title Action

The matter begins with Jim Fletcher, the attorney of record, who received the March 23, 2023, Arizona Order but did not domesticate it as required under Georgia law (O.C.G.A. § 9-12-130 et seq.). Instead of adhering to the legal requirement to domesticate the Arizona Order, Mr. Fletcher proceeded to file a Quiet Title Action based on this unrecognized order.

EMERGENCY MOTION TO REOPEN AND REINSTATE BANKRUPTCY CASE BASED ON NEWLY DISCOVERED EVIDENCE AND FRAUD ON THE COURT - 4

Since the Arizona Order was never domesticated, it held no legal effect in Georgia and could not serve as the basis for the Quiet Title Action. Despite being aware that the Arizona Order lacked legal standing in Georgia, Mr. Fletcher nonetheless initiated the Quiet Title Action in June 2023. This action was inherently flawed, as it depended on a court order that was not legally valid in Georgia.

As an experienced attorney, Mr. Fletcher was certainly aware that a foreign judgment must be domesticated before it can be utilized in a Georgia court. Nevertheless, he intentionally bypassed this requirement, resulting in the Court issuing a Quiet Title Judgment that should not have been granted. Both the Debtor and PHH Mortgage were named as defendants in the Quiet Title Action. However, PHH Mortgage did not contest the case, leaving the Debtor to defend the matter alone.

## A. PHH Mortgage Did Not Object to the Quiet Title Action

As a co-defendant, PHH Mortgage had the opportunity to contest the case but chose not to do so.

PHH Mortgage did not submit any documentation to clarify that the Quiet Title Action was based on an undomesticated and invalid foreign order.

The Debtor was required to address the case independently, without PHH Mortgage raising any objections.

PHH Mortgage had the right to challenge the venue but did not. If acting in good faith, PHH should have moved to dismiss or transfer the case to Cobb County. Instead, its silence allowed the case to proceed in

EMERGENCY MOTION TO REOPEN AND REINSTATE BANKRUPTCY CASE BASED ON NEWLY DISCOVERED EVIDENCE AND FRAUD ON THE COURT - 5

Gwinnett County, suggesting collusion with the ex-spouse to advance the fraudulent case.

## B. **PHH Mortgage Answered the Petition but Did Not Object to Venue or Defend the Loan Modification**

On July 10, 2023, PHH Mortgage submitted its response to the Quiet Title Petition in Gwinnett County Superior Court. Instead of addressing the Debtor's Loan Modification or contesting the improper venue, PHH Mortgage:

- Did not confirm or deny key facts regarding the Loan Modification.
- Did not dispute the use of the undomesticated Arizona Order.
- Did not object to the case being filed in an incorrect county.

By failing to raise objections, PHH Mortgage permitted the case to proceed, despite knowing that the Quiet Title Judgment was based on a void order.

## C. **PHH Mortgage Attempted Foreclosure Multiple Times While the Debtor Was Appealing the Fraudulent Quiet Title Judgment**

From January to November 2024, PHH Mortgage repeatedly tried to foreclose on the Debtor, who was appealing a Quiet Title Judgment. The Debtor had already challenged the judgment in the Georgia Court of Appeals, arguing it was based on an undomesticated foreign order.

Despite being a co-defendant in the case under appeal, PHH Mortgage pursued foreclosure. The Debtor filed complaints with the CFPB and raised objections, but PHH persisted. By August 2024, unable to fend off these actions, the Debtor filed for Chapter 13 bankruptcy for temporary

EMERGENCY MOTION TO REOPEN AND REINSTATE BANKRUPTCY CASE BASED ON NEWLY DISCOVERED EVIDENCE AND FRAUD ON THE COURT - 6

relief, despite concerns that the $168,000 debt would be too high to fund a plan.

From August to November 2024, the Debtor sought legal options but ultimately filed for Chapter 13 protection in Judge Cavender's court. At that time, her appeal was still pending, and PHH Mortgage was still a defendant. Despite this, PHH Mortgage continued foreclosure efforts, ignoring the ongoing challenge in the Georgia Court of Appeals.

## PHH Mortgage's Collusion with  Perry Harris, and his Attorney & Violation of the Debtor's Privacy Rights

Newly discovered evidence indicates that PHH Mortgage communicated with the Debtor's ex-husband and his attorney while excluding the Debtor from communications regarding her mortgage. These actions by PHH Mortgage affected the Debtor's rights and allowed a third party to be involved in the Debtor's financial matters without legal authority. This situation raises concerns about potential fraud upon the court, possible violations of consumer protection laws, and the Debtor's privacy.

## 1. PHH Mortgage Secretly Communicated with the Ex-Husband's Attorney Instead of the Debtor

On September 13, 2023, PHH Mortgage changed the official mailing address on the mortgage account to the ex-husband's attorney's office in Georgia . As a result, all critical loan-related notices, including those regarding the reversal of the Loan Modification, were sent to the ex-husband's attorney instead of the Debtor. This action prevented the Debtor from receiving essential financial documents and violated federal mortgage

EMERGENCY MOTION TO REOPEN AND REINSTATE BANKRUPTCY CASE BASED ON NEWLY DISCOVERED EVIDENCE AND FRAUD ON THE COURT - 7

servicing laws by disclosing private financial information to unauthorized third parties.

### 2. **PHH Mortgage Canceled the Debtor's Loan Modification Without Notifying Her**

PHH Mortgage canceled the Loan Modification on September 6, 2023, without notifying the Debtor . Instead, PHH worked only with Perry Harris and his attorney. The Debtor discovered the correspondence in December 2024 when PHH responded to her CFPB complaint and provided the letters (Exhibit 19).

### 3. **PHH Mortgage, Perry Harris and his Attorney Used the Reversed Loan Modification to Justify Foreclosure**

PHH Mortgage secretly reversed the Loan Modification, allowing the ex-husband's attorney to pursue a Quiet Title Action, which nullified the Debtor's legal rights. They then used this fraudulent ruling to justify foreclosure. As PHH Mortgage hid the reversal from the Debtor, she had no chance to contest these actions before foreclosure started.

### 4. **PHH Mortgage's Conduct Violated the Debtor's Privacy Rights**

PHH Mortgage disclosed confidential financial information to a third party (the ex-husband and his attorney) without obtaining the Debtor's consent.

Federal mortgage servicing laws prohibit lenders from discussing a borrower's loan with unauthorized third parties unless explicit consent is provided by the borrower.

EMERGENCY MOTION TO REOPEN AND REINSTATE BANKRUPTCY CASE BASED ON NEWLY DISCOVERED EVIDENCE AND FRAUD ON THE COURT - 8

The conduct of PHH Mortgage not only facilitated fraudulent activity but also compromised the Debtor's safety by allowing her ex-husband access to financial information to which he had no legal right.

### 5. The Debtor Requests Immediate Sanctions and Damages Against PHH Mortgage and Perry Harris

The Court should sanction PHH Mortgage for fraud and privacy violations. The Debtor seeks compensatory damages for distress and financial harm due to PHH Mortgage's deceptive practices. Additionally, the Court should order PHH Mortgage to disclose all communications with the ex-husband and his attorney, revealing the extent of collusion. These actions show intentional deception by PHH Mortgage and the ex-husband's attorney, and the Debtor seeks full relief to address these fraudulent actions.

### SECTION 4: FRAUDULENT ACTIONS UPON THE COURT – PERJURY AND MISREPRESENTATIONS IN BANKRUPTCY COURT

Under 18 U.S.C. § 152, making false statements in a bankruptcy case is perjury and fraud upon the court. On January 14, 2025, false statements were made in Bankruptcy Court, leading to the wrongful dismissal of the Debtor's case.

### A. Perry Harris Perjured Himself by Claiming He Was "Handcuffed to the Loan for Years"

Perry Harris testified that he had been "handcuffed" to the mortgage debt for years, suggesting a financial burden. However, the March 23, 2024, the Arizona Order explicitly held him harmless from the debt. Despite this claim, he reinstated a loan with $168,000 in arrears. The

EMERGENCY MOTION TO REOPEN AND REINSTATE BANKRUPTCY CASE BASED ON NEWLY DISCOVERED EVIDENCE AND FRAUD ON THE COURT - 9

Bankruptcy Court considered this statement, which influenced the dismissal of the Debtor's case. Perry Harris also claimed that the Debtor "fraudulently signed his name."

Perry Harris falsely claimed the Debtor forged his name on the Loan Modification. However, the May 2, 2022, Arizona Order gave the Debtor full authority to sign for him. In June 2022, the Debtor confirmed with Harris via email before signing, but received no response. Based on the court order, the Debtor proceeded. If the signature was fraudulent, why did Harris file a Quiet Title Action to void the Loan Modification and reinstate the $168,000 debt instead?

C. **PHH Mortgage provided False information About the Debtor's Payment History & Ability to Fund a Chapter 13 Plan**

PHH Mortgage incorrectly represented in court that the Debtor "only made 2 or 3 payments over the years." This statement was based on the reinstated $168,000 loan, not on the Loan Modification, thus constituting a misrepresentation. PHH Mortgage was aware that they had provided the Debtor with a permanent loan modification. The claimed $168,000 was not legitimate arrears but rather the balance from the previous loan they had reinstated. This action appears to have been a deliberate attempt to mislead the court into dismissing the Debtor's bankruptcy case.

**SECTION 5: WHY PHH MORTGAGE AND PERRY HARRIS ET AL, DID THIS – THE PREDATORY LENDING COVER-UP(NEWLY DISCOVERED EVIDENCE)**

EMERGENCY MOTION TO REOPEN AND REINSTATE BANKRUPTCY CASE BASED ON NEWLY DISCOVERED EVIDENCE AND FRAUD ON THE COURT - 10

- PHH Mortgage likely opposed the Debtor because both the Loan Modification and original mortgage were predatory loans that needed to be eliminated.

- Perry Harris likely had leverage over PHH Mortgage, possibly threatening to expose their predatory loans unless they helped him. He might have known that PHH Mortgage might not hold the note.

- If the foreclosure went through, Perry Harris and possibly others would benefit from it.

## . Both loans had serious legal issues:

The Loan Modification included a hidden balloon payment, violating predatory lending laws. The original mortgage also had predatory terms like "ARM's Family Home Rider" and "Second Home Rider," indicating unlawful lending practices. An investigation could lead to severe penalties for PHH Mortgage. To avoid this, PHH Mortgage aligned with the ex-husband to erase both loans through Quiet Title Action.

A. **How PHH Mortgage Used the Fraudulent Quiet Title Judgment to Hide the Predatory Loans**

The ex-husband and PHH Mortgage devised a strategy to use the Arizona Order to nullify the Loan Modification and the Quit Claim Deed. The Arizona Order was undomesticated and misinterpreted, as it only stated that the ex-husband was held harmless from the debt, not that the Loan Modification was invalid.

EMERGENCY MOTION TO REOPEN AND REINSTATE BANKRUPTCY CASE BASED ON NEWLY DISCOVERED EVIDENCE AND FRAUD ON THE COURT - 11

The Gwinnett County judge incorrectly ruled that the Loan Modification and Quit Claim Deed were invalid, based on the assertion that the ex-husband had never consented to his name being signed. This ruling effectively dismissed the Loan Modification, thereby relieving PHH Mortgage of concerns regarding the exposure of the predatory lending loan.

With the Loan Modification removed, PHH Mortgage and the ex-husband reverted to the original mortgage, which had $168,000 in arrears. They anticipated that this loan would also proceed to foreclosure, ultimately facilitating the disposal of the property.

## SECTION 6: LAWS, RULES, AND VIOLATIONS PHH MORTGAGE AND THE EX-HUSBAND BROKE

A. Elements of Fraud Under Georgia Law (O.C.G.A. § 23-2-52)

Under Georgia law, fraud requires five elements:

***False Representation of a Material Fact*** – PHH Mortgage and the ex-husband claimed that the Loan Modification was invalid and that the old mortgage terms still applied.

***Knowledge That the Representation Was False*** (Scienter) – They were aware that a Loan Modification permanently replaces prior mortgage terms yet reinstated a $168,000 in the arrear's loan.

***Intent to Deceive*** – PHH used this judgment to influence the courts into allowing foreclosure.

***Reliance by the Victim (Debtor)*** – The Debtor had to contest the foreclosure for nearly two years.

EMERGENCY MOTION TO REOPEN AND REINSTATE BANKRUPTCY CASE BASED ON NEWLY DISCOVERED EVIDENCE AND FRAUD ON THE COURT - 12

   ***Injury Resulting from the Fraud*** – The actions taken led the Debtor into bankruptcy, impacted her credit, and placed her home at risk.

B. ***Violation of Georgia Law: Quiet Title Judgment Based on an Undomesticated Foreign Order (O.C.G.A. § 9-12-130 et seq.)***

   The Quiet Title Judgment is void because it relied on an undomesticated March 24, 2023 Arizona Order. Under Georgia law, such an order has no legal effect and cannot be enforced. Therefore, any foreclosure based on this judgment is also Void Ab Inito

   McDonald v  McDonald 101 U.S. 158 (1879)-courts cannot enforce an undomesticated foreign judgment.

   Resendiz v. U.S. Bank (2021) Lenders cannot rely on invalid judgments to void borrower rights.

C. **Violation of Georgia Contract Law: Illegal Reinstatement of a Dead Loan**

   Ocwen Loan Servicing, LLC v, Smith, 343.Ga App. 512 (2017)– This lender cannot reinstat an ol loan after a valid Loan Modification is executed.

   PHH violated this ruling by reinstating the prior loan.

   Wells Fargo Bank, N.A.v,Gordon, 292 Ga,474 (2013)-A lender must follow the terms of a LM and cannot later attempt to enforce previous mortgage agreements–

   PHH reinstated a $168,000 debt that had already been replaced by the Loan Modification.

EMERGENCY MOTION TO REOPEN AND REINSTATE BANKRUPTCY CASE BASED ON NEWLY DISCOVERED EVIDENCE AND FRAUD ON THE COURT - 13

Georgia Mortgage Rules – Loan Modifications are treated akin to an assumption.

Under Georgia law, mortgages are freely assignable and assumable without lender consent.

(Andrews v. Holloway, 140 Ga. App. 622, 623 (1976)) – A Loan Modification is legally binding and cannot be canceled arbitrarily.

PHH violated these rules by erasing the Loan Modification and reinstating the old mortgage.

McCray v Bank of America (2021)- A lender that fails to object to fraud is equally liable

PHH has engaged in it themselves openly. They knew that the Arizona judgment was not properely domesticated and that moving forward with proceedings would be void, but they didn't do anything, they went along to see how far they could get.

D. **Violation of Federal Law: CFPB Mortgage Servicing Rules (12 C.F.R. § 1024.38)**

Under CFPB Regulation X (12 C.F.R. § 1024.38), a mortgage servicer must honor the terms of a Loan Modification once executed.

PHH canceled the Loan Modification and initiated foreclosure proceedings.

Regulation X (12 C.F.R. § 1024.31) – Successor in Interest Rights

A servicer must recognize a confirmed successor in interest, such as a person awarded a home through a divorce decree.

PHH did not accept the Debtor's Loan Modification.

EMERGENCY MOTION TO REOPEN AND REINSTATE BANKRUPTCY CASE BASED ON NEWLY DISCOVERED EVIDENCE AND FRAUD ON THE COURT - 14

PHH Mortgage did not comply with federal servicing laws by not assisting the Debtor and disregarding the Loan Modification.

## E. **Fraud Upon the Court in Bankruptcy Proceedings (18 U.S.C. § 152 – Bankruptcy Fraud)**

Federal Rule of Bankruptcy Procedure 9011 forbids false representations in court filings.

PHH Mortgage and the ex-husband misled the Bankruptcy Court about the Quiet Title Judgment's validity.

Bankruptcy Fraud (18 U.S.C. § 152) bars fraudulent claims and misrepresentation in bankruptcy cases.

PHH Mortgage falsely claimed the Debtor owed $168,000 in arrears to get her case dismissed.

## F. **Creditors' Misconduct – Violations of Bankruptcy Law**

Violation of the Automatic Stay (11 U.S.C. § 362(a)) – PHH Mortgage proceeded with foreclosure actions despite bankruptcy protections in place.

Unfair and Deceptive Acts (15 U.S.C. § 45) – Allegations suggest PHH's foreclosure methods may be considered deceptive business practices under federal law.

Real Estate Settlement Procedures Act (RESPA) – 12 C.F.R. § 1024.35

Servicers are required to respond to error notices and handle Loan Modifications correctly.

EMERGENCY MOTION TO REOPEN AND REINSTATE BANKRUPTCY CASE BASED ON NEWLY DISCOVERED EVIDENCE AND FRAUD ON THE COURT - 15

There are claims that PHH Mortgage did not fulfill its legal obligations under RESPA and may have breached mortgage servicing regulations.

## SECTION 7: SANCTIONS AGAINST PHH MORTGAGE AND PERRY HARRIS FOR FRAUD UPON THE COURT

Under 11 U.S.C. § 105(a), the Court can sanction for bad-faith litigation and fraud. PHH Mortgage and the ex-husband intentionally submitted false information, manipulated proceedings, and colluded to erase a valid Loan Modification. Their actions merit severe sanctions and penalties.

### A. Sanctions Against PHH Mortgage for Fraud and Misrepresentation

PHH Mortgage should be sanctioned for the following:

Using a void Quiet Title Judgment to foreclose without domesticating the Arizona Order in Georgia.

Misrepresenting to the Bankruptcy Court that the Loan Modification was invalid and claiming $168,000 in arrears.

Staying silent in the Quiet Title Action to allow a fraudulent judgment against the Debtor.

Non-compliance with federal mortgage servicing laws by canceling a Loan Modification and reinstating a high-interest loan.

Proceeding with foreclosure actions while litigation was ongoing, during the Debtor's appeal of the Quiet Title Judgment.

### B. Sanctions Against Perry Harris for Bad Faith Litigation

Perry Harris should be sanctioned for the following:

EMERGENCY MOTION TO REOPEN AND REINSTATE BANKRUPTCY CASE BASED ON NEWLY DISCOVERED EVIDENCE AND FRAUD ON THE COURT - 16

Filing a Quiet Title Action when Perry Harris and Attorney Fletcher knew that the Arizona order that they brought to the State of Georgia is considered to be a foreign document/judgment/order was not judicially approved to move forward with the Quiet Title Action, not only in Gwinnett County, but in any county in the State of Georgia. Therefore, everything that has been done since the filing of the Quiet Title Action in June 2023, is declared VOID ON ITS FACE! Therefore, any actions being brought against the Debtor is to cease immediately. More importantly, the wrongful foreclosure set for **March 4th 2025,** is also VOID on its face.

Perry Harris still went on to provide fraudulent information to the Georgia Court that led to the invalidation of the Debtor's Loan Modification and Quit Claim Deed.

Perry Harris sat in the Bankruptcy Court on January 14th 2025 told that court about being "handcuffed to the loan," although he had been released from the debt obligation on March 23, 2023.

Asserting that the Debtor fraudulently signed his name, despite having an Arizona court order allowing her to do so on May 2nd 2022.

Collaborating with PHH Mortgage to nullify the Loan Modification and restore the original loan, knowing it could lead to foreclosure.

C. **Requested Sanctions**

The Debtor seeks the following sanctions against PHH Mortgage and Perry Harris:

- ***Monetary Sanctions*** – Impose financial penalties for abusing the judicial process and causing financial harm to the Debtor.

EMERGENCY MOTION TO REOPEN AND REINSTATE BANKRUPTCY CASE BASED ON NEWLY DISCOVERED EVIDENCE AND FRAUD ON THE COURT - 17

- ***Attorneys' Fees and Costs*** – Award reasonable attorneys' fees and legal costs due to their fraudulent actions.
- ***Referral for Investigation –*** Refer PHH Mortgage and Perry Harris to the CFPB, Georgia Bar Association, and federal mortgage fraud enforcement agencies for investigation.

1. ***Restoration of the Loan Modification –*** The Court should issue an order confirming that the Quiet Title Judgment was void from inception and that the Loan Modification remains legally valid.
2. ***Punitive Damages*** – The Court should impose punitive damages against PHH Mortgage for engaging in unfair and deceptive business practices.

## SECTION 8: IMMEDIATE NEED FOR EMERGENCY RELIEF

The Debtor is facing a wrongful foreclosure on March 4, 2025, based on a void Quiet Title Judgment and an invalid mortgage loan. PHH Mortgage is proceeding with the foreclosure despite knowing their legal basis is void.

A. The foreclosure must be stopped immediately to prevent irreparable harm.

PHH Mortgage lacks the legal authority to foreclose, as the Quiet Title Judgment was based on an undomesticated Arizona Order.

If the foreclosure proceeds, the Debtor will face:

- Loss of her home due to fraudulent court rulings.
- Financial ruin, including credit damage, loss of equity, and possible homelessness.

EMERGENCY MOTION TO REOPEN AND REINSTATE BANKRUPTCY CASE BASED ON NEWLY DISCOVERED EVIDENCE AND FRAUD ON THE COURT - 18

- Inability to recover the property if the foreclosure is later deemed unlawful.

## B. The Court Has Authority to Grant an Emergency Stay and Halt Foreclosure

Under 11 U.S.C. § 105(a), this Court has the authority to issue an immediate stay to address potential misuse of the legal system. The Court is requested to issue an Order pausing all foreclosure activity until a hearing can be conducted regarding the actions of PHH Mortgage and the ex-husband.

An emergency hearing is needed before the March 4, 2025 foreclosure date.

## C. PHH Mortgage's Conduct Warrants Urgent Judicial Intervention

PHH Mortgage is currently in violation of federal and state mortgage servicing laws by proceeding with foreclosure on a Loan Modification that should not have been nullified.

PHH Mortgage is relying on an erroneous court ruling to proceed with the foreclosure of the Debtor's home while litigation remains unresolved.

PHH Mortgage's refusal to acknowledge the Debtor's rights as a legal successor to the mortgage contravenes CFPB mortgage servicing regulations.

For these reasons, the Debtor respectfully requests that the Court issue an emergency stay, schedule an immediate hearing, and prevent PHH Mortgage from foreclosing on March 4, 2025.

EMERGENCY MOTION TO REOPEN AND REINSTATE BANKRUPTCY CASE BASED ON NEWLY DISCOVERED EVIDENCE AND FRAUD ON THE COURT - 19

## SECTION 9: RELIEF REQUESTED

WHEREFORE, the Debtor respectfully requests that this Honorable Court grant the following relief:

## A. IMMEDIATELY STOP THE MARCH 4, 2025 FORECLOSURE

The Debtor asks the Court to immediately stop PHH Mortgage from foreclosing on her home. The foreclosure is based on an invalid Quiet Title Judgment not compliant with Georgia law. PHH Mortgage lacks legal authority to foreclose, and proceeding would cause irreparable harm to the Debtor. The Court should issue an injunction to halt the foreclosure while this motion is reviewed.

## B. Reopen the Bankruptcy Case to Lift the One-Year Bar and Dismiss the Case Entirely

Pursuant to 11 U.S.C. § 350(b), the Debtor requests that the Court reopen her Chapter 13 bankruptcy case for the purpose of lifting the one-year filing bar and dismissing the case entirely.

The dismissal order dated February 18, 2025, was obtained through false statements and misrepresentations made by PHH Mortgage and the ex-husband. The one-year bar against refiling bankruptcy was based on PHH Mortgage's incorrect allegations that the Debtor was abusing the system.

The Debtor should not have been placed in this position—she was compelled to file for bankruptcy due to PHH Mortgage's and Perry Harris's fraudulent foreclosure tactics.

EMERGENCY MOTION TO REOPEN AND REINSTATE BANKRUPTCY CASE BASED ON NEWLY DISCOVERED EVIDENCE AND FRAUD ON THE COURT - 20

**C. Permanently Bar PHH Mortgage and Perry Harris from Taking Further Action Against the Debtor**

The Debtor requests that the Court issue an order preventing PHH Mortgage and the ex-husband from attempting to collect, foreclose, or take legal action against her based on the loan in question.

PHH Mortgage and the ex-husband should be prohibited from using the bankruptcy or foreclosure related to this loan against the Debtor.

The Court should permanently enjoin PHH Mortgage from reporting negative information related to this foreclosure to any credit bureau.

**D. Declare the Quiet Title Judgment Void**

The Gwinnett County Quiet Title Judgment is void ab initio due to an undomesticated Arizona Order. Under O.C.G.A. § 9-11-60(d)(1), the Debtor requests this Court to declare the Quiet Title Judgment void and unenforceable.

**E. Declare PHH Mortgage's Foreclosure Void**

The foreclosure scheduled for March 4, 2025, is based on a Quiet Title Judgment that is considered void under Georgia law.

A void judgment has no legal effect; thus, PHH Mortgage's foreclosure may be deemed unlawful.

The Court is requested to issue an order declaring the foreclosure void and preventing PHH Mortgage from proceeding with foreclosure.

EMERGENCY MOTION TO REOPEN AND REINSTATE BANKRUPTCY CASE BASED ON NEWLY DISCOVERED EVIDENCE AND FRAUD ON THE COURT - 21

## F. Impose Sanctions and Award Damages for Emotional Distress and Intentional Harm

Under 11 U.S.C. § 105(a), the Court should sanction PHH Mortgage and the ex-husband for:

- Fraud upon the Court.
- Filing false statements to secure an unlawful foreclosure.
- Deceptive mortgage servicing practices.

The Debtor seeks:

- Monetary sanctions against PHH Mortgage and the ex-husband.
- Attorneys' fees and legal costs due to their fraud.
- Punitive damages for their intentional misconduct.
- Compensatory damages for emotional distress and financial hardship.

The ex-husband's actions also include:

- Intentional Infliction of Emotional Distress—engaging in fraud to cause harm.
- Tortious Interference with Contractual Relations—disrupting a valid Loan Modification with PHH Mortgage.

PHH Mortgage and the ex-husband should compensate the Debtor for stress, financial loss, and suffering caused.

## G. Expunge All Bankruptcy Records, Including the August 2024 Filing

The Debtor requests the Court expunge all records of this bankruptcy case, including the August 2024 filing. The Court should acknowledge that PHH Mortgage's fraudulent actions led to the Debtor's bankruptcy and issue an order to remove all evidence of these filings from public records.

EMERGENCY MOTION TO REOPEN AND REINSTATE BANKRUPTCY CASE BASED ON NEWLY DISCOVERED EVIDENCE AND FRAUD ON THE COURT - 22

H. **Request for an Immediate Ruling, But Ready for Hearing if Necessary**

As the Quiet Title Judgment is already void under Georgia law (O.C.G.A. § 9-11-60(d)(1)), the Debtor respectfully requests that the Court issue an immediate ruling on this motion without a hearing. PHH Mortgage and the ex-husband have no valid legal argument; there is nothing to dispute.

The Debtor has suffered irreparable harm and cannot afford to wait for a hearing while PHH Mortgage continues its wrongful foreclosure. If the Court finds that an immediate ruling is appropriate, the Debtor requests an order halting the foreclosure and granting all requested relief.

However, if the Court deems a hearing necessary, the Debtor is fully prepared to appear and present her case. Should a hearing be required, the Debtor requests that it be scheduled as soon as possible before the March 4, 2025, foreclosure date.


Respectfully,


/s/Anita Smith Harris

6782964004

Jakeharris2850@gmail.com




EMERGENCY MOTION TO REOPEN AND REINSTATE BANKRUPTCY CASE BASED ON NEWLY DISCOVERED EVIDENCE AND FRAUD ON THE COURT - 23

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY THAT ON FEBRUARY 25TH 2025, I SERVED A TRUE AND CORRECT COPY OF THE [EMERGENCY MOTION TO REOPEN AND REINSTATE BANKRUPTCY CASE BASED ON NEWLY DISCOVERED EVIDENCE AND FRAUD ON THE COURT

1. **Nancy J. Whaley, Standing Chapter 13 Trustee**
   Truist Plaza Garden Offices
   Suite 120
   303 Peachtree Center Avenue, NE
   Atlanta, GA 30303
   Email: info@njwtrustee.com
2. **PHH Mortgage Corporation**
   1 Mortgage Way
   Mount Laurel, NJ 08054
   Phone: (800) 449-8767
3. **Aldridge Pite, LLP-https://aldridgepite.com**

   **Perry Harris**
   perryharris50@gmail.com

**Additionally, I certify that the foregoing document was served electronically through the Court's Electronic Case Filing (ECF) system upon all creditors and parties in interest registered to receive electronic notices in this case.**

Dated: Feb.25th 2025

/s/ ANITA SMITH  HARRIS
6782964004

Jakeharris2850@gmail.com

EMERGENCY MOTION TO REOPEN AND REINSTATE BANKRUPTCY CASE BASED ON NEWLY DISCOVERED EVIDENCE AND FRAUD ON THE COURT - 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

EMERGENCY MOTION TO REOPEN AND REINSTATE BANKRUPTCY
CASE BASED ON NEWLY DISCOVERED EVIDENCE AND FRAUD ON
THE COURT - 25

**IT IS ORDERED as set forth below:**

**Date: February 18, 2025**



_____

**Jeffery W. Cavender**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 24-61733-JWC |
| ANITA E. SMITH HARRIS, | CHAPTER 13 |
| Debtor. | |

### ORDER

Before the Court is the Notice of Appeal to District Court (Doc. No. 84) (the "Notice of Appeal"), which the Court will liberally construe as a motion for stay pending appeal, and the Emergency Motion to Reinstate Bankruptcy Case, Impose Automatic Stay, and Stop Wrongful Foreclosure Based on Fraud and Collusion by PHH Mortgage and Perry Harris (Doc. No. 93) (the "Motion to Reinstate") filed by Debtor Anita E. Smith Harris. The Court dismissed this bankruptcy case and barred

1

Smith Harris from filing another chapter 13 bankruptcy case for 365 days by Order entered January 15, 2025 (Doc. No. 70) (the "Dismissal Order"). Immediately after entry of the Dismissal Order, Smith Harris began filing several motions and supplements requesting reinstatement of the bankruptcy case and reimposition of the automatic stay (Doc. Nos. 71, 72, 73, 76, 78, and 79). The Court considered those various motions and supplements at a hearing held February 3, 2025, and denied them orally at the hearing and by Order entered the same day (Doc. No. 83). Later the same day, Smith Harris filed the Notice of Appeal (Doc. No. 84).

In Smith Harris's Notice of Appeal, she requests that the Court "issue a temporary stay of all creditor actions, including repossessions, foreclosures, and garnishments, pending resolution of this appeal." (Doc. No. 84). Federal Rule of Bankruptcy Procedure 8007(a)(1)(A) provides that "[o]rdinarily, a party must move first in the bankruptcy court for . . . a stay of the bankruptcy court's judgment, order, or decree pending appeal." Smith Harris did not file a separate motion for a stay pending appeal; however, the Court will construe Smith Harris's request in the Notice of Appeal as a motion for a stay pending appeal as "[a] document filed *pro se* is 'to be liberally construed.'" *Kanakaris v. Bank of Am., N.A.*, Case No. 1: 13-cv-03676-CAP-AJB, 2014 WL 12860796, at *6 (N.D. Ga. Apr. 21, 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

The determination of whether to grant a stay pending appeal "lies within the sound discretion of the court." *In re Bogdan*, Case No. 20-67143-PMB, 2023 WL 2962721, at *2 (Bankr. N.D. Ga. Apr. 14, 2023) (Baisier, J.) (quoting *In re Sabine Oil*

& *Gas Corp.*, 551 B.R. 132, 142 (Bankr. S.D.N.Y. 2016)). When deciding whether a stay should be granted, courts analyze four factors: "(1) the likelihood that the movant will prevail on the merits of appeal; (2) whether, absent a stay, the movant will suffer irreparable damage; (3) whether the adverse party will suffer no substantial harm from the issuance of the stay; and (4) whether the public interest will be served, rather than disserved, by issuing the stay." *Id.* (quoting *In re Webb*, 17-10835-WHD, 2017 5125538, at *1 (Bankr. N.D. Ga. Nov. 3, 2017) (Drake, J.)). The party requesting a stay bears the burden of establishing each factor. *In re Sabine Oil & Gas Corp.*, 551 B.R. at 142 (quoting *In re Gen. Motors Corp.*, 409 B.R. 24, 30 (Bankr. S.D.N.Y. 209)) (". . . the burden on the movant seeking the extraordinary relief of a stay is a 'heavy' one."). The first factor, likelihood of success on appeal, "carries the most weight in deciding whether a stay should be granted pending appeal," and the party seeking relief must "show a probable likelihood of success on the merits of the appeal." *In re Bogdan*, 2023 WL 2962721, at *3.

The Court finds that Smith Harris fails to establish a probable likelihood of success on the merits of her appeal. Smith Harris has deployed arguments throughout this bankruptcy case that have been used to varying degrees in eight prior bankruptcy cases and in state courts in both Georgia and Arizona. The Court has heard and considered the arguments from Smith Harris on several occasions and has rejected them each time. The arguments have not prevailed here or in any other court. Thus, the Court finds that Smith Harris has not shown a probable likelihood of success on the merits.

3

The Court acknowledges that consequences may befall Smith Harris if not granted a stay pending appeal, but those consequences are realities that Smith Harris has improperly delayed for years through her multiple bankruptcy filings in two different courts and state court litigation. Despite Smith Harris's contentions to the contrary, the balance of hardships do not weigh in her favor, nor would public interest be served by granting a stay. Therefore, the Court finds that Smith Harris is not entitled to a stay pending appeal and denies her request.

Smith Harris filed the Motion to Reinstate just over a week after filing the Notice of Appeal. Although the Motion to Reinstate does not explicitly reference the Dismissal Order or request that it be vacated, all the relief requested in the Motion to Reinstate would require reinstatement of the bankruptcy case, which necessarily would require the Court to vacate, alter, or amend the Dismissal Order. For that reason, the Court construes the Motion to Reinstate as a motion for relief from judgment or order pursuant to Fed. R. Bankr. P. 9026, which makes Fed. R. Civ. P. 60 applicable in bankruptcy cases. Because Smith Harris appealed the Dismissal Order before filing the Motion to Reinstate, the Court likely does not have jurisdiction to vacate or modify the Dismissal Order.[1] Even if the Court does not have jurisdiction to modify or vacate the Dismissal Order, the Court may either "(1) defer considering the motion; (2) deny the motion; or (3) state that the court would grant the motion if

---

[1] *See Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."); *In re Transtexas Gas Corp.*, 303 F.3d 571, 579 (5th Cir. 2002) ("This rule applies with equal force to bankruptcy cases"); *In re Bialac*, 694 F.2d 625, 627 (9th Cir. 1982) (bankruptcy court may not vacate or modify an order while an appeal is pending); *Bryant v. Smith (In re Bryant)*, 175 B.R. 9, 12 (W.D. Va. 1994) (reconsideration not permitted).

4

the court where the appeal is pending remands for that purpose, or state that the motion raises a substantial issue." Fed. R. Bankr. P. 8008. Upon review and consideration of the Motion to Reinstate, the Court will deny it because it raises no new arguments, facts, or issues that have not been raised already by Smith Harris and rejected by the Court in this bankruptcy case.

Most of the arguments in the Motion to Reinstate relate to an attempted loan modification with PHH Mortgage Corporation in 2022. The Court has considered Smith Harris's arguments regarding the loan modification multiple times now and has rejected them. The loan modification was the subject of multiple final orders entered by courts in Arizona and Georgia that altogether invalidated the loan modification long before Smith Harris filed this bankruptcy case. This Court does not sit as an appellate court to orders and judgments of the Arizona and Georgia courts,[2] but that is precisely what Smith Harris has repeatedly asked this Court to do in her bankruptcy case and again asks this Court to do in the Motion to Reinstate. Smith Harris specifically requests that this Court "set aside" a judgment of the Superior Court of Gwinnett County, Georgia that invalidated the loan modification. The Court

---

[2] The Rooker-Feldman doctrine "bars federal district court" and, by extension, federal bankruptcy courts, "from reviewing state court decisions." *Nicholson v. Shafe*, 558 F.3dd 1266, 1270 (11th Cir. 2009). The doctrine "recognizes that federal district courts do not have jurisdiction to act as appellate courts and precludes them from reviewing final state court decisions." *Paletti v. Yellow Jacket Marina, Inc.*, 385 Fed. Appx. 549, 553 (11th Cir. 2010) (quoting *Green v. Jefferson Cnty. Comm'n*, 563 F.3d 1243, 1249 (11th Cir. 2009)). This doctrine applies even in cases where the state court judgment was wrong: "If the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding. Unless and until so reversed or modified, it would be an effective and conclusive adjudication." *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413, 415 (1923).

will not set aside, invalidate, or ignore the multiple orders of the Arizona and Georgia courts invalidating the loan modification.

Smith Harris also argues that the Court improperly relied on alleged false statements of her ex-spouse, Perry Harris, that he is "handcuffed" to a mortgage when the Arizona state court previously ordered Smith Harris to hold Perry Harris harmless for all debt associated with the mortgage. The argument is not well-taken. The Court dismissed this bankruptcy case because of the conduct of Smith Harris in this bankruptcy case, her previous 8 bankruptcy cases, and the multiple orders of Arizona and Georgia courts that have rejected many of the arguments she continues to repeat in this case, not because of a statement that Perry Harris is "handcuffed" to the mortgage. Further, the Court was aware of the hold harmless language in the Arizona court order at the previous hearings when it concluded that Perry Harris has standing in this bankruptcy case. Although the Court used the word "indemnify" instead of "hold harmless" at the previous hearing, the Court sees no substantive difference between the two phrases for purposes of its previous rulings. Even if Perry Harris is to be held harmless by Smith Harris, that language does not terminate his liability on the mortgage debt—it merely gives him a claim against Smith Harris.

For the foregoing reasons,

**IT IS ORDERED** that the motion for a stay pending appeal in the Notice of Appeal is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion to Reinstate is **DENIED**.

6

**IT IS FURTHER ORDERED** that given the denial of the Motion to Reinstate, the Motion to Shorten Time and Request for an Expedited Hearing (Doc. No. 94) is **DENIED**.

The Clerk is directed to serve a copy of this Order on Debtor, the Chapter 13 Trustee, Perry Harris, and all parties on the mailing matrix.

<div align="center">

**END OF DOCUMENT**

</div>



---

12/20/2024                                      Loan Number: 7110343113

To: SKIPPYSMITH2850@GMAIL.COM
Subject: Documents you requested Research Letter

# Enclosed is a copy of the document you requested

*IF YOU RECEIVE THIS FAX/EMAIL IN ERROR, PLEASE DESTROY/DELETE THE MATERIALS IMMEDIATELY.*

Confidentiality Notice: This E-mail/Facsimilie message and any attachments are intended solely for the use of the addressee hereof and may contain information that is confidential, privileged, and/or exempt from disclosure under applicable law. Delivery of this message to any person other than the intended recipient shall not constitute a waiver of any right, privilege, or exemption. If you are not the intended recipient, please immediately and permanently delete this message from your system without reproducing or disclosing it to any third party.

*3067955093,Customer Service (14007),54 pages,20241203 16:36:48;*

---

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose.
However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally, and we are not attempting to assert you are personally liable for this debt. Your failure to make payments on your account may result in the loss of the above referenced property and may be submitted to a credit reporting agency if credit obligations are not fulfilled.



C/O PHH Mortgage Services
PO Box 24738
West Palm Beach FL 33416

December 3, 2024

**Account Number:** 7110343113
**Property Address:** 404 RIDGETOP DR
ACWORTH GA 30102 3478

PERRY RICHARD HARRIS JR
ANITA E HARRIS
UNIT 50818
11010 S 51 STREET
PHOENIX AZ 85044 2803

**Customer(s):** PERRY RICHARD HARRIS JR
ANITA E HARRIS
**Case Number:** 127331834

Dear Anita Smith-Harris,

Thank you for contacting the Office of the Consumer Ombudsman. This letter is in response to your communication referred to Aldridge Pite Team. We appreciate the information provided and welcome the opportunity to review the concerns raised.

To the extent this was submitted as a "Qualified Written Request" (QWR), as defined by Section 2605(e) of the Real Estate Settlement Procedures Act ("RESPA"), we are responding pursuant to the current RESPA rules regarding requests for information which are located at 12 C.F.R. 1024.36. To the extent that the request is construed as a "Request for Information" as defined by 12 C.F.R. 1024.36, we will not respond to questions requesting the following: (1) duplicative information; (2) confidential, proprietary, or privileged information: (3) Information not directly related to the servicing of the borrower's accounts; and/or (4) the information requested is overbroad and/or unduly burdensome. Any request not responded to is because it is not required to be per the above. Please note that we service accounts in accordance with all applicable federal and state laws.

Based on the correspondence received, we understand you have the below concerns and we have provided our responses in the order raised

1. **Request to postpone the foreclosure sale:** Records indicate you filed for Chapter 13 Bankruptcy under docket number 2024-BK-61733 on November 4, 2024, in the United States Bankruptcy District of Georgia Northern Bankruptcy Court. The foreclosure has been suspended as due to your filing of bankruptcy.

2. **& 3. As the successor in interest, you request account management to exclusively be in your name and PHH restore the loan modification terms approved in November 2022:** Your concerns regarding the successor-in-interest based on divorce was already addressed in our response dated May 18, 2022. I have enclosed a copy of the response for your reference. Our office received CFPB correspondence (case number# 230329-10727867) from Mr. Harris, who provided supporting court documents and requested we cancel the modification agreement. However, our response dated April 10, 2023 (copy enclosed), confirmed that we reviewed the Court Order received from you (Ms. Harris) and it specifically stated that "Husband shall sign any and all documents needed for loan assumption and modification. Should Husband refuse to

NMLS # 2726

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*



C/O PHH Mortgage Services
PO Box 24738
West Palm Beach FL 33416

sign papers, Wife is fully authorized to sign on his behalf. If, at any time, Wife is told that modification and assumption is not possible or that she fails to meet the qualifications or that because of bankruptcy filings the assumption cannot take place for four years, then IT IS FURTHER ORDERED that Wife shall let the Georgia home go immediately into foreclosure."

On November 9, 2022, the account was modified, and the due date of the account was advanced to November 1, 2022, payment. The Modification agreement reflects the fact you signed the agreement on behalf of Mr. Harris. Because the agreement was accepted per the court order, PHH informed Mr. Harris on April 10, 2023, the modification agreement would not be canceled. However, he was advised that we do not show receipt of any payment thereafter. A delinquent account can be referred to foreclosure in accordance with the terms of the original account documents. The supporting document included in the CFPB complaint determined that the court document which Mr. Harris referred to be a court order was not the final order signed by the Judge. Therefore, we did not accept it to cancel the modification.

In June 2023, PHH was notified of the active litigation on the account. Due to the active litigation PHH representatives could only discuss the account with the attorneys. In September of 2023, Mr. Harris filed a complaint through CFPB case number 230905-11941020 requesting the reversal of the modification on the account and the complaint included a court order dated August 30, 2023. Because of the active litigation this complaint was handled by PHH's Managing Counsel and upon a detailed review of the documents submitted by Mr. Harris, they instructed PHH to reverse the modification completed in November of 2022. As a result, effective September 22, 2023, the modification was reversed, and the account due date rolled back to February 1, 2016.

Due to delinquency, the account was referred to foreclosure on January 25, 2024. On February 29, 2024, the foreclosure sale was scheduled for April 2, 2024. You also expressed concerns regarding the modification reversal and our representative advised you that the modification was reversed based on the court order received from Mr. Harris.

Records indicate the foreclosure sale scheduled for April 2, 2024, was postponed, and rescheduled for May 7, 2024. Upon receipt of CFPB complaint 240408-13872436, the foreclosure sale scheduled for May 7, 2024, was postponed, and rescheduled for July 30, 2024, and again it was rescheduled for August 20, 2024. On August 5, 2024, you filed for Chapter 13 Bankruptcy under docket number 2024-BK-58144 in the United States District of Georgia Northern Bankruptcy Court and hence the foreclosure was cancelled. The Bankruptcy was dismissed on August 27, 2024, and due to delinquency, there was a foreclosure sale schedule for September 20, 2024, which was later postponed to November 25, 2024, and the foreclosure sale has been suspended due to filing of Chapter 13 Bankruptcy under docket number 2024-BK-61733 on November 4, 2024. We confirm we did not make an error servicing this account.

We thank you for your patience while we researched this matter. Please accept our sincere apologies for any frustration or inconvenience you may have experienced. We hope this response fully addresses the stated concerns. We have replied to similar concerns the past and we consider this matter closed, as we do not have additional information to provide.

NMLS # 2726

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*



C/O PHH Mortgage Services
PO Box 24738
West Palm Beach FL 33416

Customer Service can be reached toll free at (877) 744 2506 for additional information regarding this mortgage account. We are available Monday through Friday 8:00 am to 9:00 pm and Saturday 8:00 am to 5:00 pm ET. Information about this mortgage account may also be found online at mortgagequestions.com.

Sincerely,



Consumer Account Analyst
Office of the Consumer Ombudsman

CC: Anita Harris Submitted Electronically.

**Oregon Property Owners:** The Oregon Division of Financial Regulation (DFR) oversees residential mortgage loan servicers who are responsible for servicing residential mortgage loans in connection with real property located in Oregon and persons required to have a license to service residential mortgage loans in this state. If you have questions regarding your residential mortgage loan, contact your servicer at (servicer's toll-free phone number and email, if applicable). To file a complaint about unlawful conduct by an Oregon licensee or a person required to have an Oregon license, call DFR at 888-877-4894 or visit dfr.oregon.gov.

**New York Property Owners**: Exclusively for homeowners in New York, you may file complaints about the servicing of your loan with the New York State Department of Financial Services. For further information call the Department's Consumer Assistance Unit at 1.800.342.3736 or visit the Department's website at www.dfs.ny.gov.

**Colorado Property Owners:** PHH Mortgage Corporation maintains an office in Colorado.
Address: 1776 S. Jackson Street, #900
         Denver, Colorado 80210
Telephone: 303.327.8955

NMLS # 2726
*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*



C/O PHH Mortgage Services
PO Box 24738
West Palm Beach FL 33416

April 16, 2024

**Account Number:** 7110343113
**Property Address:** 404 RIDGETOP DR
ACWORTH GA 30102-3478

ANITA HARRIS
11010 S 51ST UNIT 50818
PHOENIX AZ 85044

Sent via email: skippysmith2850@gmail.com

**Customer(s):** PERRY HARRIS JR
ANITA HARRIS
**Case Number:** 119734801
120135216
**Regulatory Case number:** 240328-13766470
240408-13872436

Dear Ms. Harris,

This letter is in response to communication we received in the Office of the Consumer Ombudsman from the Consumer Financial Protection Bureau (CFPB) on your behalf. We appreciate the information provided and welcome the opportunity to review and address the concerns raised.

Based on the correspondence received we understand that you have concerns regarding the modification reversal on the account, and scheduled foreclosure sale. You also claim that PHH did not apply the successor in interest rules when the property was awarded to you under a Divorce Decree.

Please note your concern regarding the successor-in-interest based on divorce was already addressed in our response dated May 18, 2022. I have enclosed a copy of the response for your reference.

Our office received CFPB correspondence (case number# 230329-10727867) from Mr. Harris, who provided supporting court documents and requested to cancel the modification agreement. However, our response dated April 10, 2023 (copy enclosed), confirmed that we reviewed the Court Order received from you (Ms. Harris) and it specifically stated that "Husband shall sign any and all documents needed for loan assumption and modification. Should Husband refuse to sign papers, Wife is fully authorized to sign on his behalf. If, at any time, Wife is told that modification and assumption is not possible or that she fails to meet the qualifications or that because of bankruptcy filings the assumption cannot take place for four years, then IT IS FURTHER ORDERED that Wife shall let the Georgia home go immediately into foreclosure."

On November 9, 2022, the account was modified, and the due date of the account was advanced to November 1,2022 payment. The modification agreement reflects the fact that you signed the agreement on behalf of Mr. Harris. Because the agreement was accepted per the court order, PHH informed Mr. Harris on April 10, 2023, that the modification agreement will not be canceled. However, he was advised that we do not show receipt of any payment thereafter. A delinquent account can be referred to foreclosure in accordance with the terms of the original account documents. The supporting document included in the CFPB complaint determined that the court document which Mr. Harris referred to be a court order was not the final order signed by the Judge. Therefore, we did not accept it to cancel the modification.

www.MortgageQuestions.com

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*



C/O PHH Mortgage Services
PO Box 24738
West Palm Beach FL 33416

Regarding your concern about a forbearance plan, a review indicates that because you reported hardship due to COVID-19, PHH sent the Temporary Hardship Forbearance Plan Agreement on December 5, 2022, to your attention. The account was due for the November 1, 2022, payment as of December 5, 2022. Under the terms of this plan, PHH agreed to suspend the monthly mortgage payment requirements from December 2022 through February 2023, not assess late fees or report this account as delinquent to the credit bureaus. I have enclosed a copy of the Temporary Hardship Forbearance plan agreement. However, PHH also received a request for a modification review, due to this the forbearance plan canceled. I have enclosed a copy of the notice dated December 7, 2022, requesting additional documentation for the modification review. The account was approved for modification trial plan and an offer was mailed to the address of record on March 9, 2023. However, the application was withdrawn by Mr. Harris and therefore, a denial notice was mailed on April 3, 2023. Enclosed are the copies of the offer and denial notices for your refence.

In June 2023, PHH was notified of the active litigation on the account. Due to the active litigation PHH representatives were required to discuss the account with the representing attorney only. Also, the mailing address on the account was changed from 2654 West Horizon Ridge PKWY B5-69 Henderson NV 89052 to the representing attorney's address i.e., c/o James R Fletcher II 328 Alexander St SE STE 10 Marietta GA 30060-2092.

In September of 2023, Mr. Harris filed a complaint through CFPB case number 230905-11941020 requesting the reversal of the modification on the account and the complaint included a court order dated August 30, 2023. Because of the active litigation this complaint was handled by PHH's Managing Counsel and upon a detailed review of the documents submitted by Mr. Harris, they instructed PHH to reverse the modification completed in November of 2022. As a result, effective September 22, 2023, the modification was reversed, and the account due date rolled back to February 1, 2016.

PHH updated the property address as mailing address in December 2023 because the litigation case was closed. As a result, the correspondences were being mailed to the property address since December 2023. On January 11, 2024, PHH's Skip Tracing Department changed the mailing address from 404 Ridgetop Dr Acwortha GA 30102 to 2654 W Horizon Ridge PKWY Apt B569 Henderson, NV 89052-2803 (this was the mailing address we had on the account until June 2023). On January 11, 2024, the PHH representative attempted to verify the mailing address with Mr. Harris over a phone call, but he refused. He requested PHH to remove his name from the account effective 2015. He is unhappy about receiving collection calls from PHH. On January 23, 2024, Mr. Harris provided a copy of the Divorce Decree and requested we remove his name from the account. He was advised that an assumption was not possible due to the status of the account.

The account was referred to foreclosure on January 25, 2024. On February 20, 2024, you were in contact with PHH representative and disputed the non-receipt of correspondence on the account. On February 22, 2024, PHH received details of your mailing address and contact number. On February 29, 2024, the foreclosure sale was scheduled for April 2, 2024. On March 4, 2024, the attorney firm certified that all required foreclosure notices were sent to the accountholders. On March 8, 2024, PHH representative informed you over a phone call about the sale date. You expressed dissatisfaction with the sale date set and stated that the mailing address updated with PHH was inaccurate. The mailing address was then updated as 11010 S 51 Street Unit 50818 Phoenix AZ 85044- 2803.

On March 26, 2024, you requested PHH representative to email the foreclosure documents to skippysmith2850@gmail.com and disputed that PHH refused to share account information with you for past nine months. You also expressed concerns regarding the modification reversal and stated that you would sue PHH. The representative advised you that the modification was reversed based on the court order received from Mr. Harris, who also disputed that his signatures were forged in the modification agreement.

The foreclosure sale scheduled for April 2, 2024, has been postponed and rescheduled for May 7, 2024. We confirm that we did not make an error with this account. Based on the court order you provided the modification agreement was honored and a modification was completed in November 2022. However, based on the court order provided by Mr. Harris, PHH had to reverse the

www.MortgageQuestions.com

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*



C/O PHH Mortgage Services
PO Box 24738
West Palm Beach FL 33416

modification. To avoid foreclosure of the property you may reinstate the account. I have submitted a request for a reinstatement to be mailed to the address of record.

We thank you for your patience while we researched this matter. Please accept our sincere apologies for any frustration or inconvenience you may have experienced. We hope this response fully addresses the stated concerns. However, if you have any additional questions, please submit your questions via email to consumerombudsman@ocwen.com. If you prefer to discuss your questions by phone you may contact our Ombudsman office at (844) 995-3682. However, at this time there is only a voicemail option, but calls will be returned in two business days. You may also choose to provide feedback on our response via the CFPB portal. After we respond to your original correspondence the CFPB will email you and you may log back in and review our response and provide any additional commentary you have within the CFPB's portal.

Customer Service can be reached toll-free at (800) 449-8767 for additional information regarding this mortgage account. We are available Monday through Friday 8:00 am to 9:00 pm and Saturday 8:00 am to 5:00 pm ET. Information about this mortgage account may also be found online at mortgagequestions.com.

Sincerely,

Deepa Salian
Consumer Account Analyst
Office of the Consumer Ombudsman

Enclosures

cc:     CFPB – Submitted Electronically

        PERRY HARRIS JR
        PERRYHARRIS50@GMAIL.COM

**Oregon Property Owners:** The Oregon Division of Financial Regulation (DFR) oversees residential mortgage loan servicers who are responsible for servicing residential mortgage loans in connection with real property located in Oregon and persons required to have a license to service residential mortgage loans in this state. If you have questions regarding your residential mortgage loan, contact your servicer at (servicer's toll-free phone number and email, if applicable). To file a complaint about unlawful conduct by an Oregon licensee or a person required to have an Oregon license, call DFR at 888-877-4894 or visit dfr.oregon.gov.

**New York Property Owners:**  Exclusively for homeowners in New York, you may file complaints about the servicing of your loan with the New York State Department of Financial Services.  For further information call the Department's Consumer Assistance Unit at 1.800.342.3736 or visit the Department's website at www.dfs.ny.gov.

**New York Residents**: If you believe the loss mitigation request has been wrongly denied, you may file a complaint with the New York State Department of Financial Services at 1-800-342-3736 or www.dfs.ny.gov.

**Colorado Property Owners:** PHH Mortgage Corporation maintains an office in Colorado.
Address:        1776 S. Jackson Street, #900
                Denver, Colorado 80210
Telephone:      303.327.8955

www.MortgageQuestions.com

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*



C/O PHH Mortgage Services
PO Box 24738
West Palm Beach FL 33416

Tel  888-820-6474
Fax  856-917-8300

January 23, 2023

**Account Number:** 7110343113
**Property Address:** 404 RIDGETOP DR
ACWORTH GA 30102-3478

PERRY HARRIS JR
2654 WEST HORIZON RIDGE PKWY B5-69
HENDERSON NV 89052-0000

**Customer(s):** PERRY HARRIS JR
ANITA HARRIS
**Case Number:** 87579920

Dear Mr. Harris,

This letter is in response to communication we received in the Office of the Consumer Ombudsman the correspondence you sent to PHH's Research Department. We appreciate the information provided and welcome the opportunity to review and address the concerns raised.

Based on the correspondence received we understand that you want PHH to cancel the modification as you did not sign the modification agreement.

We have reviewed the Court Order and it specifically states that "Husband shall sign any and all documents needed for loan assumption and modification. Should Husband refuse to sign papers, Wife is fully authorized to sign on his behalf. If, at any time, Wife is told that modification and assumption is not possible or that she fails to meet the qualifications or that because of bankruptcy filings the assumption cannot take place for four years, then IT IS FURTHER ORDERED that Wife shall let the Georgia home go immediately into foreclosure."

PHH records indicate that on November 9, 2022, the account was modified, and the due date of the account was advanced to November 1,2022 payment. The modification agreement reflects that Ms. Harris signed the agreement on your behalf. Because the agreement was accepted per the court order, PHH will not cancel the modification agreement. However, we do not show receipt of any payment since November 2022. A delinquent account can be referred to foreclosure in accordance with the terms of the original account documents.

Please note, removing one of the borrowers from the account is a release of liability. Below are the requirements for the release of liability process.

•      The account must have been current for the entire previous 12-month period
•      The account must have a satisfactory payment history of 24 months from the date a default modification was processed, if applicable
•      The property must remain in its original intended purpose (e.g., primary residence, second home, vacation home, or investment property)
•      There should be no other lien on the property, except of the primary mortgage
•      The property title should be clear of any defects or encumbrances
•      Any late charges or outstanding fees should be paid in full prior to the disposition of this request

www.MortgageQuestions.com

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*



C/O PHH Mortgage Services
PO Box 24738
West Palm Beach FL 33416

Tel  888-820-6474
Fax  856-917-8300

- All bankruptcies must be discharged for a period of 24 months
- If the request is due to divorce, we require a property settlement agreement before starting the process
- We require proof that all accounts that appear on the credit report are current
- Account holder(s) requesting to remain on the mortgage will need to qualify based solely on their credit and income

If there is a second mortgage account or Home Equity Line of Credit on the mortgage property, the other person(s) must be removed from that account prior to starting the process with PHH.

As of the date of this correspondence the account is past due for the November 1, 2022, and subsequent payments.

We hope this response fully addresses the stated concerns. However, if you have any additional questions, please submit your questions via email to consumerombudsman@ocwen.com. If you prefer to discuss your questions by phone you may contact our Ombudsman office at (844) 995-3682. However, at this time there is only a voicemail option, but calls will be returned in 24 to 48 hours.

Customer Service can be reached toll-free at (800) 449-8767 for additional information regarding this mortgage account. We are available Monday through Friday 8:00 am to 9:00 pm and Saturday 8:00 am to 5:00 pm ET. Information about this mortgage account may also be found online at mortgagequestions.com.

Sincerely,

Deepa Salian
Consumer Account Analyst
Office of the Consumer Ombudsman

**Oregon Property Owners:** The Oregon Division of Financial Regulation (DFR) oversees residential mortgage loan servicers who are responsible for servicing residential mortgage loans in connection with real property located in Oregon and persons required to have a license to service residential mortgage loans in this state. If you have questions regarding your residential mortgage loan, contact your servicer at (servicer's toll-free phone number and email, if applicable). To file a complaint about unlawful conduct by an Oregon licensee or a person required to have an Oregon license, call DFR at 888-877-4894 or visit dfr.oregon.gov.

**New York Property Owners:**  Exclusively for homeowners in New York, you may file complaints about the servicing of your loan with the New York State Department of Financial Services.  For further information call the Department's Consumer Assistance Unit at 1.800.342.3736 or visit the Department's website at www.dfs.ny.gov.

**New York Residents**: If you believe the loss mitigation request has been wrongly denied, you may file a complaint with the New York State Department of Financial Services at 1-800-342-3736 or www.dfs.ny.gov.

**Colorado Property Owners:** PHH Mortgage Corporation maintains an office in Colorado.
Address:         1776 S. Jackson Street, #900
                 Denver, Colorado 80210
Telephone:       303.327.8955

www.MortgageQuestions.com
*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*



C/O PHH Mortgage Services
1 Mortgage Way
Mt. Laurel, NJ 08054

Tel 888-820-6474
Fax 856-917-8300

May 18, 2022

**Account Number:** 7110343113
**Property Address:** 404 RIDGETOP DR
ACWORTH GA 30102-3478

ANITA HARRIS
UNIT 110 945 N PASADENA
MESA AZ 85201-0000

**Customer(s):** PERRY HARRIS JR
ANITA HARRIS
**Case Number:** 70534406
70581401
**Regulatory Case ID:** 220429-8634147

Dear Ms. Harris,

This letter is in response to communication we received in the Office of the Consumer Ombudsman from the Consumer Financial Protection Bureau on your behalf as well as your voice messages. We appreciate the information provided and welcome the opportunity to review and address the concerns raised.

Based on the correspondence received we understand that you wish to remove Perry Harris, Jr. from the account. You further state PHH should update you as a Successor-in-interest based on the Divorce. We also received your voice messages requesting a callback to discuss this matter.

Our records indicate that we previously addressed your concerns regarding removing Perry Harris from the account through CFPB Case ID: 220419-8554295 on April 28, 2022. We have reviewed the additional documents provided by you and our position on the matter has not changed. However, in an effort to be responsive to your current request, the following information is being provided.

Based on your request I attempted to contact you by phone at (678) 296-4004 on May 5, 2022 and on May 6, 2022. On both occasions I was unable to establish contact with you and therefore left voicemail messages.

Please note, the Successor-In-Interest (SII) rule, found in 12 CFR 1024.32(c) et. Seq. states that upon confirmation a party who is not liable on the account is an SII, a servicer must provide a written notice stating that the individual has been confirmed as an SII. The SII is not liable for the debt unless they assume the obligation. The SII is entitled to receive certain notices, and in order to receive those notices the SII must execute and provide an acknowledgement to the servicer containing certain information. There is no provision in this section that states a servicer must allow removal of an obligated party, or that any individual must be allowed to assume a loan. We are obligated to service the account according to the terms and conditions of the Mortgage and Note. The signature page of the Note document indicates that, you (Anita Harris), are the co-signer and an obligated accountholder on the account. As you are already a borrower PHH is not required to update you as an SII.

Please note, a divorce decree/separation agreement is a court order between the parties involved in the separation. Although you stated the separation agreement ordered possession of the property to you from Mr. Harris, liability of the above-referenced account is not automatically transferred, as we were not a party involved in the court proceedings. In our prior response we

www.MortgageQuestions.com

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*



explained the procedure to assume the loan with modification. However, we have further determined that excluding one of the borrowers from the account would mean a release of liability. Below are the requisites for the release of liability process:

•        The account must have been current for the entire previous 12-month period
•        The account must have a satisfactory payment history of 24 months from the date a default modification was processed, if applicable
•        The property must remain in its original intended purpose (e.g., primary residence, second home, vacation home, or investment property)
•        There should be no other lien on the property, except of the primary mortgage
•        The property title should be clear of any defects or encumbrances
•        Any late charges or outstanding fees should be paid in full prior to the disposition of this request
•        All bankruptcies must be discharged for a period of 24 months
•        If the request is due to divorce, we require a property settlement agreement before starting the process
•        We require proof that all accounts that appear on the credit report are current
•        Account holder(s) requesting to remain on the mortgage will need to qualify based solely on their credit and income

If there is a second mortgage account or Home Equity Line of Credit on the mortgage property, the other person(s) must be removed from that account prior to starting the process with PHH.

As of the date of this correspondence the account is past due for the October 1, 2015, and subsequent payments. Therefore, PHH is unable to comply with your request to release Mr. Harris' liability from the account.

On May 2, 2022, the account has been approved for a mortgage assistance offer. I have enclosed a copy of this offer for your reference. We are here to help! To speak with the assigned Relationship Manager, Manoj Paul who is the designated contact for inquiries and the submission of documents, you can schedule an appointment by visiting mortgagequestions.com and select Schedule calls under the Loan Specialist option or call toll-free at (800) 750-2518 Monday through Friday from 8:00 am to 9:00 pm ET. If immediate assistance is required, another dedicated member of our Home Retention Team or our Customer Care Center will be available to assist you. Depending on the status of the account, specific information may also be available online at mortgagequestions.com.

We thank you for your patience while we researched this matter. We hope this response fully addresses the stated concerns. However, if you have any additional questions, please submit your questions via email to consumerombudsman@ocwen.com. If you prefer to discuss your questions by phone you may contact our Ombudsman office at (844) 995-3682.

Customer Service can be reached toll-free at (800) 449-8767 for additional information regarding this mortgage account. We are available Monday through Friday 8:00 am to 9:00 pm and Saturday 8:00 am to 5:00 pm ET. Please be advised that these hours may have been impacted by COVID-19. Information about this mortgage account may also be found online at mortgagequestions.com.

Sincerely,

Deepa Salian
Consumer Account Analyst
Office of the Consumer Ombudsman

Enclosure

www.MortgageQuestions.com

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*



C/O PHH Mortgage Services
1 Mortgage Way
Mt. Laurel, NJ 08054

Tel  888-820-6474
Fax 856-917-8300

cc:      CFPB – Submitted Electronically

**Oregon Property Owners:** The Oregon Division of Financial Regulation (DFR) oversees residential mortgage loan servicers who are responsible for servicing residential mortgage loans in connection with real property located in Oregon and persons required to have a license to service residential mortgage loans in this state. If you have questions regarding your residential mortgage loan, contact your servicer at (servicer's toll-free phone number and email, if applicable). To file a complaint about unlawful conduct by an Oregon licensee or a person required to have an Oregon license, call DFR at 888-877-4894 or visit dfr.oregon.gov.

**New York Property Owners:** Exclusively for homeowners in New York, you may file complaints about the servicing of your loan with the New York State Department of Financial Services.  For further information call the Department's Consumer Assistance Unit at 1.800.342.3736 or visit the Department's website at www.dfs.ny.gov.

**New York Residents:** If you believe the loss mitigation request has been wrongly denied, you may file a complaint with the New York State Department of Financial Services at 1-800-342-3736 or www.dfs.ny.gov.

**Colorado Property Owners:** PHH Mortgage Corporation maintains an office in Colorado.
Address:        1776 S. Jackson Street, #900
                Denver, Colorado 80210
Telephone:      303.327.8955

www.MortgageQuestions.com
*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*



05/02/2022

<table>
<tr><td>**Respond to this offer no later than:**<br>**06/01/2022**</td></tr>
</table>

PERRY RICHARD HARRIS JR
ANITA E HARRIS
UNIT 110
945 N PASADENA
MESA, AZ 85201

## THE ACCOUNT HAS BEEN APPROVED FOR A MORTGAGE ASSISTANCE OFFER
### Please Read Carefully

Dear PERRY RICHARD HARRIS JR and ANITA E HARRIS,

**Congratulations!** The account is approved to enter into a Trial Period Plan under an PHH Mortgage Services Modification Plan. Please read this letter so that the next steps necessary for completion of the modification are understood completely. In order to be considered for a modification, the proposed trial period payments must be completed.

Below, please find important information about the mortgage assistance offer, with additional details on the following pages. However, time is of the essence to accept this offer. A response must be received by 06/01/2022 in order to start this trial modification. This offer will expire, so we must receive a response by the date listed on this letter.

### Account Information

**Account Number: 7110343113**

**Property Address:**
404 RIDGETOP DR
ACWORTH, GA 30102

We are here to help!

Account Relationship Manager:
Manoj Paul
RMA@mortgagefamily.com
Online:
www.mortgagequestions.com

**What needs to be done:**

- To accept an assistance option, the following must be completed:

    o For convenience we have enclosed a Mortgage Assistance Acceptance Form which needs to be completed and RETURNED as outlined on the form by 06/01/2022.

    o In addition, the First Trial Period Plan payment of $1,466.43 needs to be made by 06/01/2022.

| Trial Period Payment Number | Trial Period Payment | Due Date On or Before |
|---|---|---|
| 1 | $1,466.43 | 06/01/2022 |
| 2 | $1,466.43 | 07/01/2022 |
| 3 | $1,466.43 | 08/01/2022 |

**What needs to be known:**

7110343113          *OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

Page

INTERNET REPRINT

NMLS # 2726



- The account is approved for an PHH Mortgage Services Streamline Modification with monthly payments in the amount of $1,466.43.

- In order to have the account modified permanently, the following requirements must be met:
  - Successful completion of the Trial Period Plan. The Trial Period Plan offer details are enclosed. Please read all materials carefully.
  - Property title must be clear of liens, judgments and other encumbrances.
  - Upon successful completion of the Trial Period Plan, we will send a Permanent Modification Agreement, which will require all parties who appear on the original Note or who appear on the title to sign. It may be necessary to sign the Agreement in the presence of a notary public.
- We've also included details about other options we considered and the account's eligibility for those options. Please see the enclosed sections for more information:
  - **Other Available Options**: Explains the details to transition out of the home through a Short Sale or Deed in Lieu of Foreclosure.
- If it is believed our decision was incorrect, a request for an appeal can be made in writing within 14 days from the date of this letter. Additional details on how to submit an appeal are included with this letter.

**The following additional documents are enclosed for your information:**

- PHH Mortgage Services Streamline Modification Trial Period Plan Notice
- PHH Mortgage Services Streamline Modification Frequently Asked Questions
- Mortgage Program Review
- Opportunity for Appeal

- Other Available Options
- Additional Assistance Available
- Legal Disclosures
- Payment Remittance Information

**Please Note --** If we are contacted and the offer is accepted, but there is subsequent failure to make the first Trial Period Plan payment by the first payment due date, and we do not receive the payment by the last day of the month in which it is due, this offer will be revoked and foreclosure proceedings may continue and a foreclosure sale may occur.

We are here to help! Manoj Paul has been assigned as the account relationship manager and will be the designated representative for resolution, inquiries and submission of documents.

If there are any questions, please call the Relationship Manager Manoj Paul toll-free at 800-750-2518. We are available Monday through Friday 8:00am to 9:00pm ET.

Sincerely,

Loan Servicing

7110343113

*OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an account holder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

NMLS # 2726

REPRESENTATI$N $% PRINTED D$&UMENT



05/02/2022

Account Number: 7110343113

## PHH Mortgage Services Streamline Modification TRIAL PERIOD PLAN NOTICE

As previously explained, we are offering the account an opportunity to enter into a Trial Period Plan. This is the first step toward qualifying for more affordable mortgage payments or more manageable terms. It is important all information is read in its entirety so that the actions needed to be taken to successfully complete the Trial Period Plan to permanently modify the account are fully understood.

**Please be advised, we were unable to achieve a modification option that would reduce the monthly payment; however, we were able to capitalize the delinquent balance and find a modification that is allowed by the investor of the account. If this offer is accepted and the requirements of this Trial Period Plan and the final Modification Agreement are complied with, the account may be modified. If this offer is not accepted, please review the *Other Available Options* section of this Notice for non-retention options.**

**Make Trial Period Payments**

To successfully complete the Trial Period Plan, the Trial Period Plan payments below must be made.

| Trial Period Payment Number | Trial Period Payment | Due Date On or Before |
|---|---|---|
| 1 | $1,466.43 | 06/01/2022 |
| 2 | $1,466.43 | 07/01/2022 |
| 3 | $1,466.43 | 08/01/2022 |

When making the Trial Period Plan payments, the following must be complied with:

o  If the account was previously required to remit payments by certified funds, this requirement extends through the Trial Period Plan. Certified funds are defined as: money orders, cashier's checks, or personal checks certified by a local bank.
o  The amount of the "Trial Period" payment must be sent as provided for under the Trial Period Plan, instead of, not in addition to, the normal monthly mortgage payment.

Trial Period Plan Payments should be sent using one of the approved payment methods detailed on the *Payment Remittance Information* page inserted later in this package.

**Time is of the Essence**

If there is a failure to make the First Trial Period Plan payment by 06/01/2022, and we do not receive the payment by the last day of the month in which it is due, this offer may be revoked and we may refer the account to foreclosure; or if the account has been referred to foreclosure, foreclosure proceedings may continue and a foreclosure sale may occur.

7110343113

*OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

Case 2:25-bk-01794-EPB    Doc 42    Filed 03/31/25    Entered 03/31/25 10:05:35    Desc
Main Document    Page 205 of 248
Page INTERNET REPRINT

NMLS # 2726



If there are questions about the Trial Period Plan or permanent modification requirements, please call the account Relationship Manager, Manoj Paul, toll-free at **800-750-2518.** We are available Monday through Friday 8:00am to 9:00pm ET.

**Additional Trial Period Plan Information:**

- It is important that the *Streamline Modification Frequently Asked Questions* and *Additional Legal Disclosures* information attached is reviewed thoroughly.

- This Trial Period Plan offer is contingent on the accountholder(s) having provided accurate and complete information. We reserve the right to revoke this offer or terminate the plan following acceptance if we learn of information that would make the account ineligible for the Trial Period Plan.

- Once each of the payments above have been successfully made by their due dates, two signed copies of the Modification Agreement have been submitted, and we have signed the Modification Agreement, the mortgage will be permanently modified in accordance with the terms of the Modification Agreement.

- Please be aware that the final modification may include, but is not limited to, mortgage terms such as principal forgiveness, a balloon payment and changes to the interest rate and maturity date. Additional details will be outlined in the final Modification Agreement.

**We must receive each payment, in the month in which it is due. If a payment is missed or there is a failure to fulfill any other terms of the Trial Period Plan, this offer will end and the account will not be modified:**

- If the account is eligible and qualifies for assistance from a state Housing Finance Agency (HFA) using federal Hardest Hit Funds to pay down a portion of the unpaid principal balance of the account (HFA Funds), we must receive such HFA Funds from the HFA prior to modifying the account. If we do not receive such HFA Funds, the account may not be eligible for a modification. However, if the account qualifies for a modification without the HFA funds, we may offer a modification of the account.

- If it is felt the Trial Period Plan payments shown above are not affordable and there is a desire to remain in the home—or if there has been a decision to leave the home—please contact us at 800-449-8767 to discuss alternatives to foreclosure.

- Please note that, except for the monthly account payment amount during the Trial Period Plan, the terms of the existing mortgage documents and all account requirements remain in effect and unchanged during the Trial Period Plan.

**We will not refer the account to foreclosure or proceed to foreclosure sale during the Trial Period Plan, provided there is compliance with the terms of the Trial Period Plan:**

- Any pending foreclosure action or proceeding that has been suspended may be resumed if there is failure to comply with the terms of the plan or the account no longer qualifies for a Permanent Mortgage Modification.

7110343113                                                    *OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

Case 2:25-bk-01794-EPB    Doc 42    Filed 03/31/25    Entered 03/31/25 10:05:35    Desc
Main Document      Page 206 of 248
Page 12 of 28
DO NOT REPRINT

NMLS # 2726



- It is agreed we will hold the Trial Period Plan payments in an account until sufficient funds are in the account to pay the oldest delinquent monthly payment. It is also agreed we will not owe interest on the amounts held in the account. If any money is left in this account at the end of the Trial Period Plan and the account qualifies for a Permanent Mortgage Modification, those funds will be deducted from amounts that would otherwise be added to the modified principal balance.

- Our acceptance and posting of payment during the Trial Period Plan will not be deemed a waiver of the acceleration of the account and related activities, including the right to resume or continue foreclosure actions if there is failure to comply with the terms of the plan, and shall not constitute a cure of mortgage default unless such payments are sufficient to completely cure the default.

**If the monthly payment did not include escrows for taxes and insurance, it may now be required:**

- It is agreed any prior waiver that allowed payment directly for taxes and insurance is revoked. It is agreed we may establish an escrow account and payment of escrows into that account will be required, unless prohibited by applicable law.

**The current mortgage documents remain in effect; however, the Trial Period Plan payment may be made instead of the payment required under the mortgage documents:**

- It is agreed all terms and provisions of the current mortgage documents remain in full force and those terms shall remain in compliance. Nothing in the Trial Period Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations, if any exist, contained in the mortgage documents.

**Explanation of credit reporting requirements:**

- We are required to report factual information to the credit reporting agencies. If your account is past due at the time you enter into the Trial Period Plan, we will continue to report that your account is past due, unless or until your loan is brought current. If, however, you do not successfully complete the Trial Period Plan, accurate reporting will continue, including any adverse reporting.

**Meaning of acceptance of this trial offer:**

- It is agreed the Trial Period Plan is not a modification of the account and the account will not be modified unless or until all of the conditions required for modification are fully met. It is understood and agreed PHH Mortgage Services will not be obligated or bound to modify the account if there is failure to meet any of the requirements under this Trial Period Plan.

- All monthly mortgage payments that remain due must be paid when the executed final modification agreement is returned. If there is a delay in processing, please continue to make the monthly mortgage payment in the amount outlined in this Trial Period Plan until the loan is permanently modified.

- Final approval for a permanent modification may be conditioned upon receipt of clear title.

**Additional documentation may be required:**

- The account may be required to submit additional documentation in order for us to process the modification request. If further documentation is needed, we will send a separate letter requesting the outstanding required documentation.

---

7110343113          *OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an account holder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

Page 13 NET REPRINT

NMLS # 2726



# FREQUENTLY ASKED QUESTIONS

**Q. What else should be known about this offer?**

- If the new Trial Period Plan payments are timely, and the account continues to remain eligible for the permanent modification, **we will not conduct a foreclosure sale.**

- The account will not be charged any fees for this Trial Period Plan or a permanent modification.

- The new monthly payment may include an escrow for property taxes, hazard insurance and other escrowed expenses, unless its inclusion is prohibited by applicable law. If the cost of homeowner's insurance, property tax assessment or other escrowed expenses increases, monthly payments will increase as well.

- **Credit Reporting**: We will continue to report the delinquency status of the account to credit reporting agencies as well as the account's entry into a Trial Period Plan in accordance with the requirements of the Fair Credit Reporting Act and the Consumer Data Industry Association requirements. **CREDIT SCORING COMPANIES GENERALLY CONSIDER THE ENTRY INTO A PLAN WITH REDUCED PAYMENTS AS AN INCREASED CREDIT RISK. AS A RESULT, ENTERING INTO A TRIAL PERIOD PLAN MAY ADVERSELY AFFECT CREDIT SCORES, PARTICULARLY IF THE ACCOUNT IS CURRENT ON THE MORTGAGE OR OTHERWISE HAS A GOOD CREDIT SCORE.** For more information about credit scores, go to ftc.gov/bcp/edu/pubs/consumer/credit/cre24.shtm.

**Q. Why is there a Trial Period Plan?**

- The Trial Period Plan offers immediate payment relief and gives time to make sure the new monthly mortgage payment can be managed. The Trial Period Plan is temporary and the existing mortgage lien remains in effect and unchanged during the Trial Period Plan.

**Q. When will it be known if the account can be modified permanently and how will the modified account balance be determined?**

- If the account continues to remain eligible for the permanent modification, once all Trial Period Plan payments are made on time and a copy of the signed modification agreement is returned to us, we will sign the copy and send it back so a fully executed modification agreement detailing the terms of the modified mortgage can be retained. Any difference between the amount of the Trial Period Plan payments and the regular mortgage payments will be added to the balance of the account, along with any other past due amounts, as permitted by the account documents. While this will increase the total amount owed on the account, it should not significantly change the amount of the modified mortgage payment.

**Q. Will the interest rate and principal and interest payment be fixed after the account is permanently modified?**

- Once the account is modified, the interest rate will be fixed for the life of the mortgage.

---

7110343113

*OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

NMLS # 2726

REPRESENTATI$N $% PRINTED D$&UMENT



Loan Number: 7110343113

## MORTGAGE ASSISTANCE ACCEPTANCE FORM

**REMEMBER TIME IS OF THE ESSENCE. PLEASE DO NOT DELAY!**

Based on the option(s) presented in this notice, you may select the option you would like to accept. Check the desired option below, then sign and return this Mortgage Assistance Acceptance Form.

You may only choose **one** option:

- ☐ **I want to accept the Streamline Modification Trial Period Plan offer.**
- ☐ **I decline the Streamline Modification Trial Period Plan offer. Instead, I want to accept the offer below:**
  - ☐ Conditional Short Sale
  - ☐ Conditional Deed-in-Lieu of Foreclosure

- ☐ **I want to reject all options in this notice.**

_____          _____
Date                                              PERRY RICHARD HARRIS JR


_____          _____
Date                                              ANITA E HARRIS


Sign and Return by Fax, Email or Mail:

| Fax or Email - for *fastest* processing | Or | **Regular Mail** |
|---|---|---|
| Fax: 856-917-2848<br>Email: MOD@mortgagefamily.com | | PHH Mortgage Services<br>Attn: Home Retention Department<br>1661 Worthington Road, Suite 100B<br>West Palm Beach, FL 33409 |

---

7110343113                                                                                          *OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an account holder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

NMLS # 2726

REPRESENTATI$N $% PRINTED D$&UMENT



## <u>MODIFICATION PROGRAM REVIEW</u>

After careful review of the information provided, we have reviewed the loan for available mortgage assistance options as indicated below:

| Program | Determination | Reason for Non-Approval |
|---|---|---|
| Helping Homeowners Modification | Non-Approved | The account is greater than 90 days delinquent. |
| Streamline Modification | Approved | |

We have established evaluation criteria that set an order ranking for evaluation of mortgage assistance options (commonly known as an "eligibility waterfall"). Based upon this ranking system, you have qualified for a Trial Period Plan which necessarily means that we are unable to offer all modification options ranked below it.

NMLS # 2726                                                                OCWN_PLS_SLN_TRL

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

INTERNET REPRINT

REPRESENTATI$N $% PRINTED D$&UMENT



## OPPORTUNITY FOR APPEAL

**What should you do if you disagree with the reason(s) for non-approval and want to appeal?**

If you disagree with the reason(s) for non-approval of any loan modification option, you have the right to appeal. To appeal, you have 14 days from the date of this notice to send a written explanation and supporting documentation to substantiate your findings. Please send a copy of this letter, along with any supporting documents, to:

PHH Mortgage Services
Escalations Department
P.O. Box 5432
Mount Laurel, NJ 08054
Email: EscalatedCases@mortgagefamily.com

No foreclosure sale will be conducted, and you will not lose your home during this 14-day period. However, please note that if you received a notice of a foreclosure sale date of your home, or if notice of a foreclosure sale date of your home was published prior to your submission to us of a completed loan modification application, then such foreclosure sale may not be suspended for this 14-day period if, despite our reasonable attempts to delay the sale, the court with jurisdiction over the foreclosure proceedings, or the bankruptcy court in a bankruptcy case, or the public official charged with carrying out the sale fails or refuses to halt the sale.

If you choose to appeal our decision, the mortgage assistance option(s) offered to you in this notice will remain available pending the outcome of your appeal. If we determine on appeal that you are eligible for a loan modification trial period plan, we will send you an offer for the trial period plan. In that case, you will be given 14 calendar days from the date of the appeal decision to let us know that you intend to accept the trial period plan offer.

If you wait to accept the mortgage assistance option(s) offered to you in this notice until after receiving our appeal decision, your loan will become more delinquent. Any unpaid interest and other unpaid amounts, such as escrows for taxes and insurance, will continue to accrue on your mortgage loan during the appeal. In that event, the payment amounts and due dates of your initial mortgage assistance option(s) may be adjusted. Our appeal decision is final and not subject to further appeals.

---

7110343113

*OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an account holder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

Page 5 of 6 INTERNET REPRINT

NMLS # 2726

REPRESENTATI$N $% PRINTED D$&UMENT



<u>OTHER AVAILABLE OPTIONS</u>

## You are conditionally approved for these Mortgage Assistance Options

Acceptance of any of these options will not allow you to keep your home, but will allow you to avoid foreclosure. These offers are conditional and could be subject to an appraisal or title search. We are not able to guarantee final approval until we receive all the documents required for our final evaluation of your eligibility.

|  | **Short Sale** | **Deed-in-Lieu of Foreclosure (DIL)** |
|---|---|---|
| **Option Details** | Listing and selling your property at market value will release you from your mortgage debt serviced by PHH Mortgage Services on this property, even if the sale price is lower than your mortgage debt. | Transferring ownership of your property by signing over the deed/title to us will release you from your mortgage debt. |
| **Benefits** | ■ Avoid the stress and potential costs of foreclosure.<br>■ Sell the property with less negative impact to your credit than foreclosure or bankruptcy.<br>■ You may be eligible for relocation assistance if you qualify. | ■ A Deed-in-Lieu is a quicker way to get out of the property without the hassle, time and energy associated with listing and selling your house.<br>■ You could walk away with no mortgage debt and less negative impact to your credit than foreclosure or bankruptcy.<br>■ If you qualify, you may be eligible to receive up to $10,000 in relocation assistance. |
| **Additional Documents Required from You**<br><br>**Send by Fax to:**<br>**856-917-2848**<br><br>**Or by email:**<br><br>**Short Sale**<br>**SS@mortgagefamily.com**<br><br>**Deed in Lieu**<br>**DIL@mortgagefamily.com** | **You must send the documents listed below to us by 05/16/2022 :**<br><br>■ Executed Listing Agreement.<br>■ Executed Purchase Contract, including all addendums.<br>■ The buyer's proof of funds or financing pre-approval letter.<br>■ Preliminary Closing Disclosure/Settlement Statement. | In order to complete the Deed-in-Lieu transaction you must send the applicable document listed below:<br><br>• If you are married, please provide one of the documents listed below:<br>  ○ Signed letter stating you and your spouses' complete names, or<br>  ○ Copy of your marriage license<br>• If you are no longer married, please provide the following:<br>  ○ A copy of your divorce decree.<br>• If your spouse is deceased, please provide one of the documents listed below: |

7110343113

*OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an account holder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

NMLS # 2726



| | | |
|---|---|---|
| | | o Copy of the probate court documents,<br>o Death certificate, or<br>o Obituary/newspaper article reporting the death. |
| **Additional Documents/ Information We Require from Third Parties Prior to Final Approval** | Please note that final approval is conditioned upon receipt of the following documents/information from third-party providers:<br>■ Valuation - an independent valuation of the property that verifies that the current estimated market value.<br>■ Closing Costs - verification that closing costs associated with the transaction are reasonable and customary.<br>■ If applicable, approval from the investor or mortgage insurer of your loan to proceed with the transaction. | Please note that final approval is conditioned upon receipt of the following documents/information from third-party providers:<br>■ Valuation - an independent valuation of the property.<br>■ Clear Title - a title search or history demonstrating clear title and in marketable condition.<br>■ If applicable, approval from the investor or mortgage insurer of your loan to proceed with the transaction. |
| **Our Next Steps after Receiving All Required Documents from You.** | After we receive all required documents we will:<br>■ Complete a review of the loan terms, investor requirements, and mortgage insurance requirements, if applicable.<br>■ Work with you to complete an independent valuation review. A valuation agent will contact you or your designated agent for access to the property so that the valuation agent can set up an appointment.<br><br>If an offer is present, and after all documents/information have been received, we will issue a decision within 30 calendar days.<br><br>If we send you a final approval, you will have 14 calendar days from the date of receipt to provide signed written acceptance of the short sale approval.<br><br>Failure to perform all actions required to accept the Short Sale offer will be considered as a rejection. | After we receive all required documents we will:<br>■ Complete a review of the loan terms, investor requirements, and mortgage insurance requirements, if applicable.<br>■ Work with you to complete an independent valuation review. A valuation agent will contact you or your designated agent for access to the property so that the valuation agent can set up an appointment.<br><br>If we send you a final approval, you will have 14 calendar days from the date of receipt to provide signed written acceptance of the offer.<br><br>Once we have received your written acceptance, our vendor will draft the deed document and schedule a notary at a convenient time and place for you to execute the DIL of foreclosure documents. |

9-814-BVP43-0000133-001-13-000-000-000-000

7110343113

OCWN_PLS_SLN_TRL

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an account holder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

INTERNET REPRINT

NMLS # 2726

REPRESENTATI$N $% PRINTED D$&UMENT



## Additional Assistance is Available

If you are experiencing a financial hardship, housing counseling may be a way to help you manage your finances. We urge you to contact HUD approved agencies to obtain assistance in keeping your home. This assistance is available at no charge.

| | | |
|---|---|---|
| HUD Approved Housing Counseling | (800) 569-4287 | www.HUD.gov |
| Homeowner's HOPE Hotline Number | (888) 995-4673 | https://995hope.org/ |
| Fannie Mae Assistance Program | (800) 232-6643 | www.knowyouroptions.com |
| Consumer Financial Protection Bureau (CFPB) | (855) 411-2372 | www.consumerfinance.gov/mortgagehelp/ |
| Freddie Mac Assistance Program | | http://myhome.freddiemac.com/ |

If you would like to submit a qualified written request, a notice of error or a request for information, you must use the following address:

PHH Mortgage Services
PO Box 66002
Lawrenceville, NJ 08648

**Please Note: If the Accountholder was impacted by COVID-19, they may be able to apply for the Homeowner Assistance Fund (HAF) if available in their jurisdiction. Please contact your state housing agency for more information regarding program details.**

7110343113                                                                                   *OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

Page 1 INTERNET REPRINT

NMLS # 2726



### Additional Legal Disclosures

**Notice Regarding Bankruptcy:** Please be advised that if you are part of an active Bankruptcy case or if you have received an Order of Discharge from a Bankruptcy Court, this letter is in no way an attempt to collect either a pre-petition, post-petition or discharged debt. If your bankruptcy case is still active, no action will be taken in willful violation of the Automatic Stay. If you have received an Order of Discharge in a Chapter 7 case, any action taken by us is for the sole purpose of protecting our lien interest in the underlying mortgaged property and is not an attempt to recover any amounts from you personally. Finally, if you are in an active Chapter 11, 12 or 13 bankruptcy case and an Order for Relief from the Automatic Stay has not been issued, you should continue to make payments in accordance with your plan.

**Notice regarding Credit Discrimination:** The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract), because all or part of the applicant's income derives from any public assistance program, or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is Federal Trade Commission, Equal Credit Opportunity, Washington, D.C. 20580.

**Notice regarding Tax Consequences of Mortgage Assistance Options:** Your acceptance of a Loan Modification, Short Sale, or Deed-in-Lieu of Foreclosure may result in federal, state, or local tax consequences to you and/or affect your eligibility for any public assistance benefits. We cannot advise you on these impacts and encourage you to contact a tax professional to discuss any questions you may have.

**Your Rights Under the Fair Credit Reporting Act:**
A consumer report was used in making the modification decision. The consumer reporting agency listed below provided information that in whole or in part influenced the decision. The reporting agency played no part in the decision and is unable to supply specific reasons why your request for a modification was denied. You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency. You also have a right to a free copy of your report from the reporting agency, if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you received is inaccurate or incomplete, you have the right to dispute the matter with the reporting agency. Any questions regarding such information should be directed to the agency listed below.

Any questions regarding such information should be directed to TransUnion.

<div align="center">

TransUnion LLC
Consumer Dispute Center
P.O. Box 2000
Chester, PA 19016
800-916-8800

</div>

The credit score used in your evaluation was 557. We utilized this score as we were unable to pull a score from the credit provider.

7110343113                                                                                                          *OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

Page 1                NMLS # 2726



# PAYMENT REMITTANCE INFORMATION

**PLEASE DON'T FORGET:**
1. All checks should be payable to PHH Mortgage Services.
2. Always include the account number with the payment.

| Overnight Mail |
|---|
| **Money Order, Personal Check, or Certified Check** |
| **Send To**: PHH Mortgage Services<br>1 Mortgage Way SV22<br>Mt Laurel, NJ 08054 |
| **Reference:** PHH Mortgage Account # 7110343113 |

| Regular Mail |
|---|
| **Money Order, Personal Check, or Certified Check** |
| **Send To**: PHH Mortgage Services<br>1 Mortgage Way SV22<br>Mt Laurel, NJ 08054 |
| **Reference:** PHH Mortgage Account # 7110343113 |

| Money Gram |
|---|
| **Receiver Code:** 7440<br>**Payable to:** PHH Mortgage<br>**City:** Mt Laurel<br>**State:** New Jersey<br>**Reference:** PHH Mortgage Account # 7110343113<br>**Agent Locator:** (800) 926-9400 |

| Western Union |
|---|
| **By WUQC: Western Union Quick Collect**<br>**Code City:** PHHUS<br>**State:** NJ<br>**Reference:** PHH Mortgage Account # 7110343113 |

9-814-BVP43-0000133-001-1-000-000-000-000

---

7110343113

*OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

Page

NMLS # 2726

INTERNET REPRINT



C/O PHH Mortgage Services
PO Box 24738
West Palm Beach FL 33416

April 10, 2023

**Account Number:** 7110343113
**Property Address:** 404 RIDGETOP DR
ACWORTH GA 30102-3478

PERRY HARRIS JR
2820 E PALMDALE LN
GILBERT AZ  85298

**Customer(s):** PERRY HARRIS JR
ANITA HARRIS
**Case Number:**
95769977
95776237
**Regulatory Case number:** 230329-10727867

Dear Mr. Harris,

This letter is in response to communication we received in the Office of the Consumer Ombudsman from the Consumer Financial Protection Bureau (CFPB) on your behalf and a voicemail message received on March 29, 2023. We appreciate the information provided and welcome the opportunity to review and address the concerns raised.

Based on the correspondence received we understand that you want PHH to cancel the modification as you did not sign the modification agreement. You provided supporting court document and requested that we use the same to cancel the modification.

Based on your request I attempted to contact you by phone at (678) 296-4569 on March 31, 2023, and April 3, 2023. However, I was unable to establish a contact with you and therefore, left voicemail messages.

In our response dated January 23, 2023 (copy enclosed), we confirmed that we have reviewed the Court Order received from Ms. Harris and it specifically states that "Husband shall sign any and all documents needed for loan assumption and modification. Should Husband refuse to sign papers, Wife is fully authorized to sign on his behalf. If, at any time, Wife is told that modification and assumption is not possible or that she fails to meet the qualifications or that because of bankruptcy filings the assumption cannot take place for four years, then IT IS FURTHER ORDERED that Wife shall let the Georgia home go immediately into foreclosure."

PHH records indicate that on November 9, 2022, the account was modified, and the due date of the account was advanced to November 1,2022 payment. The modification agreement reflects that Ms. Harris signed the agreement on your behalf. Because the agreement was accepted per the court order, PHH will not cancel the modification agreement. However, we do not show receipt of any payment since November 2022. A delinquent account can be referred to foreclosure in accordance with the terms of the original account documents.

We have reviewed the supporting document included to the CFPB complaint and determined that the court document which you are referring to be a court order is not the final order signed by the Judge. Therefore, we cannot accept it to cancel the modification.

We thank you for your patience while we researched this matter. Please accept our sincere apologies for any frustration or inconvenience you may have experienced. We hope this response fully addresses the stated concerns. However, if you have any additional questions, please submit your questions via email to consumerombudsman@ocwen.com. If you prefer to discuss your

www.MortgageQuestions.com
*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*



C/O PHH Mortgage Services
PO Box 24738
West Palm Beach FL 33416

questions by phone you may contact our Ombudsman office at (844) 995-3682. However, at this time there is only a voicemail option, but calls will be returned in two business days. You may also choose to provide feedback of our response via the CFPB portal. After we respond to your original correspondence the CFPB will email you and you may log back in and review our response and provide any additional commentary you have within the CFPB's portal.

Customer Service can be reached toll-free at (800) 449-8767 for additional information regarding this mortgage account. We are available Monday through Friday 8:00 am to 9:00 pm and Saturday 8:00 am to 5:00 pm ET. Information about this mortgage account may also be found online at mortgagequestions.com.


Sincerely,

Deepa Salian
Consumer Account Analyst
Office of the Consumer Ombudsman


Enclosure


cc:        CFPB – Submitted Electronically

**Oregon Property Owners:** The Oregon Division of Financial Regulation (DFR) oversees residential mortgage loan servicers who are responsible for servicing residential mortgage loans in connection with real property located in Oregon and persons required to have a license to service residential mortgage loans in this state. If you have questions regarding your residential mortgage loan, contact your servicer at (servicer's toll-free phone number and email, if applicable). To file a complaint about unlawful conduct by an Oregon licensee or a person required to have an Oregon license, call DFR at 888-877-4894 or visit dfr.oregon.gov.

**New York Property Owners:** Exclusively for homeowners in New York, you may file complaints about the servicing of your loan with the New York State Department of Financial Services. For further information call the Department's Consumer Assistance Unit at 1.800.342.3736 or visit the Department's website at www.dfs.ny.gov.

**New York Residents**: If you believe the loss mitigation request has been wrongly denied, you may file a complaint with the New York State Department of Financial Services at 1-800-342-3736 or www.dfs.ny.gov.

**Colorado Property Owners:** PHH Mortgage Corporation maintains an office in Colorado.
Address:        1776 S. Jackson Street, #900
                Denver, Colorado 80210
Telephone:      303.327.8955

www.MortgageQuestions.com

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*



04/03/2023                                                      Account Number: 7110343113

PERRY RICHARD HARRIS JR
ANITA E HARRIS
2654 WEST HORIZON RIDGE PKWY
B5-69
HENDERSON, NV 89052

<div style="border:1px solid black;">

**Account Information**

**Loan Number: 7110343113**

**Property Address:**
404 RIDGETOP DR
ACWORTH, GA 30102

We are here to help!

Your Relationship Manager:
Manoj Paul
RMA@mortgagefamily.com
Online:
www.mortgagequestions.com

</div>

### DECISION ON YOUR REQUEST FOR MORTGAGE ASSISTANCE
#### PLEASE READ CAREFULLY

Dear PERRY RICHARD HARRIS JR and ANITA E HARRIS:

Thank you for your request for mortgage assistance. Unfortunately, you are no longer eligible for the loan modification offer that was sent to you due to the reason listed below.

- The application was withdrawn at the request of the accountholder(s).

Below, you will find important information about our decision regarding mortgage assistance, with additional details on the following pages.

**The following additional documents are enclosed for your information:**

- Legal Disclosures
- Additional Assistance Available

We are here to help! Manoj Paul has been assigned as your relationship manager and will be your designated representative for resolution, inquiries and submission of documents.

If you have any questions or would like information regarding other assistance options that may be available to you such as other modification programs, a short sale or deed in lieu of foreclosure, please call your Relationship Manager Manoj Paul toll-free at 800-750-2518. We are available Monday through Friday 8:00am to 9:00pm ET.

Sincerely,

*Loan Servicing*

---

7110343113                                                 *OCWN_STND_ALNE_DENL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

NMLS # 2726

IN'ERNE' REPRIN'



**What should you do if you disagree with the reason(s) for non-approval?**

If you disagree with the reason(s) for non-approval, please contact us at:

PHH Mortgage Services
ATTN: Escalations Department, SV-50
1661 Worthington Road,Suite 100
West Palm Beach, FL 33409
Email: EscalatedCases@mortgagefamily.com



7110343113

*OCWN_STND_ALNE_DENL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an account holder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

NMLS # 2726



## ADDITIONAL ASSISTANCE IS AVAILABLE

If you are experiencing a financial hardship, housing counseling may be a way to help you manage your finances. We urge you to contact HUD approved agencies to obtain assistance in keeping your home. This assistance is available at no charge.

| | | |
|---|---|---|
| HUD Approved Housing Counseling | (800) 569-4287 | www.HUD.gov |
| Homeowner's HOPE Hotline Number | (888) 995-4673 | https://995hope.org/ |
| Fannie Mae Assistance Program | (800) 232-6643 | www.knowyouroptions.com |
| Consumer Financial Protection Bureau (CFPB) | (855) 411-2372 | www.consumerfinance.gov/mortgagehelp/ |
| Freddie Mac Assistance Program | | http://myhome.freddiemac.com/ |

If you would like to submit a qualified written request, a notice of error or a request for information, you must use the following address:

PHH Mortgage Services
PO Box 66002
Lawrenceville, NJ 08648

**Please Note: If the Accountholder was impacted by COVID-19, they may be able to apply for the Homeowner Assistance Fund (HAF) if available in their jurisdiction. Please contact your state housing agency for more information regarding program details.**

7110343113

*OCWN_STND_ALNE_DENL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

NMLS # 2726



## ALTERNATIVES TO FORECLOSURE

- Account Refinance option:  This an option to apply for a new mortgage and pay off the existing lien, if favorable terms are obtained making the current payment more affordable.

- Account Modification option: An account modification may change one or more terms of the original mortgage agreement. This may include a change in interest rate, account balance or term, which may lower the mortgage payment and bring the account current. Contact us for more information on available modification programs, as this option may be limited based on the non-approval reason included in this notice.

- Forbearance or Repayment Plan: Payment forbearance temporarily gives you more time to pay your monthly payments. A forbearance may provide for temporary reduction or suspension of payments, or the ability to make regular monthly payments without contributing toward past due amounts for a period of time. If you have experienced a temporary loss of income or increase in expenses but can now afford to make higher payments, we may be able to develop a repayment plan.

- Sale of the property: If there is an inability to continue paying the mortgage payment, the best option may be to find more affordable housing. As an alternative to foreclosure, it may be possible to sell the property and use the proceeds to pay off the current lien.

- Short Sale: If the value of the property has declined, and the property cannot be sold for an amount sufficient to pay the current lien in full, it may be possible to sell it for less than the full payoff amount to satisfy the lien.

- Deed in Lieu of Foreclosure: If an attempt to sell the property has been unsuccessful, it may be possible to voluntarily return the deed to satisfy the lien and avoid foreclosure.

## LEGAL DISCLOSURES

**Notice regarding Credit Discrimination:** The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract), because all or part of the applicant's income derives from any public assistance program, or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is Federal Trade Commission, Equal Credit Opportunity, Washington, D.C. 20580.

**Notice Regarding Bankruptcy:** Please be advised that if the account is part of an active Bankruptcy case or if the account has received an Order of Discharge from a Bankruptcy Court, this letter is in no way an attempt to collect either a pre-petition, post-petition or discharged debt.  If the bankruptcy case is still active, no action will be taken in willful violation of the Automatic Stay. If the account has received an Order of Discharge in a Chapter 7 case, any action taken by us is

7110343113                                                                                          *OCWN_STND_ALNE_DENL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

NMLS # 2726



for the sole purpose of protecting our lien interest in the underlying mortgaged property and is not an attempt to recover any amounts from the accountholder(s) personally. Finally, if the account is in an active Chapter 11, 12 or 13 bankruptcy case and an Order for Relief from the Automatic Stay has not been issued, the accountholder(s) should continue to make payments in accordance with the plan.

7110343113

*OCWN_STND_ALNE_DENL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

NMLS # 2726



03/09/2023

9-814-CHI16-0000135-001-0 .000-000-000-000

**Respond to this offer no later than:**

# 04/01/2023

PERRY RICHARD HARRIS JR
ANITA E HARRIS
2654 WEST HORIZON RIDGE PKWY
B5-69
HENDERSON, NV 89052

## Account Information

**Account Number: 7110343113**

**Property Address:**
404 RIDGETOP DR
ACWORTH, GA 30102

We are here to help!

Account Relationship Manager:
Manoj Paul
RMA@mortgagefamily.com
Online:
www.mortgagequestions.com

### THE ACCOUNT HAS BEEN APPROVED FOR A MORTGAGE ASSISTANCE OFFER
### Please Read Carefully

Dear PERRY RICHARD HARRIS JR and ANITA E HARRIS,

**Congratulations!** The account is approved to enter into a Trial Period Plan under an PHH Mortgage Services Modification Plan. Please read this letter so that the next steps necessary for completion of the modification are understood completely. In order to be considered for a modification, the proposed trial period payments must be completed.

Below, please find important information about the mortgage assistance offer, with additional details on the following pages. However, time is of the essence to accept this offer. A response must be received by 04/01/2023 in order to start this trial modification. This offer will expire, so we must receive a response by the date listed on this letter.

**What needs to be done:**

- To accept an assistance option, the following must be completed:

    o For convenience we have enclosed a Mortgage Assistance Acceptance Form which needs to be completed and RETURNED as outlined on the form by 04/01/2023.

    o In addition, the First Trial Period Plan payment of $1,727.56 needs to be made by 04/01/2023.

| Trial Period Payment Number | Trial Period Payment | Due Date On or Before |
|---|---|---|
| 1 | $1,727.56 | 04/01/2023 |
| 2 | $1,727.56 | 05/01/2023 |
| 3 | $1,727.56 | 06/01/2023 |

**What needs to be known:**

---

7110343113

*OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

Page 1
(I)ER!)E) REPOR!)



- The account is approved for an PHH Mortgage Services Streamline Modification with monthly payments in the amount of $1,727.56.

- In order to have the account modified permanently, the following requirements must be met:
    - Successful completion of the Trial Period Plan. The Trial Period Plan offer details are enclosed. Please read all materials carefully.
    - Property title must be clear of liens, judgments and other encumbrances.
    - Upon successful completion of the Trial Period Plan, we will send a Permanent Modification Agreement, which will require all parties who appear on the original Note or who appear on the title to sign. It may be necessary to sign the Agreement in the presence of a notary public.
- We've also included details about other options we considered and the account's eligibility for those options. Please see the enclosed sections for more information:
    - **Other Available Options**: Explains the details to transition out of the home through a Short Sale or Deed in Lieu of Foreclosure.
- If it is believed our decision was incorrect, a request for an appeal can be made in writing within 14 days from the date of this letter. Additional details on how to submit an appeal are included with this letter.

**The following additional documents are enclosed for your information:**

- PHH Mortgage Services Streamline Modification Trial Period Plan Notice
- PHH Mortgage Services Streamline Modification Frequently Asked Questions
- Mortgage Program Review
- Opportunity for Appeal

- Other Available Options
- Additional Assistance Available
- Legal Disclosures
- Payment Remittance Information

**Please Note --** If we are contacted and the offer is accepted, but there is subsequent failure to make the first Trial Period Plan payment by the first payment due date, and we do not receive the payment by the last day of the month in which it is due, this offer will be revoked and foreclosure proceedings may continue and a foreclosure sale may occur.

We are here to help! Manoj Paul has been assigned as the account relationship manager and will be the designated representative for resolution, inquiries and submission of documents.

If there are any questions, please call the Relationship Manager Manoj Paul toll-free at 800-750-2518. We are available Monday through Friday 8:00am to 9:00pm ET.

Sincerely,

Loan Servicing

---

7110343113

*OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

NMLS # 2726

REPRESE!)A)IO! O* PRI!)E" "O+,-E!)



03/09/2023

## PHH Mortgage Services Streamline Modification TRIAL PERIOD PLAN NOTICE

As previously explained, we are offering the account an opportunity to enter into a Trial Period Plan. This is the first step toward qualifying for more affordable mortgage payments or more manageable terms. It is important all information is read in its entirety so that the actions needed to be taken to successfully complete the Trial Period Plan to permanently modify the account are fully understood.

**Please be advised, we were unable to achieve a modification option that would reduce the monthly payment; however, we were able to capitalize the delinquent balance and find a modification that is allowed by the investor of the account. If this offer is accepted and the requirements of this Trial Period Plan and the final Modification Agreement are complied with, the account may be modified. If this offer is not accepted, please review the *Other Available Options* section of this Notice for non-retention options.**

### Make Trial Period Payments

To successfully complete the Trial Period Plan,  the Trial Period Plan payments below must be made.

| Trial Period Payment Number | Trial Period Payment | Due Date On or Before |
|---|---|---|
| 1 | $1,727.56 | 04/01/2023 |
| 2 | $1,727.56 | 05/01/2023 |
| 3 | $1,727.56 | 06/01/2023 |

When making the Trial Period Plan payments, the following must be complied with:

- o   If the account was previously required to remit payments by certified funds, this requirement extends through the Trial Period Plan. Certified funds are defined as: money orders, cashier's checks, or personal checks certified by a local bank.
- o   The amount of the "Trial Period" payment must be sent as provided for under the Trial Period Plan, instead of, not in addition to, the normal monthly mortgage payment.

Trial Period Plan Payments should be sent using one of the approved payment methods detailed on the *Payment Remittance Information* page inserted later in this package.

### Time is of the Essence

If there is a failure to make the First Trial Period Plan payment by 04/01/2023, and we do not receive the payment by the last day of the month in which it is due, this offer may be revoked and we may refer the account to foreclosure; or if the account has been referred to foreclosure, foreclosure proceedings may continue and a foreclosure sale may occur.

---

7110343113                                                                                          *OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property.  It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an account holder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

NMLS # 2726



If there are questions about the Trial Period Plan or permanent modification requirements, please call the account Relationship Manager, Manoj Paul, toll-free at **.** We are available Monday through Friday 8:00am to 9:00pm ET.

**Additional Trial Period Plan Information:**

- It is important that the *Streamline Modification Frequently Asked Questions* and *Additional Legal Disclosures* information attached is reviewed thoroughly.

- This Trial Period Plan offer is contingent on the accountholder(s) having provided accurate and complete information. We reserve the right to revoke this offer or terminate the plan following acceptance if we learn of information that would make the account ineligible for the Trial Period Plan.

- Once each of the payments above have been successfully made by their due dates, two signed copies of the Modification Agreement have been submitted, and we have signed the Modification Agreement, the mortgage will be permanently modified in accordance with the terms of the Modification Agreement.

- Please be aware that the final modification may include, but is not limited to, mortgage terms such as principal forgiveness, a balloon payment and changes to the interest rate and maturity date. Additional details will be outlined in the final Modification Agreement.

**We must receive each payment, in the month in which it is due. If a payment is missed or there is a failure to fulfill any other terms of the Trial Period Plan, this offer will end and the account will not be modified:**

- If it is felt the Trial Period Plan payments shown above are not affordable and there is a desire to remain in the home—or if there has been a decision to leave the home—please contact us at 800-449-8767 to discuss alternatives to foreclosure.

- Please note that, except for the monthly account payment amount during the Trial Period Plan, the terms of the existing mortgage documents and all account requirements remain in effect and unchanged during the Trial Period Plan.

**We will not refer the account to foreclosure or proceed to foreclosure sale during the Trial Period Plan, provided there is compliance with the terms of the Trial Period Plan:**

- Any pending foreclosure action or proceeding that has been suspended may be resumed if there is failure to comply with the terms of the plan or the account no longer qualifies for a Permanent Mortgage Modification.

- It is agreed we will hold the Trial Period Plan payments in an account until sufficient funds are in the account to pay the oldest delinquent monthly payment. It is also agreed we will not owe interest on the amounts held in the account. If any money is left in this account at the end of the Trial Period Plan and the account qualifies for a Permanent Mortgage Modification, those funds will be deducted from amounts that would otherwise be added to the modified principal balance.

- Our acceptance and posting of payment during the Trial Period Plan will not be deemed a waiver of the acceleration of the account and related activities, including the right to resume or continue foreclosure actions if there is failure

---

7110343113                                                                                  *OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

Page 2 (PRIE) REPRI!)

NMLS # 2726

9-814-CHI16-0000135-001-05-000-000-000-000



to comply with the terms of the plan, and shall not constitute a cure of mortgage default unless such payments are sufficient to completely cure the default.

**If the monthly payment did not include escrows for taxes and insurance, it may now be required:**

- It is agreed any prior waiver that allowed payment directly for taxes and insurance is revoked. It is agreed we may establish an escrow account and payment of escrows into that account will be required, unless prohibited by applicable law.

**The current mortgage documents remain in effect; however, the Trial Period Plan payment may be made instead of the payment required under the mortgage documents:**

- It is agreed all terms and provisions of the current mortgage documents remain in full force and those terms shall remain in compliance. Nothing in the Trial Period Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations, if any exist, contained in the mortgage documents.

**Explanation of credit reporting requirements:**

- We are required to report factual information to the credit reporting agencies. If your account is past due at the time you enter into the Trial Period Plan, we will continue to report that your account is past due, unless or until your loan is brought current. If, however, you do not successfully complete the Trial Period Plan, accurate reporting will continue, including any adverse reporting.

**Meaning of acceptance of this trial offer:**

- It is agreed the Trial Period Plan is not a modification of the account and the account will not be modified unless or until all of the conditions required for modification are fully met. It is understood and agreed PHH Mortgage Services will not be obligated or bound to modify the account if there is failure to meet any of the requirements under this Trial Period Plan.

- All monthly mortgage payments that remain due must be paid when the executed final modification agreement is returned. If there is a delay in processing, please continue to make the monthly mortgage payment in the amount outlined in this Trial Period Plan until the loan is permanently modified.

- Final approval for a permanent modification may be conditioned upon receipt of clear title.

**Additional documentation may be required:**
- The account may be required to submit additional documentation in order for us to process the modification request. If further documentation is needed, we will send a separate letter requesting the outstanding required documentation.

7110343113                                                                                                 *OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.



# FREQUENTLY ASKED QUESTIONS

**Q. What else should be known about this offer?**

- If the new Trial Period Plan payments are timely, and the account continues to remain eligible for the permanent modification, **we will not conduct a foreclosure sale.**

- The account will not be charged any fees for this Trial Period Plan or a permanent modification.

- The new monthly payment may include an escrow for property taxes, hazard insurance and other escrowed expenses, unless its inclusion is prohibited by applicable law. If the cost of homeowner's insurance, property tax assessment or other escrowed expenses increases, monthly payments will increase as well.

- **Credit Reporting**: We will continue to report the delinquency status of the account to credit reporting agencies as well as the account's entry into a Trial Period Plan in accordance with the requirements of the Fair Credit Reporting Act and the Consumer Data Industry Association requirements. **CREDIT SCORING COMPANIES GENERALLY CONSIDER THE ENTRY INTO A PLAN WITH REDUCED PAYMENTS AS AN INCREASED CREDIT RISK. AS A RESULT, ENTERING INTO A TRIAL PERIOD PLAN MAY ADVERSELY AFFECT CREDIT SCORES, PARTICULARLY IF THE ACCOUNT IS CURRENT ON THE MORTGAGE OR OTHERWISE HAS A GOOD CREDIT SCORE.** For more information about credit scores, go to ftc.gov/bcp/edu/pubs/consumer/credit/cre24.shtm.

**Q. Why is there a Trial Period Plan?**

- The Trial Period Plan offers immediate payment relief and gives time to make sure the new monthly mortgage payment can be managed. The Trial Period Plan is temporary and the existing mortgage lien remains in effect and unchanged during the Trial Period Plan.

**Q. When will it be known if the account can be modified permanently and how will the modified account balance be determined?**

- If the account continues to remain eligible for the permanent modification, once all Trial Period Plan payments are made on time and a copy of the signed modification agreement is returned to us, we will sign the copy and send it back so a fully executed modification agreement detailing the terms of the modified mortgage can be retained. Any difference between the amount of the Trial Period Plan payments and the regular mortgage payments will be added to the balance of the account, along with any other past due amounts, as permitted by the account documents. While this will increase the total amount owed on the account, it should not significantly change the amount of the modified mortgage payment.

**Q. Will the interest rate and principal and interest payment be fixed after the account is permanently modified?**

- Once the account is modified, the interest rate will be fixed for the life of the mortgage.

---

7110343113

*OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

Page (! TRE) REPRI!)

NMLS # 2726

REPRESE!)A)IO! O* PRI!)E" "O+,-E!)



Loan Number: 7110343113

## MORTGAGE ASSISTANCE ACCEPTANCE FORM

**REMEMBER TIME IS OF THE ESSENCE. PLEASE DO NOT DELAY!**

Based on the option(s) presented in this notice, you may select the option you would like to accept. Check the desired option below, then sign and return this Mortgage Assistance Acceptance Form.

You may only choose **one** option:

☐ **I want to accept the Streamline Modification Trial Period Plan offer.**
☐ **I decline the Streamline Modification Trial Period Plan offer. Instead, I want to accept the offer below:**
    ☐ Conditional Short Sale
    ☐ Conditional Deed-in-Lieu of Foreclosure

☐ **I want to reject all options in this notice.**

_____
Date

_____
PERRY RICHARD HARRIS JR

_____
Date

_____
ANITA E HARRIS

Sign and Return by Fax, Email or Mail:

| Fax or Email - for *fastest* processing | Or | **Regular Mail** |
|---|---|---|
| Fax: 856-917-2848<br>Email: MOD@mortgagefamily.com | | PHH Mortgage Services<br>Attn: Home Retention Department<br>1661 Worthington Road, Suite 100B<br>West Palm Beach, FL 33409 |

7110343113

*OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an account holder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

Page (! RE) REPRI!)

NMLS # 2726

REPRESE!)A)IO! O* PRI!)E" "O+,-E!)



## MODIFICATION PROGRAM REVIEW

After careful review of the information provided, we have reviewed the loan for available mortgage assistance options as indicated below:

| Program | Determination | Reason for Non-Approval |
|---|---|---|
| Helping Homeowners Modification | Non-Approved | The account is greater than 90 days delinquent. |
| Streamline Modification | Approved | |

We have established evaluation criteria that set an order ranking for evaluation of mortgage assistance options (commonly known as an "eligibility waterfall"). Based upon this ranking system, you have qualified for a Trial Period Plan which necessarily means that we are unable to offer all modification options ranked below it.

NMLS # 2726
OCWN_PLS_SLN_TRL

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.



## OPPORTUNITY FOR APPEAL

**What should you do if you disagree with the reason(s) for non-approval and want to appeal?**

If you disagree with the reason(s) for non-approval of any modification option, you have the right to appeal. To appeal, you have 14 days from the date of this notice to send a written explanation and supporting documentation to substantiate your findings. Please send a copy of this letter, along with any supporting documents, to:

PHH Mortgage Services
ATTN: Escalations Department, SV-50
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Email: EscalatedCases@mortgagefamily.com

No foreclosure sale will be conducted, and you will not lose your home during this 14-day period. However, please note that if you received a notice of a foreclosure sale date of your home, or if notice of a foreclosure sale date of your home was published prior to your submission to us of a completed modification application, then such foreclosure sale may not be suspended for this 14-day period if, despite our reasonable attempts to delay the sale, the court with jurisdiction over the foreclosure proceedings, or the bankruptcy court in a bankruptcy case, or the public official charged with carrying out the sale fails or refuses to halt the sale.

If you choose to appeal our decision, the mortgage assistance option(s) offered to you in this notice will remain available pending the outcome of your appeal. If we determine on appeal that you are eligible for a modification trial period plan, we will send you an offer for the trial period plan. In that case, you will be given 14 calendar days from the date of the appeal decision to let us know that you intend to accept the trial period plan offer.

If you wait to accept the mortgage assistance option(s) offered to you in this notice until after receiving our appeal decision, the account will become more delinquent. Any unpaid interest and other unpaid amounts, such as escrows for taxes and insurance, will continue to accrue on your mortgage loan during the appeal. In that event, the payment amounts and due dates of your initial mortgage assistance option(s) may be adjusted. Our appeal decision is final and not subject to further appeals.

7110343113

*OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an account holder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

Page (! TRE) REPRI!)

NMLS # 2726



<u>OTHER AVAILABLE OPTIONS</u>

## You are conditionally approved for these Mortgage Assistance Options

Acceptance of any of these options will not allow you to keep your home, but will allow you to avoid foreclosure. These offers are conditional and could be subject to an appraisal or title search. We are not able to guarantee final approval until we receive all the documents required for our final evaluation of your eligibility.

|  | **Short Sale** | **Deed-in-Lieu of Foreclosure (DIL)** |
|---|---|---|
| **Option Details** | Listing and selling your property at market value will release you from your mortgage debt serviced by PHH Mortgage Services on this property, even if the sale price is lower than your mortgage debt. | Transferring ownership of your property by signing over the deed/title to us will release you from your mortgage debt. |
| **Benefits** | ■ Avoid the stress and potential costs of foreclosure.<br>■ Sell the property with less negative impact to your credit than foreclosure or bankruptcy.<br>■ You may be eligible for relocation assistance if you qualify. | ■ A Deed-in-Lieu is a quicker way to get out of the property without the hassle, time and energy associated with listing and selling your house.<br>■ You could walk away with no mortgage debt and less negative impact to your credit than foreclosure or bankruptcy.<br>■ If you qualify, you may be eligible to receive up to $10,000 in relocation assistance. |
| **Additional Documents Required from You**<br><br>**Send by Fax to:**<br>**856-917-2848**<br><br>**Or by email:**<br><br>**Short Sale**<br>SS@mortgagefamily.com<br><br>**Deed in Lieu**<br>DIL@mortgagefamily.com | **You must send the documents listed below to us by 03/23/2023 :**<br><br>■ Executed Listing Agreement.<br>■ Executed Purchase Contract, including all addendums.<br>■ The buyer's proof of funds or financing pre-approval letter.<br>■ Preliminary Closing Disclosure/Settlement Statement. | In order to complete the Deed-in-Lieu transaction you must send the applicable document listed below:<br><br>• If you are married, please provide one of the documents listed below:<br>  ○ Signed letter stating you and your spouses' complete names, or<br>  ○ Copy of your marriage license<br>• If you are no longer married, please provide the following:<br>  ○ A copy of your divorce decree.<br>• If your spouse is deceased, please provide one of the documents listed below: |

7110343113

*OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an account holder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

Page (TRE) REPRI!)

NMLS # 2726



| | | |
|---|---|---|
| | | <ul><li>Copy of the probate court documents,</li><li>Death certificate, or</li><li>Obituary/newspaper article reporting the death.</li></ul> |
| **Additional Documents/ Information We Require from Third Parties Prior to Final Approval** | Please note that final approval is conditioned upon receipt of the following documents/information from third-party providers:<br>■ Valuation - an independent valuation of the property that verifies that the current estimated market value.<br>■ Closing Costs - verification that closing costs associated with the transaction are reasonable and customary.<br>■ If applicable, approval from the investor or mortgage insurer of your loan to proceed with the transaction. | Please note that final approval is conditioned upon receipt of the following documents/information from third-party providers:<br>■ Valuation - an independent valuation of the property.<br>■ Clear Title - a title search or history demonstrating clear title and in marketable condition.<br>■ If applicable, approval from the investor or mortgage insurer of your loan to proceed with the transaction. |
| **Our Next Steps after Receiving All Required Documents from You.** | After we receive all required documents we will:<br>■ Complete a review of the loan terms, investor requirements, and mortgage insurance requirements, if applicable.<br>■ Work with you to complete an independent valuation review. A valuation agent will contact you or your designated agent for access to the property so that the valuation agent can set up an appointment.<br><br>If an offer is present, and after all documents/information have been received, we will issue a decision within 30 calendar days.<br><br>If we send you a final approval, you will have 14 calendar days from the date of receipt to provide signed written acceptance of the short sale approval.<br><br>Failure to perform all actions required to accept the Short Sale offer will be considered as a rejection. | After we receive all required documents we will:<br>■ Complete a review of the loan terms, investor requirements, and mortgage insurance requirements, if applicable.<br>■ Work with you to complete an independent valuation review. A valuation agent will contact you or your designated agent for access to the property so that the valuation agent can set up an appointment.<br><br>If we send you a final approval, you will have 14 calendar days from the date of receipt to provide signed written acceptance of the offer.<br><br>Once we have received your written acceptance, our vendor will draft the deed document and schedule a notary at a convenient time and place for you to execute the DIL of foreclosure documents. |

9-814-CHI16-0000135-001-1 -000-000-000-000

OCWN_PLS_SLN_TRL

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an account holder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

Case 2:25-bk-01794-EPB    Doc 42    Filed 03/31/25    Entered 03/31/25 10:05:35    Desc
Main Document    Page 234 of 248

NMLS # 2726



## ADDITIONAL ASSISTANCE IS AVAILABLE

If you are experiencing a financial hardship, housing counseling may be a way to help you manage your finances. We urge you to contact HUD approved agencies to obtain assistance in keeping your home. This assistance is available at no charge.

| | | |
|---|---|---|
| HUD Approved Housing Counseling | (800) 569-4287 | www.HUD.gov |
| Homeowner's HOPE Hotline Number | (888) 995-4673 | https://995hope.org/ |
| Fannie Mae Assistance Program | (800) 232-6643 | www.knowyouroptions.com |
| Consumer Financial Protection Bureau (CFPB) | (855) 411-2372 | www.consumerfinance.gov/mortgagehelp/ |
| Freddie Mac Assistance Program | | http://myhome.freddiemac.com/ |

If you would like to submit a qualified written request, a notice of error or a request for information, you must use the following address:

PHH Mortgage Services
PO Box 66002
Lawrenceville, NJ 08648

**Please Note: If the Accountholder was impacted by COVID-19, they may be able to apply for the Homeowner Assistance Fund (HAF) if available in their jurisdiction. Please contact your state housing agency for more information regarding program details.**

9-814-CHI16-0000135-001-13-000-000-000-000

7110343113

*OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

Page (.1RE) REPRI!)

NMLS # 2726



### Additional Legal Disclosures

**Notice Regarding Bankruptcy:** Please be advised that if you are part of an active Bankruptcy case or if you have received an Order of Discharge from a Bankruptcy Court, this letter is in no way an attempt to collect either a pre-petition, post-petition or discharged debt. If your bankruptcy case is still active, no action will be taken in willful violation of the Automatic Stay. If you have received an Order of Discharge in a Chapter 7 case, any action taken by us is for the sole purpose of protecting our lien interest in the underlying mortgaged property and is not an attempt to recover any amounts from you personally. Finally, if you are in an active Chapter 11, 12 or 13 bankruptcy case and an Order for Relief from the Automatic Stay has not been issued, you should continue to make payments in accordance with your plan.

**Notice regarding Credit Discrimination:** The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract), because all or part of the applicant's income derives from any public assistance program, or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is Federal Trade Commission, Equal Credit Opportunity, Washington, D.C. 20580.

**Notice regarding Tax Consequences of Mortgage Assistance Options:** Your acceptance of a Loan Modification, Short Sale, or Deed-in-Lieu of Foreclosure may result in federal, state, or local tax consequences to you and/or affect your eligibility for any public assistance benefits. We cannot advise you on these impacts and encourage you to contact a tax professional to discuss any questions you may have.

9-814-CHI16-0000135-001-14-000-000-000-000

---

7110343113

*OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

NMLS # 2726



# PAYMENT REMITTANCE INFORMATION

**PLEASE DON'T FORGET:**
1. All checks should be payable to PHH Mortgage Services.
2. Always include the account number with the payment.

| Overnight Mail |
| --- |
| **Money Order, Personal Check, or Certified Check** |
| **Send To**: PHH Mortgage Services<br>1661 Worthington Rd., Ste. 100<br>ATTN: SV19<br>West Palm Beach, FL 33409 |
| **Reference:** PHH Mortgage Account # 7110343113 |

| Regular Mail |
| --- |
| **Money Order, Personal Check, or Certified Check** |
| **Send To**: PHH Mortgage Services<br>PO BOX 24781<br>ATTN: SV 19<br>West Palm Beach, FL 33416 |
| **Reference:** PHH Mortgage Account # 7110343113 |

| Money Gram |
| --- |
| **Receiver Code:** 7440<br>**Payable to:** PHH Mortgage<br>**City:** Mt Laurel<br>**State:** New Jersey<br>**Reference:** PHH Mortgage Account # 7110343113<br>**Agent Locator:** (800) 926-9400 |

| Western Union |
| --- |
| **By WUQC: Western Union Quick Collect**<br>**Code City:** PHHUS<br>**State:** NJ<br>**Reference:** PHH Mortgage Account # 7110343113 |

---

7110343113

*OCWN_PLS_SLN_TRL*

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

NMLS # 2726



C/O PHH Mortgage Services I PO Box 24738 I West Palm Beach F  334!" I #el$ !%888%82&%"474 I Fax$ !%8"%(!7%83&&

)ecem*er '+ 2&22                                                                ,cco-.t /-m*er$ 7!!&343!!3

¤¤¤¤¤¤¤¤¤¤ ¡¤¤¤¤¤¤¤¤¤¤¤¤¤¤¤¤¤¤¤¤¤¤¤

¤¥¦¦§ ¦©ª«¬¦- «¬¦¦©® ¯¦                                           01234156 7881499:
                                                                    4&4 ;i<geto= )r
¬˚©±¬¥ «¬¦¦©®                                           ,c>orth ?, 3&!&2%3478
¬¤±¬ 23 ˆµ
¶¶·¶· ® ³¶®± ®±˚ ˚©±³·¹¶²
¤«º¥˚©» ¬¼ ¹³·½⅓¾½¿¶¶

# @AB0CD7DE F7DGHFI0 JCDKA7D7LMA 0N7L 7ODAABAL@

)ear C-stomerPsQ+



**WhR ,re We Se.<i.g #his letter**

Base< -=o. the reS-est receive< o. the a*ove%reTere.ce< acco-.t+ >e are oTTeri.g a @4U321V16 FV189WX3 J21Y4V1VZ[4 0\VZ ]^0\VZ^_` #he terms oT this Pla. are o-tli.e< *elo>$

- a  ,cco-.t )-e )ate$ /ovem*er &!+ 2&22
- a  Pla. bTTective )ate$ !2/&2/2&22
- a  PaRme.ts For*or.e$ 3
- a  /ext PaRme.t )-e )ate$ &3/&!/2&23
- a  ,mo-.t )-e o. the /ext PaRme.t )-e )ate$ c7+733`"&

L2 de15W41 V[5X2Z X9 14feX148 V5 5WX9 5XU4g #he Pla. is eTTective as oT hijkijikii` #his <oc-me.t is Tor i.Tormatio.al =-r=oses o.IR`

I.<er the terms oT this Pla.+ the mo.thIR mortgage =aRme.t >ill *e s-s=e.<e< Tor the =erio< <etaile< a*ove` Ho>ever+ >e >ill co.ti.-e to acce=t =aRme.ts <-ri.g this time sho-l< the acco-.thol<er >ish to mame them` n. a<<itio. <-ri.g the term oT the Pla.+ PHH Mortgage Services PoPHHpQ >ill .ot assess late Tees or re=ort this acco-.t as <eli.S-e.t to the cre<it *-rea-s` ,Iso+ Toreclos-re =rocee<i.gs PiT a.< o.IR to the exte.t =ermissi*le *R a==Iica*le la>Q >ill .ot *e i.itiate< a.< a.R active Toreclos-re =rocee<i.gs .ot alrea<R o. hol< Tor a.R other =-r=osePsQ >ill *e =-t o. hol< <-ri.g the =erio< covere< *R the Pla.` ,.R e> *a.mr-=tcR Tili.g <-ri.g the Pla. =erio< maR voi< the Pla.`

PaRme.ts Tor*or.e -.<er the Pla. >ill remai. o-tsta.<i.g o. kqjkhjikiq`

#he 7U2eZ5 Ge4 2Z 5W4 L4r5 0V6U4Z5 Ge4 GV54 i.cl-<es the amo-.t oT Tor*or.e =aRme.ts -.<er this Pla. a.< the reg-lar mo.thIR mortgage =aRme.t that >ill *e <-e at that time` Please .ote that this amo-.t is a==roximate` #he acco-.t >ill remai. s-*sect to a.R i.creases to the reg-lar mo.thIR mortgage =aRme.t <-ri.g the Pla. =erio<+ s-ch as Trom a. escro> a.alRsis or a. ,;M a<s-stme.t` #he other terms oT the mortgage remai. -.cha.ge< <-ri.g this Pla.`

I=o. com=letio. oT this =la.+ reg-lar mo.thIR mortgage =aRme.ts >ill res-me` Ho>ever+ other lo.g%term mortgage assista.ce o=tio.s maR *e availa*le at that time`

vwxy z{¦¦}~xzⅨx{~ xy ¤¤{¦ ¤ ¤¤¤¤ z{¤¤¤z¤{¤ ¤¤¤¤¦¤¤x~¤ ¤{ z{¤¤¤z¤ ¤ ¤¤¤¤¤¤ ¤¦~¤ x~¤¤{¦ ¤¤x{~ ¤¤¤¤ }¥¤¤ ¤{¤ ¤w¤¦¤ ¤}¤¤{¥¤¤ ¤¤¤¤¤¤¤ x¤ ¤w¤ ¤¤¤¤ xy x~ ¤¦z¤¤¤¤ ¤~¤¤¤¤¤z¤ ¤¤ w¦¦y ¤¤¤~ ¤xyzwⅨ¤¤¤¤ ¤w¤{}w ¤¤z{¦¦}~xzⅨx{~ xy ¤¤{¤¤¤¤ ¤}¤¤¤¤ ¤{¤ x~¤{¤¤{¦¤{~¤y¤y {~¤¤ ¤x¤w¤¤¤ ¤¤¤¦¤¤ ¤{ {}¤ y¤z}¤¤¤ ¤x¤¤ ¤ ¤¤ ¤w¤ ¤¤¤¤¤¤¤¤~¤¤ ¤{¤{¤¤¤ ¤xy ¤{¤z¤¦¤¤¤~ ¤¤ xy ~¤~¤¤¦¦¤¤{¤ ¤ z{¤¤¤¤¤ ¤ ¤¤¤¤¤{¦¦¤~¤¤¤ 2{¤¤ ¤¤¤{¤}¤{~¤¤z¤~x¤y ¤¤ ¤¤ ¤~ yo{¤¤ ¤{¤~¤ ¤¤ yo¤¤¤¤ ¤¤¤¤ w¤¤¤¤¤ ¤¤{¤x¤¤ ¤w¤¤}¤ ¤¤ ¤~ ¤{¤x¤z¤ ¤¤¤z¤~zx¤~¤¤¤ ¤¦x¦¤zyx¤x¤¤{zx¤¤¤ {~ z¤¤¤¤¤¤ ¤ ¤¤¤¤¤¤¤¤zx~zx¤¤¤~¤z¤~¤zx~z¤¤¤zx~zx~zx~z¤~z¤x~¤¤z¤¤¤¤¤{~¤~¤¤¤¤ {~ {

©ˮ+¥¯¦Ÿ˚¦+ ¦¥¤¦©˚+



C/O PHH Mortgage Services I PO Box 24738 I West Palm Beach F   334!" I #el$ !%888%82&%"474 I Fax$ !%8""%(!7%83&&

nT the acco-.t >as =revio-sIR set -= o. o-r )irect )e*it =rogram+ the a-tomatic <raTts >ill .ee< to *e set-= agai. o. the acco-.t *R co.tacti.g o-r C-stomer Service )e=artme.t or thro-gh o-r >e*site`

While the acco-.t is o. Tor*eara.ce =la.+ =aRme.ts >ill .ot *e ma<e Tor o=tio.al i.s-ra.ce =ro<-cts` #o avoi< ca.cellatio.+ =lease co.tact the i.s-ra.ce =rovi<er to i.S-ire a*o-t <irect *illi.g o=tio.s`



## What We Will )o

BeTore the e.< oT the =la.+ >e >ill co.tact the acco-.thol<er or their co-.sel PiT a==lica*leQ a.< iT the har<shi= still exists+ >e ca. <isc-ss a<<itio.al o=tio.s >hich maR i.cl-<e a.R availa*le Tor*eara.ce exte.sio.s+ re=aRme.t =la.+ a =aRme.t <eTerral+ or other loa. mo<iTicatio. o=tio.s`

We are here to hel=Â #o s=eam >ith the assig.e< ;elatio.shi= Ma.ager+ M,/OÃ P,I  >ho is the <esig.ate< co.tact Tor i.S-iries a.< the s-*missio. oT <oc-me.ts+ Ro- ca. sche<-le a. a==oi.tme.t *R visiti.g >>>`Mortgaget-estio.s`com a.< select Sche<-le calls -.<er the  oa. S=ecialist o=tio. or call toll%Tree at !%888%82&%"474 Mo.<aR thro-gh Fri<aR Trom 8$&& am to ($&& =m b#` nT imme<iate assista.ce is reS-ire<+ a.other <e<icate< mem*er oT o-r Home ;ete.tio. #eam or o-r C-stomer Care Ce.ter >ill *e availa*le to assist Ro-` )e=e.<i.g o. the stat-s oT the acco-.t+ s=eciTic i.Tormatio. maR also *e availa*le o.li.e at >>>`Mortgaget-estio.s`com`

Si.cereIR+
 oa. Servici.g

Ä4 V14 14feX148 Y6 d4841V\ \VÃ 52 Z25Xd6 5W4 V[[2eZ5W2\841 that >e acm.o>le<ge recei=t oT a. a==licatio. Tor mortgage assista.ce o. this acco-.t` nT this Pla. >as acce=te< thro-gh a >ho.e call >ith o.e oT o-r age.ts+ o-r o.li.e Torm+ or similar metho<s+ the. this =la. is *ase< o. a revie> oT a. i.com=lete/ver*al mortgage assista.ce a==licatio. a.< other o=tio.s maR still *e availa*le` #he acco-.thol<er ca. al>aRs s-*mit a com=lete a==licatio. to *e revie>e< Tor all availa*le mortgage assista.ce o=tio.s regar<less oT >hether or .ot this Pla. is acce=te<` #he acco-.thol<er sho-l< also co.si<er co.tacti.g servicers oT a.R other mortgage acco-.ts sec-re< *R the same =ro=ertR to <isc-ss availa*le loss mitigatio. o=tio.s`

Ho>ever+ iT a com=lete+ >ritte. a==licatio. >as s-*mitte<+ the. this Pla. is oTTere< *ase< o. a revie> oT that com=lete mortgage assista.ce a==licatio. a.< the har<shi= reaso. state< i. that a==licatio.` O-r assista.ce revie> Tollo> a. oeligi*ilitR =aterTallp >hich sets Torth a. or<er Tor eval-ati.g mortgage assista.ce o=tio.s` Base< -=o. this ra.mi.g sRstem+ the acco-.t has S-aliTie< Tor a Pla.+ >hich mea.s that >e are .ot oTTeri.g a mo<iTicatio. or other assista.ce o=tio.s ra.me< *elo> it`



# newrez

C/O PHH Mortgage Services I PO Box 24738 I West Palm Beach F  334!" I #el$ !%888%82&%"474 I Fax$ !%8""%(!7%83&&

---

| IU3215VZ5 IZd21UV5X2Z |
| --- |

## HI) Co-.seli.g

For a<<itio.al assista.ce+ the I.ite< States )e=artme.t oT Ho-si.g a.< Ir*a. )evelo=me.t ⱣÆHI) Æᑯ >hich is a gover.me.t age.cR+ s=o.sors ho-si.g co-.seli.g age.cies thro-gho-t the co-.trR that ca. =rovi<e Ro- a<vice o. Toreclos-re alter.atives+ *-<getarR iss-es+ a.< eve. assista.ce >ith -.<ersta.<i.g this .otice` #here is .o Tee Tor this service` nT Ro- >o-l< lime assista.ce+ Ro- ca. co.tact a HI)%a==rove< ho-si.g co-.selor *R calli.g !%8&&%"'(%4287 or Ro- ca. reach the HOPb Hotli.e -.m*er at !%888%((%HOPb` Ço- maR also visit the HI) >e*site at htt=$//>>>`h-<`gov/oTTices/hsg/sTh/hcc/hcs`cTm`

## HI) Co.seseria

Para o*te.er aR-<a a<icio.al+ el )e=artame.to <e Ëivie.<a R )esarrollo Ir*a.o ⱣÆHI) Æᑯ <e bsta<os I.i<os+ S-e es -.a age.cia <el go*ier.o+ =atroci.a age.cias <e asesoria <e vivie.<a e. to<o el =ais-Se le =-<e<e ro=orcio.ar asesoramie.to so*re las alter.ativas <e esec-ciɆ. hi-otecaria+ las c-estio.es =res-=-estarias+ a.icl-so la asiste.cia co. la com=re.sio. <e este aviso` /o haR S-e =agar =or este servicio` Si <esea aR-<a+ =-<e<e .o.erse e. co.tacto co. -. asesor <e vivie.<a a=ro*a<o =or HI) llama.<o al !%8&&%"'(%4287 o =-e<e llegar a la  i.ea )irecta <e HOPb al !%888%((%HOPb` #am*iÊ. =-e<e visitar el sitio >e* <e HI) e. htt=$//>>>`h-<`gov/oTTices/hsg/sTh/hcc/hcs`cTm`

---

### ,tte.tio. Servicemem*ers a.< )e=e.<e.ts

Servicemem*ers o. Æactive <-tRÆ or Æactive serviceÆ+ or a s=o-se or <e=e.<e.t oT s-ch a servicemem*er maR *e e.title< to certai. legal =rotectio.s a.< <e*t relieT =-rs-a.t to the Servicemem*ers Civil ;elieT ,ct P'& ISC ÉÉ 3(&!%4&43Q PSC;,Q` nT Ro- are e.title< to or have S-estio.s as to >hether Ro- are e.title< to legal =rotectio. -.<er the SC;,+ =lease go to >>>`militarRo.eso-rce`mil/legal  or call !%8&&%342%("47 to Ti.< o-t more i.Tormatio.` Ço- ca. also co.tact -s at !%888%82&%"474 iT Ro- have a.R S-estio.s a*o-t Ro-r rights -.<er SC;,`

### ;eS-ests Tor n.Tormatio. a.< /otices oT brror+ i.cl-<i.g t-aliTie< Writte. ;eS-ests

nT Ro- >ish to reS-est i.Tormatio. or assert a. error relati.g to the servici.g oT Ro-r mortgage loa.+ i.cl-<i.g a.R t-aliTie< Writte. ;eS-ests+ Ro- m-st -se the a<<ress *elo> a.< i.cl-<e Ro-r .ame+ Ro-r mortgage loa. acco-.t .-m*er+ =ro=ertR a<<ress a.< a stateme.t oT either the i.Tormatio. Ro- are reS-esti.g or the error Ro- *elieve has occ-rre<`

PHH Mortgage Services
Post OTTice Box ""&&2
a>re.ceville+ /Å &8"48

---

>>>`Mortgaget-estio.s`com                                  uC&&'

vwxy z{||}~xzⱮx{~ xy ¤¤{| ¤ ¤¤¤¤ z{¤¤¤z¤{¤ ¤¤¤¤|¤¤x¬¤ ¤{ z{¤¤¤z¤ ¤ ¤¤¤¤¤¤ ¤¤-¤ x¬¤{¤|¤¤x{¤+¤¤x ¤¬¤ ¤}¤¤¤ ¤{¤ ¤w¤¤ ¤}¤¤{y¤¤ ¤¤¤¤¤¤¤ x¬¤ ¤w¤ ¤¤¤¤ xy x-¬ Ɱz¤x¤¤ ¤-¬¤¤¤z¤ {¤ w¤¤y ¤¤¤- ¤xyzw¤¤¤¤¤¤ ¤w¤{¤w Ɱwyz{||}~xzⱮx{~ xy ¤¤{¤x¤¤¤ ¤}¤¤¤¤ ¤{¤ x-¬{¤|Ɱx{-¬¤ ¤¤¬{y {-¬ x¤w¤{¤{y {-¬¤{y¤ {-¤¤ x¬ y¤z}¤¤¤ ¤x¤¤- {-¬ {} ¤¤¤¤ ¤}¤-¬ ¤y |¤¤¬ ¤¤¤¤x¤¤¬¤¤-z¤¤ ¤¤{¤¤¤¤¤¤¤ ¤¤ xy ~{y x-¬¬-¤¤-¤¤{ ¤y Ɱ-¬¤¤|¤¤ ¤¤{ z{¤¤¤¤¤ ¤¤¤¤¤¤¤¤¤ ¤y |¬¤¤ ¬¬¤w}¤{{¤¤{¤¤ z¤¤¤¤¤¤ ¤¬z{¤¤x¤¤{¤¤¤zx{-¬{y¤x¤z¤¤¤ {- ¤¤¬- Ɱzz{¤-¤¬w{¤¤¤¤¤¤¤ z¤¤¤¤¤ ¤¬¤¤¤¤¤ ¤x¤{¤¤¤ {¤z¤y¤¤-z¤¤ ¤- ¤¤¤¤{¤¬wⱮ¤¤¤z¤¤¤ ¤y |¤¤¬ {¤¬¤¤{¤¤ {- ¤¤ ¤¤{¤¤¤{ ¤y {-¬¤¤ ¤ |¤¤¤¤¤¤ {-¤

©˚'+Y¦°Y˚± !Y¤¦©˚±



# newrez

C/O PHH Mortgage Services I PO Box 24738 I West Palm Beach F  334!" I #el$ !%888%82&%"474 I Fax$ !%8""%(!7%83&&

)ecem*er 7+ 2&22 ,cco-.t /-m*er$ 7!!&343!!3

▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀▀

◆†‡†‡†‡†‡Y®√·↓·¡
∴‡∴¡‡∴∷◦◦◦§◦Q∂∍♈J        01234156 7881499:
□□□□□  □□□□□□  ₣¢□                4&4 ;<)=>#℗P );
                               ,CWO;#H =, 3&!&2%3478
□₤□□□ □ □□□□□¡
□□□ ¥¦ §`
©©ª©ª ¡ ¦©¡¤ ¡¤ «₤□□ ¦ª©ª
□□-□₤□® □¯ ¬¦ª°±²²©©

## ?@ A@B@CD@E FG@ HIAFJ7J@ 7KKCKF7LB@ 700MCB7FCIL
## 7EECFCIL7M EIBNH@LFK 7A@ A@ONCA@E

### 0M@7K@ A@7E B7A@PNMMQ

)ear ,cco-.tholRerSsT+

<div style="border-left">

We receiveR a reV-est Wor mortgage assista.ceX #ha.Y Uo- Wor s-*mitti.g this reV-estX We revieZeR this reV-est a.R Retermi.eR that+ as oW !2/7/2&22+ aRRitio.al Roc-me.ts/i.Wormatio. are reV-ireR to com[lete o-r eval-atio.X ;eV-ireR Roc-me.ts/i.Wormatio. .eeRs to *e [roviReR to -s as soo. as [ossi*leX

0\4]94 ^254:
<W the ,cco-.tholRerSsT have rece.tIU agreeR to a short%term assista.ce o[tio.+ s-ch as a Wor*eara.ce or re[aUme.t [la.+ the terms oW that [la. remai. i. eWWect a.R are .ot cha.geR *U this .oticeX

- <W the ,cco-.tholRerSsT choose to co.ti.-e o. the short%term Wor*eara.ce or re[aUme.t [la.+ .o actio. is reV-ireR at this timeX #he ,cco-.tholRerSsT maU a[[IU Wor aRRitio.al assista.ce o.ce the short%term assista.ce o[tio. has co.cl-ReRX

- <W the ,cco-.tholRerSsT choose to *e revieZeR Wor other mortgage assista.ce o[tio.s s-ch as a loa. moRiWicatio.+ the. ,cco-.tholRerSsT m-st s-*mit all the reV-esteR Roc-me.ts *U !/7/2&23X

BeloZ is the list oW all the reV-ireR Roc-me.ts/i.Wormatio.X #he Roc-me.ts/i.Wormatio. m-st *e [roviReR to -s *U !/7/2&23X



- A4bc495 d21 H215e]e4 799f95]^g4
    o Please com[lete the ;eV-est Wor Mortgage ,ssista.ce Form Ssig.eR a.R RateR *U all co.tri*-ti.g [artiesT

- Pf^]^gf]\ P21h
    o Please se.R a co[U oW Uo-r com[leteR+ sig.eR a.R RateR Fi.a.cial WormX

- C^g2h4 E2gch4^5]5f2^
    o Please [roviRe tZo most rece.t *a.Y stateme.ts RateR Zithi. the last (& RaUs shoZi.g i.come Re[osit amo-.ts+ or other Roc-me.tatio. shoZi.g the amo-.t a.R WreV-e.cU oW the i.comeX

</div>

jklm noppqrInstlor lm uvop s wxyt nozzxntov sttxp{tlr | to nozzxnt s wxyt} sr~ lruovpstlor oytslrxw ▦lzz yx qmxw uov tkst {qv{omx¤ ¤□▦x¤xv¤ lu tkx wxyt lm lr sntl¤x ysr¤vq{tn~ ov ksm yxxr wlmnksv|xw tkvoq|k ysr¤vq{tn~¤ tklm noppqrInstlor lm {vo▦lwxxw ₡uov lruovpstlorsz {qv{omxm orz~ ▦ltk vx|svw to oqv mxnqvxxw zlxr or tkx syo¤x vxuxvxrnxw {vo{xvt~¤ ¤ lt lm rot lrtxrwxw sm sr sttxp{t to nozzxnt s wxyt uvop ~oq {xvmorszz~¤ {xvmorsz□¤ ps~ yx vx{olvxw ov~ mtstx zs▦¤ ~oq svx kxvxy~ rotlulxw tkst s rx|stl¤x nvxwlt vx{ovt
vxuzxntl□| or sr snnoqrt▦orm▦ nvxwlt vxnovw ps~ yx mqyplttxw to s pxywlt▦vx{ov{lr|s|xrn~¤ lu □q p{□rm vxxt tkx txvpm oq □s~¤
uqzulzzx▦



C/O PHH Mortgage Services I PO Box 24738 I West Palm Beach F 334!" I #el$ !%888%82&%"474 I Fax$ !%8""%(!7%83&&

0M@7K@ K@LE BI0C@K IP FG@ EIBNH@LFK 7LE µ@@0 FG@ IACJCL7MK PIA A@BIAEK¶

| Fax$ | 8""%(!7%2848 | PHH Mortgage Services |
|---|---|---|
| >mail$ | MO)·mortgageWamilUXcom | ,tt.$ Home ;ete.tio. )e[artme.t |
| Call -s at$ | !%888%82&%"474 | !""! Worthi.gto. ;oaR+ S-ite !&& |
| | | West Palm Beach+ F 334&( |

O.ce Ze receive all reV-ireR Roc-me.ts as o-tli.eR i. this letter+ Ze Zill revieZ the acco-.t Wor all availa*le mortgage assista.ce o[tio.sX ¸ .Rer a[[lica*le laZ+ Ze are reV-ireR to com[lete o-r revieZ Zithi. 3& cale.Rar RaUs Wrom the Rate Ze Retermi.eR the [acYage Zas com[lete¹ hoZever+ o-r average Recisio. timeli.e is tU[icallU less tha. the reV-ireR timeWrameX

/ext+ Ze Zill se.R a .otice Zith the res-lts oW o-r revieZ+ Zhich Zill i.cl-Re a.U o[tio.s that might *e availa*leX

- Cd 5^4 ]gg2c^5 bc]\fdf49 d21 ] h215e]e4 ]99f95]^g4 235f2^»9¼:
  We Zill se.R a. oWWerX <. orRer to acce[t a.R move WorZarR Zith a moRiWicatio. or other alter.ative o[tio.+ it is im[orta.t to WolloZ all i.str-ctio.s i. the oWWer letter [ertai.i.g to a.U ReaRli.esX
- Cd 5^4 ]gg2c^5 8249 ^25 bc]\fd6 d21 ] h215e]e4 ]99f95]^g4 235f2^»9¼:
  We Zill se.R a .otice ex[lai.i.g the Retails a.R .ext ste[sX )e[e.Ri.g o. the reaso. Wor .o.%a[[roval+ the acco-.t co-IR *e eligi*le Wor a. a[[ealX Please revieZ the .otice Wor aRRitio.al i.Wormatio.+ i.cl-Ri.g a.U ReaRli.es to s-*mit a. a[[ealX

0\4]94 ^254:
We maU orRer a val-atio. to Retermi.e the [ro[ertU½s val-e i. co..ectio. Zith o-r revieZX We Zill [rom[tlU [roviRe a co[U oW a.U s-ch val-atio.X ¸. aRRitio.al val-atio. ca. *e o*tai.eR Wor [erso.al -se at the ,cco-.tholRerSsT¾s ex[e.seX

F°4 d2\\2¿f^e 82gch4^59 ]14 4^g\2948 d21 ]88f5f2^]\ f^d21h]5f2^:

- ,RRitio.al ,ssista.ce is ,vaila*le _____ ,RRitio.al ,egal )isclos-res

We are here to hel[À #o s[eaY Zith the assig.eR ;elatio.shi[ Ma.ager+ M,/OÁ P,, ¸Zho is the Resig.ateR co.tact Wor i.V-iries a.R the s-*missio. oW Roc-me.ts+ Uo- ca. scheR-le a. a[[oi.tme.t *U visiti.g ZZZXMortgagei-estio.sXcom a.R select ScheR-le calls -.Rer the ¸oa. S[ecialist o[tio. or call toll%Wree at !%888%82&%"474 Mo.RaU thro-gh FriRaU Wrom 8$&& am to ($&& [m >#X <W immeRiate assista.ce is reV-ireR+ a.other ReRicateR mem*er oW o-r Home ;ete.tio. #eam or o-r C-stomer Care Ce.ter Zill *e availa*le to assist Uo-X )e[e.Ri.g o. the stat-s oW the acco-.t+ s[eciWic i.Wormatio. maU also *e availa*le o.li.e at ZZZXMortgagei-estio.sXcomX

Si.cerelU+
¸oa. Servici.g

jklm noppqrInstlor lm uvop s wxyt nozzxntov sttxp{tlr | to nozzxnt s wxyt} sr~ lruovpstlor oytslrxw ¤lzz yx qmxw uov tkst {qv{omx¤ ¤o¤lx¤xv¤ lu tkx wxyt lm lr sntl¤x ysr¤vq{tn~ ov ksm yxxr wlmnksv|xw tkvoq|k s ysr¤vq{tn~ tklm noppqrInstlor lm {vo¤lwxw (¤uov lruovpstlorsz {qv{omxm orz~ ¤ltk vx|svw to oqv mxnqvxw zlxr or tkx syo¤x vxuxvxrnxw {vo{xvt~~ ¤l tm rot lrtxrwxw sm sr sttxp{t to nozzxnt s wxyt uvop s{xnlul{ xvmor~ ¤o¤ yx vx{slw ov ¤lmnksv|x¤ lr ysrYvq{tn~~ ov lm mqy¿xnt to sr sqtopstln mts~~ ¤e svx ovz~ {qvmqlr| oqv vlxktm s|slrmt tkx {vo{xvt~~                                                                                                                                   ¤e svx ovz~ {qvmqlr| oqv vlxktm s|slrmt tkx {vo{xvt~~ uqzzulzzxw¤



**newrez**

C/O PHH Mortgage Services I PO Box 24738 I West Palm Beach F  334!" I #el$ !%888%82&%"474 I Fax$ !%8""%(!7%83&&

7EECFCIL7M 7KKCKF7LB@ CK 7D7CM7ÅM@

<W ,cco-.thoIRerSsT are ex[erie.ci.g a Wi.a.cial harRshi[+ ho-si.g co-.seli.g maU *e a ZaU to hel[ ma.age their Wi.a.cesX We -rge ,cco-.thoIRerSsT to co.tact H¸) a[[roveR age.cies to o*tai. assista.ce i. Yee[i.g the homeX #his assista.ce is availa*le at .o chargeX

| H¸) ,[[roveR Ho-si.g Co-.seli.g | S8&&T '"(%4287 | ZZZXH¸)Xgov |
| HomeoZ.er½s HOP> Hotli.e /-m°er | S888T ((%4"73 | htt[s$//(('ho[eXorg/ |
| Fa..ie Mae ,ssista.ce Program | S8&&T 232%""43 | ZZZXY.oZUo-ro[tio.sXcom |
| Co.s-mer Fi.a.cial Protectio. B-rea- SCFPBT | S8"T 4!!%2372 | ZZZXco.s-merWi.a.ceXgov/mortgagehel[/ |
| FreRRie Mac ,ssista.ce Program | | htt[$//mUhomeXWreRRiemacXcom/ |

<W ,cco-.thoIRerSsT Zo-IR liYe to s-*mit a V-aliWieR Zritte. reV-est+ a .otice oW error or a reV-est Wor i.Wormatio.+ theU m-st -se the WoIIoZi.g aRRress$

PHH Mortgage Services
PO Box ""&&2
aZre.ceville+ /Á &8"48

0\4]94 L254: Cd 5°4 7gg2c^5°2\841 ¿]9 fh3]g548 Ã6 BIDCEÂÅÆÇ 5°46 h]6 Ã4 ]Ã\4 52 ]33\6 d21 5°4 G2h42¿^41 799f95]^g4 Pc^8 »G7P¼ fd ]É]f\]Ã\4 f^ 5°4f1 Éc1f98fg5f2^¶ 0\4]94 g2^5]g5 5°4 95]54 °2c9f^e ]e4^g6 d21 h214 f^d21h]5f2^ 14e]18f^e 312e1]h 845]f\9¶

jklm noppqrInstlor lm uvop s wxyt nozzxntov sttxp{tIr| to nozzxnt s wxyt} sr~ Iruovpstlor oytslrxw ☐lzz yx qmxw uov tkst {qv{omx☐ ☐o☐x☐xv☐ lu tkx wxyt lm Ir sntl☐x ysr☐vq{tn~ ov ksm yxxr wlmnksv|xw tkvoq|k ysr☐vq{tn~☐ tklm noppqrInstlor lm {vo☐lwxxw {uov Iruovpstlorsz {qv{omxm orz~ ☐ltk vx|svw to oqv mxnqvxw zlxr or tkx syo☐x vxuxvxnrxw {vo{xvt~☐ ☐ tl Im rot Irtxrwxw sm sr sttxp{t to nozzxnt s wxyt uvop ~oq {xvmorszz~☐ ☐m ps~ yx vx☐qlvxw y~ mtstx zs☐ ~oq svx kxvxy~ rotluxw tkst s rx|stl☐x nvxwlt vx{ovt vxuxxntl☐| or sr snpqrtko?wxvqm☐ nvxwlt vxnovw po- ~x mqvpltt?w to s nvxwlt vx{ovtlr| s|xn~- lu ~oqwlll qvz|lstlor- ,xypm svx rot uqzulzzxw☐


## 7EECFCIL7M M@J7M ECKBMIKNA@K

L25fg4 A4e]18f^e Ä]^Ê1c35g6: Please *e aRviseR that iW the acco-.t is [art oW a. active Ba.Yr-[tcU case or iW the acco-.t has receiveR a. OrRer oW )ischarge Wrom a Ba.Yr-[tcU Co-rt+ this letter is i. .o ZaU a. attem[t to collect either a [re%[etitio.+ [ost%[etitio. or RischargeR Re*tX <W the *a.Yr-[tcU case is still active+ .o actio. Zill *e taYe. i. ZillW-I violatio. oW the ,-tomatic StaUX <W the acco-.t has receiveR a. OrRer oW )ischarge i. a Cha[ter 7 case+ a.U actio. taYe. *U -s is Wor the sole [-r[ose oW [rotecti.g o-r Iie. i.terest i. the -.RerIUi.g mortgageR [ro[ertU a.R is .ot a. attem[t to recover a.U amo-.ts Wrom the acco-.tholRerSsT [erso.aIIUX Fi.aIIU+ iW the acco-.t is i. a. active Cha[ter !!+ !2 or !3 *a.Yr-[tcU case a.R a. OrRer Wor ;elieW Wrom the ,-tomatic StaU has .ot *ee. iss-eR+ the acco-.tholRerSsT sho-IR co.ti.-e to maYe [aUme.ts i. accorRa.ce Zith the [Ia.

L25fg4 A4e]18f^e B148f5 Ef9g1fhf^]5f2^: #he FeReral >V-al CreRit O[[ort-.itU ,ct [rohi*its creRitors Wrom Riscrimi.ati.g agai.st creRit a[[lica.ts o. the *asis oW race+ color+ religio.+ .atio.al origi.+ sex+ marital stat-s+ age S[roviReR the a[[lica.t has the ca[acitU to e.ter i.to a *i.Ri.g co.tractT[1] or *eca-se all or [art oW the a[[lica.t½s i.come Rerives Wrom a.U [-*lic assista.ce [rogram[1] or *eca-se the a[[lica.t has i. gooR Waith exerciseR a.U right -.Rer the Co.s-mer CreRit Protectio. ,ctX #he WeReral age.cU that aRmi.isters com[lia.ce Zith this IaZ co.cer.i.g this creRitor is FeReral #raRe Commissio.+ >V-al CreRit O[[ort-.itU+ Washi.gto.+ )XCX 2&'8&X

L25fg4 A4e]18f^e F]Ë B2^94bc4^g49 2d H215e]e4 799f95]^g4 I35f2^9: ,cce[ta.ce oW a loa. moRiWicatio.+ short sale+ or ReeR%i.%Iie- oW Woreclos-re maU res-It i. WeReral+ state+ or local tax co.seV-e.ces to the acco-.t holRer a.R/or aWWect eligi*ilitU Wor a.U [-*lic assista.ce *e.eWitsX We ca..ot aRvise o. these im[acts a.R e.co-rage co.tacti.g a tax [roWessio.al to Risc-ss a.U V-estio.s that might ariseX

L25fg4 A4e]18f^e 788f5f2^]\ Mf4^9: <W the acco-.t has a.U other mortgage Ioa.SsT that is/are sec-reR *U the same [ro[ertU+ Ze e.co-rage co.tacti.g the servicerSsT oW those Ioa.SsT to Risc-ss availa*Ie mortgage assista.ce o[tio.sX

L25fg4 A4e]18f^e 7331]f9]\9: We maU o*tai. a. a[[raisal or other Zritte. val-atio. i. orRer to Retermi.e the [ro[ertU½s val-eX We ZiII [rom[tIU [roviRe a co[U oW a.U s-ch val-atio.+ eve. iW the acco-.t is .ot a[[roveR Wor a.U loss mitigatio. o[tio.sX

L25fg4 A4e]18f^e F°f18 0]156 73312È]\9: We maU reV-ire aRRitio.al a[[rovals to Retermi.e iW the acco-.t is eligi*Ie Wor a mortgage assista.ce o[tio.X #his maU i.cl-Re+ *-t is .ot IimiteR to+ a[[roval Wrom a. i.vestor or mortgage i.s-rerX

L25fg4: L25 ]\\ ]gg2c^59 ¿f\\ bc]\fd6 d21 ] \2]^ h28fdfg]5f2^ 21 25^41 h215e]e4 ]99f95]^g4 235f2^: We have .ot Uet Retermi.eR iW the acco-.t is eligi*Ie Wor a loa. moRiWicatio. or a.U other mortgage assista.ce o[tio.X ,II reV-ireR Roc-me.ts m-st *e s-*mitteR i. orRer Wor -s to *e a*Ie to [roceeR Zith o-r eval-atio. oW the acco-.t½s eligi*ilitUX We are .ot o*ligateR to oWWer assista.ce *aseR soleIU o. the re[rese.tatio.s a.R i.Wormatio. i.cl-ReR i. the reV-est Wor assista.ceX We reserve the right to veriWU the i.Wormatio. s-*mitteR a.R to reV-est aRRitio.al i.Wormatio. a.R/or Roc-me.ts to eval-ate acco-.t eligi*ilitUX <. o-r eval-atio. [rocess+ Ze ZiII WolloZ all the moRiWicatio. a.R other mortgage assista.ce [rogram g-iReIi.es to the exte.t [ermitteR -.Rer o-r co.tract-al o*Iigatio.s Zith the i.vestors Zho oZ. the acco-.tX /ot all acco-.ts Zhere a com[leteR mortgage assista.ce reV-est is s-*mitteR+ ZiII V-aliWU Wor a loa. moRiWicatio. or a.U other mortgage assista.ce o[tio.X

<W the acco-.t Roes V-aliWU Wor a loa. moRiWicatio. or a.U other mortgage assista.ce o[tio.SsT+ Ze ZiII se.R a. oWWer letter Zith aRRitio.al Retails oW the o[tio.SsT Wor Zhich the acco-.t V-aliWiesX <. orRer to acce[t a mortgage assista.ce o[tio.+ , i.str-ctio.s m-st *e WolloZeR as o-tli.eR i. the oWWer letterX #he acco-.t ZiII *e [roviReR a mi.im-m oW !4 RaUs to acce[t a mortgage assista.ce o[tio. iW V-aliWieRX

jklm noppqrlnstlor lm uvop s wxyt nozzxntov sttxp{tlr| to nozzxnt s wxyt} sr~ lruovpstlor oytslrxw ¤lzz yx qmxw uov tkst {qv{omx¤ ¤o¤l¤xqxv¤ lu tkx wxyt lm lr sntl¤x ysr¤vq{tn~ ov ksm yxxr wlmnksv|xw tkvoq|k| sr¤vq{tn~ tklm noppqrlnstlor lm {vo¤lwxw uuov lruovpstlorsz {qv{omxm orz~ ¤ltk vx|svw to oqv mxnqvxm zlxr or tkx syo¤x vxuxvxrnxw {vo{xvt~¤ ¤t lm rot lrtxrwxw sm sr sttxp{t to nozzxnt s wxyt uvop ~oq {xvmorszz~-¤ ¤m ps~ yx vxw{lxxs~~ rotlulxw tkst s rx|stl¤x nvxwlt vx{ovt vxuxxntlr| or s ysywlt¤yzox yozl|stlo. xmsyp



# newrez

C/O PHH Mortgage Services I PO Box 24738 I West Palm Beach F 334!" I #el$ !%888%82&%"474 I Fax$ !%8""%(!7%83&&

Please *e aRviseR altho-gh a.U a[[lica*le Woreclos-re sale is o. holR+ Ze might .ot *e a*le to s-s[e.R a Woreclos-re sale iW a co-rt Zith l-risRictio. over the Woreclos-re [roceeRi.g SiW a.UT+ or the *a.Yr-[tcU co-rt i. a *a.Yr-[tcU case+ or the [-*lic oWWicial chargeR Zith carrUi.g o-t the activities or eve.t+ Wails or reW-ses to halt the sale aWter Ze maYe reaso.a*le eWWorts to move the co-rt or reV-est the [-*lic oWWicial to cease the saleX #he acco-.t maU *e e.titleR to aRRitio.al [rotectio. -.Rer state or WeReral IaZX

0\4]94 Â4 7¿]14 E2gch4^59 H]6 @Ë3f14 Ec1f^e 5°4 A4Èf4¿: <W Wi.a.cial Roc-me.ts are over (& RaUs olR+ Ze maU co.tact the ,cco-.tholRerSsT to reV-est -[RateR Roc-me.tatio.X Please e.s-re the most c-rre.t Roc-me.ts availa*le have *ee. [roviReR to o-r oWWiceX

jklm noppqrlnstlor lm uvop s wxyt nozzxntov sttxp{tlr| to nozzxnt s wxyt} sr~ lruovpstlor oytslrxw ⬛lzz yx qmxw uov tkst {qv{omx¤ ¤o⬛x¤xv¤ lu tkx wxyt lm lr sntl¤x ysr¤vq{tn~ ov ksm yxxr wlmnksv|xw tkvoq|k ysr¤vq{tn~ tklm noppqrlnstlor lm {vo⬛lwxw (uov lruovpstlorsz {qv{omxm orz~ ⬛ltk vx|svw to oqv mxnqvxw zlxr or tkx syo¤x vxuxvxrnxw {vo{xvt~¤ ¤t lm rot lrtxrwxw sm sr sttxp{t to nozzxnt s wxyt uvop ~oq {xvmorszz~¤ ¤m ps~ yx vx¤qlvxw y~ mtstx zs⬛¤ ~oq svx kxvxy~ rotlulxw tkst s rx|stl¤x nvxwlt vx{ovt vxuzxntlr|¤ or sr snnoqrtko¤w⬛xm nvxwlt vxnovw ps~ yx mqyplttxw to s nvxwlt vx{ovtlr| s|xrn~ lu ~oq uslz to uqzulzz tkx txvpm ou ~oqv nvxwlt oyzl|stlor¤ tkxmx tsx
uqzulzzx⬛¤

Case 2:25-bk-01794-EPB   Doc 42   Filed 03/31/25   Entered 03/31/25 10:05:35   Desc
Main Document     Page 245 of 248
Page ▪

# ALDRIDGE PITE, LLP

EXHIBIT 6

February 21, 2025

Anita E. Harris
skippysmith2850@gmail.com

| | |
|---|---|
| RE: | Your email correspondence |
| Our File Number: | 1017-7282A |
| Servicer: | PHH Mortgage Corporation |
| Servicer's Loan Number: | 7110343113 |
| Property: | 404 Ridge Top Drive, Acworth, GA 30102 |

**PLEASE BE ADVISED THAT THIS LETTER MAY CONSTITUTE AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Dear Ms. Harris:

In response to your email on February 10, 2025, this letter serves as a verification of the debt owed to The Bank of New York Mellon, f/k/a The Bank of New York as successor in interest to JPMorgan Chase Bank, N.A. as Trustee for NovaStar Mortgage Funding Trust, Series 2005-4, NovaStar Home Equity Loan Asset-Backed Certificates, Series 2005-4. PHH Mortgage Corporation is authorized to collect payment on your loan. Please find enclosed copies of the note and security deed that were signed by you at the time of closing. These documents also provide you with the name and address of the original lender.

Notice of the March 4, 2025 foreclosure sale was mailed on January 28, 2025 to the property address and any designated mailing address in our client's records. O.C.G.A. §44-14-162.2(a) states in relevant part, "…The notice required by this Code section shall be deemed given on the official postmark day or day on which it is received for delivery by a commercial delivery firm." The foreclosure notices were timely sent in compliance with the relevant code section(s).

To obtain an updated payoff quote or the amount needed to bring your loan current, please contact our office.

PHH Mortgage Corporation is the entity with full authority to negotiate, amend and modify all terms of the mortgage pursuant to established guidelines.

PHH Mortgage Corporation
1661 Worthington Rd
Suite 100

Aldridge Pite, LLP
Six Piedmont Center
3525 Piedmont Road, N.E.,
Suite 700
Atlanta, GA 30305
(404) 994-7400
888-246-7307
California Debt Collector License
Number 10724-99

# ALDRIDGE PITE, LLP

West Palm Beach, FL 33409
(800) 750-2518

Note, however, that such entity is not required by law to negotiate, amend or modify the terms of the loan.

This letter satisfies any verification obligation we may have under the Fair Debt Collection Practices Act. If you have any further questions or concerns, please do not hesitate to contact our office.

Sincerely,

Aldridge Pite, LLP

Enclosures

Aldridge Pite, LLP
Six Piedmont Center
3525 Piedmont Road, N.E.,
Suite 700
Atlanta, GA 30305
(404) 994-7400
888-246-7307
California Debt Collector License
Number 10724-99

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th of March  2025, I served a true and correct copy of the foregoing Adversary Complaint and all supporting documents upon the following parties by U.S. Mail, postage prepaid, and, where available, by electronic mail:

**PHH Mortgage Corporation**
1 Mortgage Way
Mount Laurel, NJ 08054
Email: CustomerSupport@mortgagefamily.com

**Perry Richard Harris, Jr.**
2654 W Horizon Ridge Rd #B5-69
Henderson, NV 89052
Email: perryharris50@hotmail.com

**James R. Fletcher, Esq.**
328 SE, Suite 10
Marietta, GA 30060

**Rich J. Peters, Esq.**
1422 N. 2nd Street, Suite 100
Phoenix, AZ 85004

**Aldridge Pite LLP**
Foreclosure Counsel for PHH
3575 Piedmont Road NE, Suite 500
Atlanta, GA 30305
Email: info@aldridgepite.com

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 28th day of March 2025.

Respectfully submitted,
/s/ Anita Smith Harris
Anita Smith Harris
11010 S. 51st Street, Unit 50818
Phoenix, AZ 85044
Phone: (678) 296-4004
Email: skippysmith2850@gmail.com